## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED,<br>B-ONE BUSINESS HOUSE PVT. LTD.,<br>HARI MARINE PRIVATE LIMITED,<br>MAGNUM EXPORT,<br>MEGAA MODA PVT. LTD.,<br>MILSHA AGRO EXPORTS PRIVATE LTD.,<br>SEA FOODS PRIVATE LIMITED,<br>SHIMPO EXPORTS PRIVATE LIMITED,<br>FIVE STAR MARINE EXPORTS PVT. LTD.,<br>HN INDIGOS PRIVATE LIMITED,<br>RSA MARINES, AND ZEAL AQUA LTD.,<br><br>   Plaintiffs,<br>  v.<br><br>UNITED STATES,<br><br>   Defendant,<br><br>  and<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>   Defendant-Intervenor. | Court No. 21-00031 |

## <u>ORDER</u>

Upon consideration of the motion of Plaintiffs, Z.A. Sea Foods Private Limited, B-One

Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd.,

Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private

Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines,

and Zeal Aqua Limited, for judgment upon the agency record pursuant to Rule 56.2 of the Rules

of this Court, and all other papers and proceedings herein, it is hereby

**Court No. 21-00031**

**ORDERED** that Plaintiffs' motion is hereby granted; and it is further

**ORDERED** that the final results of administrative review of the antidumping duty order on certain frozen warmwater shrimp from India in Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,581 (Dep't Commerce Dec. 29, 2020) are remanded to the U.S. Department of Commerce with instructions to take such further action as required by the Court's decision in this matter with respect to Plaintiffs.

**SO ORDERED**.

By _____
      The Hon. Gary S. Katzmann, Judge

Dated: _____
     New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

_____

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, <br> B-ONE BUSINESS HOUSE PVT. LTD., <br> HARI MARINE PRIVATE LIMITED, <br> MAGNUM EXPORT, <br> MEGAA MODA PVT. LTD., <br> MILSHA AGRO EXPORTS PRIVATE LTD., <br> SEA FOODS PRIVATE LIMITED, <br> SHIMPO EXPORTS PRIVATE LIMITED, <br> FIVE STAR MARINE EXPORTS PVT. LTD., <br> HN INDIGOS PRIVATE LIMITED, <br> RSA MARINES, AND ZEAL AQUA LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AD HOC SHRIMP TRADE ACTION COMMITTEE, <br><br> Defendant-Intervenor. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Court No. 21-00031 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

_____

**PLAINTIFFS' RULE 56.2 MOTION FOR
JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiffs, Z.A. Sea Foods Private

Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa

Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo

Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited,

RSA Marines, and Zeal Aqua Limited, hereby move for judgment upon the agency record with

respect to their complaint challenging the final results of the administrative review of the

Court No. 21-00031
Motion for Judgment Upon Agency Record

antidumping duty order on certain frozen warmwater shrimp from India in <u>Certain Frozen</u>

<u>Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and</u>

<u>Final Determination of No Shipments; 2018–2019</u>, 85 Fed. Reg. 85,581 (Dep't Commerce Dec.

29, 2020) ("<u>Final Results</u>"), and accompanying unpublished Issues and Decision Memorandum

(Dep't Commerce Dec. 21, 2020).

For the reasons explained in the accompanying memorandum, Plaintiffs respectfully

move for this Court to hold that the contested portion of the <u>Final Results</u> is not supported by

substantial evidence and is otherwise not in accordance with law.  Plaintiffs further move for the

Court to remand this matter to Commerce for disposition consistent with the order and opinion of

the Court, including instructions to reconsider the final results of review with respect to Plaintiffs

consistent with the arguments raised in the accompanying memorandum and to grant such other

relief as the Court determines is just and proper.

The legal and factual grounds for Plaintiffs' motion are set forth in the memorandum

accompanying this motion.  A proposed order is attached.

Respectfully submitted,

<u>/s/ Robert G. Gosselink</u>
Robert G. Gosselink
Jonathan M. Freed

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

*Counsel to Plaintiffs*

Dated:  June 18, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED,<br>B-ONE BUSINESS HOUSE PVT. LTD.,<br>HARI MARINE PRIVATE LIMITED,<br>MAGNUM EXPORT,<br>MEGAA MODA PVT. LTD.,<br>MILSHA AGRO EXPORTS PRIVATE LTD.,<br>SEA FOODS PRIVATE LIMITED,<br>SHIMPO EXPORTS PRIVATE LIMITED,<br>FIVE STAR MARINE EXPORTS PVT. LTD.,<br>HN INDIGOS PRIVATE LIMITED,<br>RSA MARINES, AND ZEAL AQUA LTD., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Court No. 21-00031<br>) |
| v. | ) PUBLIC VERSION<br>) |
| UNITED STATES, | )<br>) |
| Defendant, | )<br>) |
| and | )<br>) |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | )<br>) |
| Defendant-Intervenor. | )<br>) |

**MEMORANDUM IN SUPPORT OF THE RULE 56.2 MOTION OF PLAINTIFFS, Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LIMITED, SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LIMITED, FOR JUDGMENT UPON THE AGENCY RECORD**

Submitted by:

Robert G. Gosselink
Jonathan M. Freed
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

Dated:  June 18, 2021                          *Counsel to Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ...........................................................................................ii

I.      STATEMENT PURSUANT TO RULE 56.2(c) ............................................. 1

II.     STANDARD OF REVIEW ............................................................................. 2

III.    STATEMENT OF FACTS .............................................................................. 3

IV.     SUMMARY OF ARGUMENT .................................................................... 11

V.      ARGUMENT ............................................................................................... 12

        A.      Statutory Framework for Establishing Normal Value ......................... 12

        B.      Commerce's Consideration of the Trade Patterns of ZASF's Customers Was
                Irrelevant and Unsupported by Substantial Evidence ........................... 15

        C.      Commerce's Treatment of ZASF's Vietnam Sales as U.S. Sales Is Unsupported
                and Contradicts Long-Standing Practice With Respect to the "Knowledge Test"
                ........................................................................................................... 18

        D.      Commerce's Determination That ZASF's Sales to Vietnam Were Part of an
                Evasion Scheme Also Is Unsupported by Substantial Evidence ......................... 22

        E.      Commerce's Determination That ZASF's Sales to Vietnam Were Not
                Representative Ignores Substantial Record Evidence............................................ 24

        F.      Commerce Misinterpreted the Regulatory Preference for Using Third-Country
                Sales Over Constructed Value to Establish Normal Value................................... 26

VI.     RELIEF REQUESTED.................................................................................... 28

# **TABLE OF AUTHORITIES**

## **Judicial Precedent**

Burlington Truck Lines v. United States, 371 U.S. 156 (1962)......................................................2

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) .........................................................................2

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29 (1983) ...........................2

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) ..........................................................2, 26

CS Wind Vietnam Co. v. United States, 832 F.3d 1367 (Fed. Cir. 2016).......................................2

Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304 (Fed. Cir. 2017)....................12

Gerald Metals, Inc. v. United States, 132 F.3d 716 (Fed. Cir. 1997) ..............................................2

Nippon Steel Corp v. United States, 458 F.3d 1345 (Fed. Cir. 2006) ..............................................2

Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978 (Fed. Cir. 1994) .........2

Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330 (Fed. Cir. 2002) .....................2

Union Steel v. United States, 713 F.3d 1101 (Fed. Cir. 2013) ......................................................13

Allegheny Ludlum Corp. United States, 215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000)................16

Alloy Piping Products v. United States, 26 C.I.T. 330, 339, 201 F.Supp.2d 1267 (2002)......14, 15

Dorbest v. United States, 30 C.I.T. 1671, 462 F. Supp. 2d 1262 (2006).........................................2

Goldlink Indus. Co. v. United States, 30 C.I.T. 616, 431 F. Supp. 2d. 1323 (2006)......................2

## **Statutes**

19 U.S.C. § 1516a(b)(l)(B)(i) .........................................................................................................2

19 U.S.C. § 1673...........................................................................................................................12

19 U.S.C. § 1677b..........................................................................................................................13

19 U.S.C. § 1677b(a)(1)................................................................................................................13

19 U.S.C. § 1677b(a)(1)(B)(ii)(II) ...............................................................................................14

19 U.S.C. § 1677b(a)(1)(C) ...........................................................................13

19 U.S.C. § 1677b(a)(1)(C)(ii) ......................................................................13

19 U.S.C. § 1677b(a)(4) ................................................................................14

19 U.S.C. § 1677f–1(d)(1)(A)(i) ...................................................................13

**Regulations**

19 C.F.R. § 351.404 .................................................................................14, 26

19 C.F.R. § 351.404(a) .............................................................................26, 27

19 C.F.R. § 351.404(c)(2) .............................................................................14

19 C.F.R. § 351.404(e)(1) .............................................................................15

19 C.F.R. § 351.404(e)(2) .............................................................................15

19 C.F.R. § 351.404(f) ......................................................................11, 27, 28

**Administrative Determinations**

Antidumping Duties, Countervailing Duties: Final Rule, 62 Fed. Reg. 27296, 27357 (Dep't Commerce May 19, 1997) ...........................................................14

Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review, 76 Fed. Reg. 36086 (Dep't Commerce June 21, 2011) .............19, 20, 21

Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,581 (Dep't Commerce Dec. 29, 2020)............................................................ passim

Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) passim

Certain Frozen Warmwater Shrimp from India: Rescission of Antidumping Duty Administrative Review; 2018-2019, In Part, 84 Fed. Reg. 62506 (Dep't Commerce Nov. 15, 2019) .............. 3-4

Final Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-Length Carbon Steel Plate From Korea, 58 Fed. Reg. 37176 (Dep't Commerce July 9, 1993)................17

Final Determination of Sales at less Than Fair Value: Dynamic Random Access Memory Semiconductors of One Megabit and Above From the Republic of Korea, 58 Fed. Reg. 15467 (Dep't Commerce March 23, 1993).................................................................................17

Initiation of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 18777 (Dep't Commerce May 2, 2019).................................................................................3

Modification of Regulations Regarding Basis for Normal Value, 81 Fed. Reg. 58419 (Dep't Commerce Aug. 25, 2016).................................................................................27

Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5147 (Dep't Commerce Feb. 1, 2005).................................................................................3

Notice of Determination as to Evasion, Enforcement and Protection Act Case Number 7356 (Customs and Border Protection Oct. 13, 2020).................................................9, 10, 18, 19, 22, 23

Welded Line Pipe From the Republic of Korea, 80 Fed. Reg. 61366 (Dep't Commerce Oct. 13, 2015) .................................................................................16

**MEMORANDUM IN SUPPORT OF THE RULE 56.2 MOTION OF PLAINTIFFS, Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LIMITED, SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LIMITED, FOR JUDGMENT UPON THE AGENCY RECORD**

## I.   STATEMENT PURSUANT TO RULE 56.2(c)

Plaintiffs, Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited, producers and exporters of frozen warmwater shrimp from India, contest the U.S. Department of Commerce's final results of administrative review in Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,581 (Dep't Commerce Dec. 29, 2020) ("Final Results"), PR 199.[1] The challenged determination, findings, and conclusions are set forth in Commerce's unpublished Issues and Decision Memorandum (Dep't Commerce Dec. 21, 2020) ("IDM"), PR 194.  Plaintiffs seek judgment upon the agency record with respect to a single issue: whether Commerce was permitted to disregard an Indian exporter's third-country sales to Vietnam and to use constructed value for normal value based solely on Commerce's speculation as to what the Vietnamese customers did with the shrimp merchandise they purchased and where record evidence did not demonstrate that the Indian exporter's sales to Vietnam were unrepresentative of sales in the ordinary course of trade.

---

[1]   Citations to public documents from Commerce's Administrative Record List are designated as "PR __," and citations to confidential documents are designated as "CR __."  All record documents cited will be included in the Joint Appendix to be filed with the Court.

## II.    <u>STANDARD OF REVIEW</u>

This Court is required to hold unlawful Commerce's determinations in antidumping and

countervailing duty proceedings if they are "unsupported by substantial evidence on the record,

or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(l)(B)(i).  In reviewing for

substantial evidence, the Court must search for "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  <u>Ta Chen Stainless Steel Pipe, Inc. v. United

States</u>, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S.

197, 229 (1938)).  The substantiality of evidence must account for anything in the record that

reasonably detracts from its weight.  <u>CS Wind Vietnam Co. v. United States</u>, 832 F.3d 1367,

1373 (Fed. Cir. 2016) (quoting <u>Gerald Metals, Inc. v. United States</u>, 132 F.3d 716, 720 (Fed. Cir.

1997)).  This includes "contradictory evidence or evidence from which conflicting inferences

could be drawn."  <u>Suramerica de Aleaciones Laminadas, C.A. v. United States</u>, 44 F.3d 978, 985

(Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

These standards require the Court to view the record as a whole, and "can be translated

roughly to mean 'is {the determination} unreasonable?'"  <u>Nippon Steel Corp v. United States</u>,

458 F.3d 1345, 1351 (Fed. Cir. 2006) (citation omitted).  To affirm Commerce's determination,

the agency must have provided "a reasoned explanation ... that is supported by the administrative

record."  <u>Dorbest v. United States</u>, 30 C.I.T. 1671, 1677-78, 462 F. Supp. 2d 1262, 1269-70

(2006) (<u>citing</u> <u>Goldlink Indus. Co. v. United States</u>, 30 C.I.T. 616, 629, 431 F. Supp. 2d. 1323,

1334 (2006)).  That is, "the agency must examine the relevant data and articulate a satisfactory

explanation for its action including a 'rational connection between the facts found and the choice

made.'"  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.</u>, 463 U.S. 29, 43 (1983)

(citing <u>Burlington Truck Lines v. United States</u>, 371 U.S. 156, 168 (1962)).

## III.    STATEMENT OF FACTS

In February 2005, Commerce issued an antidumping duty ("AD") order on certain frozen warmwater shrimp from India.  <u>Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India</u>, 70 Fed. Reg. 5147 (Dep't Commerce Feb. 1, 2005).  On May 2, 2019, Commerce initiated the fourteenth administrative review of the AD order on shrimp from India covering the period of review ("POR") February 1, 2018, through January 31, 2019.  <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 84 Fed. Reg. 18777 (Dep't Commerce May 2, 2019).  The review covered numerous producers and exporters of subject merchandise, including Plaintiffs, Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited.

In June 2019, after considering the large number of Indian exporters for which administrative reviews had been requested, Commerce determined that it was not practicable to examine all exporters of subject merchandise for which a review was requested.  As a result, pursuant to section 777A(c)(2)(B) of the Act, Commerce decided to limit its examination to the two exporters accounting for the largest volume of shrimp exported from India to the United States during the POR.  Accordingly, Commerce issued the AD questionnaire to Devi Fisheries Limited (including Satya Seafoods Private Limited, Usha Seafoods, and Devi Aquatech Private Ltd.) ("Devi") and Falcon Marine Exports Limited (including K.R. Enterprises) ("Falcon").

In July 2019, all requests for administrative review of Devi and Falcon and 69 other companies were withdrawn, and Commerce rescinded the review for those companies.  <u>See</u>

<u>Certain Frozen Warmwater Shrimp from India: Rescission of Antidumping Duty Administrative</u>

<u>Review; 2018-2019, In Part</u>, 84 Fed. Reg. 62506 (Dep't Commerce Nov. 15, 2019).  In August

2019, Commerce selected two new respondents to examine: Plaintiff Z.A. Sea Foods Private

Limited ("ZASF") and Razban Seafoods Ltd. ("Razban").  Razban subsequently reported that it

had no shipments of subject merchandise to the United States during the period examined, and

Commerce suspended the AD questionnaire deadlines for Razban, leaving Plaintiff ZASF as the

sole mandatory respondent.

In September 2019, ZASF responded to Section A of Commerce's AD questionnaire

indicating that its home market sales during the period of review ("POR") were less than five

percent of the volume of its U.S. sales, and that its home market was not viable for determining

normal values.  ZASF Section A Response (Sept. 16, 2019), p. A-4, Exhibit A-1, PR 114-121,

CR 28-31.  ZASF reported that Vietnam was its largest third country market, and that its sales

volume to Vietnam during the POR even exceeded its sales volume to the United States (i.e.,

[                                        ]).  <u>Id.</u>  ZASF also reported that 100% of the

shrimp products that ZASF sold to both the United States and Vietnam were uncooked, headless,

shell-on, non-deveined, tail-on products sold in block form, and that 96% of the shrimp products

sold to the United States and 93% of the shrimp products sold to Vietnam were the same species

of white vannamei shrimp.  <u>Id.</u>  ZASF reported that in both the United States and Vietnam it had

a "single channel of distribution," that the sales processes within this channel were identical for

both markets, that all sales to Vietnam and the United States were made by the same sales staff,

that most sales to both markets were made on a "manufactured-to-order" basis, that all sales were

made to unrelated customers, and that ZASF's selling activities were the same for sales to both

Vietnam and the United States.  <u>Id.</u> pp. A-12 to A-18.  ZASF reported further that it negotiated

the price and quantity of all sales to all market "on a sale-specific basis"; that it had "no control

over or information regarding the re-sale of the goods by customers"; and that it identified the

market for the goods sold "by reference to the commercial invoice, bill of lading, and shipping

documents." Id. pp. A-18 to A-19.  Importantly, ZASF expressly stated that it was "not aware of

any instance where its merchandise sold to a third country was resold or shipped to the U.S." Id.

p. A-27.

On September 26, 2019, Domestic Producers, Ad Hoc Shrimp Trade Action Committee

("AHSTAC"), commented on what third-country comparison market Commerce should use in

the review, and requested that Commerce seek more information from ZASF regarding the basis

for its representations above.  See AHSTAC Comments on ZASF Section A Response (Sept. 26,

2019), p. 2, PR 94.  In its comments, AHSTAC alleged that a substantial volume of ZASF's

shipments of shrimp to Vietnam were to Vietnamese companies that "have been subject to and,

in most cases, actively participated in the Department's proceedings regarding the antidumping

duty order on certain frozen warmwater shrimp from the Socialist Republic of Vietnam." Id. p.

3.  AHSTAC identified one of ZASF's Vietnam customers, in particular, as the Minh Phu Group,

which it indicated as having "a significant competitive advantage over other Vietnamese shrimp

exporters in the U.S. marketplace as the result of its exclusion from the antidumping duty order

on certain frozen warmwater shrimp from the Socialist Republic of Vietnam."  AHSTAC argued

that ZASF should explain "why it would be reasonable to conclude that {ZASF's Vietnam

customers} are consuming the merchandise in Vietnam" and that Commerce should "require

ZASF to provide a more fulsome and comprehensive justification for the claim that it is not

aware of any instance where its merchandise sold to a third country was resold or shipped to the

U.S." Id. p. 7.

On October, 2 2019, ZASF responded to Commerce's Supplemental Questionnaire for

Selection of Comparison Market (Sept. 25, 2019), PR 92, confirming that Vietnam was the

company's largest third country market and that the shrimp products sold to Vietnam were more

similar to those sold to the United States in terms of product mix and volume than those sold to

any other third country.  See ZASF Supplemental Questionnaire Response for Comparison

Market Selection (Oct. 2, 2019), pp. S-2, S-4, PR 122, CR 33.  ZASF reported that while the

shrimp products that it sold to Vietnam generally were [          ] than the shrimp products it sold

to the United States (i.e., [

                                                                 ]), and typically were sold in metric-sized

containers (e.g., [                                                ]), all the products sold to the United States and

Vietnam were uncooked, headless, shell-on, tail-off, vannamei species shrimp products.  Id. pp.

S-4 to S-12.

On October 4, 2019, ZASF responded to the remaining sections of the AD questionnaire

(i.e., sections B, C, and D, covering comparison market sales to Vietnam, U.S. sales, and costs of

production, respectively).  ZASF Sections B, C, D Response (Oct. 4, 2019), PR 123-147, CR 34-

37.  And in January 2021, ZASF responded to a supplemental sales and cost questionnaire from

Commerce, and provided substantial additional information regarding its sales to Vietnam.

ZASF Supplemental Sections ABCD Response (Jan. 2, 2021), PR 148-159, CR 45-60.

Thereafter, Commerce issued ZASF a second supplemental questionnaire that reflected many of

the questions presented in AHSTAC's September 26, 2019, comments addressing why Vietnam

was an appropriate comparison market and whether ZASF knew what its Vietnam customers did

with the shrimp they purchased from ZASF.  Commerce's Second Supplemental Questionnaire

(Jan. 14, 2020), PR 111, CR 64.  In response, ZASF fully explained the extent of its knowledge

regarding the ultimate destination of the shrimp products that it sold to.  ZASF Second

Supplemental Response (Jan. 29, 2019), PR 160-163, CR 65-69.  ZASF confirmed (and

supported with documentary evidence) that:

- In the normal course of business, ZASF received purchase orders from its Vietnam customers that clearly specified Vietnam as the destination of the shipments (Id. p. S2-4).

- The bills of lading for the shipments to Vietnam identified the Vietnamese ports of discharge (Id. p. S2-4).

- The Indian Government health certificates issued also identified Vietnam as the final destination of the shipments (Id. p. S2-4).

- ZASF was not aware of any instance in which merchandise sold to a third country, including Vietnam, was resold to the United States (Id. p. S2-4).

- ZASF sent analytical testing reports, health certificates, survey reports, certificates of export, and certificates of origin to all export customers (or to their customers' banks or to both) *regardless* of export shipment destination (Id. pp. S2-1 to S2-3).

- Based on the purchase orders, commercial invoices, bills of lading, health certificates, and nature of activity performed by its customers, ZASF's understanding was that all the shrimp products that it shipped to Vietnam were consumed in Vietnam (Id. p. S2-4).[2]

- None of the documentation or communications from ZASF's customers in Vietnam indicated that ZASF's shrimp sales to Vietnam were destined for other markets (Id. p. S2-6).

- The shrimp products sold by ZASF to the United States and Vietnam were comparable in terms of price, customer category, types of products, payment terms, delivery terms (Id. pp. S2-6 to S2-7).

- The differences in shrimp sales to the United States and Vietnam related mostly to units of measure (metric for metric countries, English for the United States), delivery times (shorter shipments, shorter time; longer shipments, longer time), and sales terms (shipments to the U.S. market were made under "delivered duty paid" terms of sale) (Id. pp. S2-6 to S2-7).

---

[2]   The documentation showing payment for the shrimp merchandise sold by ZASF to Vietnam also identified payment by the Vietnam customers.  *See, e.g.*, ZASF Section A Response (September 16, 2020), Exhibit A-7(b), PR 118-119, CR 28-29.

- ZASF sold to Vietnam customers through commission agents and ZASF already was working with these same commission agents prior to making its sales to Vietnam (Id. p. S2-10).

- ZASF's understanding was that its customers in Vietnam were processors and traders of shrimp and that the customers were purchasing shrimp products for further processing (Id. p. S2-11).

Importantly, ZASF also provided information establishing that while the U.S. market relies mainly on larger shrimp, ZASF mostly sold smaller-sized shrimp to Vietnam, and that because small shrimp cannot be processed into large shrimp, ZASF reasonably understood that the shrimp it sold to Vietnam would not be redirected to the United States. Id. p. S2-7. Moreover, ZASF established that while the U.S. market relied primarily on shrimp containing preservatives, ZASF's sales to Vietnam did not contain preservatives, thus indicating that the shrimp it shipped to Vietnam would not be redirected to the United States in the form in which it was sold. Id. p. S2-8. ZASF further confirmed that while the shrimp sold directly to the United States was packaged in [                    ], its packaging for Vietnamese shipments usually was in [                              ], thus demonstrating that ZASF's Vietnam shrimp sales were comparable, but not identical, to the normal U.S. packaging requirements. Id. p. S2-9.

On February 27, 2020, Commerce issued its preliminary results in the review. See Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) ("Preliminary Results"), PR 169, and accompanying unpublished Preliminary Decision Memorandum (Dep't Commerce Feb. 27, 2020), PR 166. Because the aggregate volume of ZASF's home market sales was insufficient to permit a proper comparison with U.S. sales of the subject merchandise (i.e., the volume of home market sales of the foreign like product was less than five percent of the volume of U.S. sales), Commerce could not use ZASF's Indian home market sales to establish normal value. Preliminary Decision Memorandum, p. 9, PR 166.

Although ZASF had reported complete information for its sales of frozen shrimp products to

Vietnam during the POR, Commerce determined that ZASF's Vietnam sales were not suitable

for establishing normal value, and calculated ZASF's dumping margin by comparing ZASF's

U.S. sales instead to "constructed value" in accordance with section 773(a)(4) of the Act and 19

C.F.R. § 351.404.  Preliminary Decision Memorandum, p. 11, PR 166.  Other than referencing

"concerns regarding the nature of the sales to the comparison market," id. p. 11, and alluding to

"trade patterns evidenced by Z.A. Sea Foods' customers in Vietnam," id. pp. 9, Commerce

provided no explanation for not relying on ZASF's Vietnam sales to establish normal value.

Using constructed value, Commerce calculated a 3.57% AD rate for ZASF, and assigned the

same rate to the 182 other Indian exporters subject to the review, including the other Plaintiffs in

this appeal.  See 85 Fed. Reg. at 13132-13134, PR 169.

In April 2020, Plaintiff ZASF submitted a case brief and AHSTAC and the American

Shrimp Processors Association ("ASPA") submitted rebuttal briefs addressing Commerce's

Preliminary Results decision to use constructed value instead of ZASF's sales to Vietnam to

calculate normal value.  See ZASF Case Brief (April 10, 2020), PR 180, CR 79; AHSTAC

Rebuttal Brief (April 17, 2020), PR 182; ASPA Case Brief (April 17, 2020), PR 181, CR 80.  Six

months following the submission of briefs, Commerce placed on the record of the review a U.S.

Customs and Border Protection ("CBP") determination in an Enforcement and Protection Act

("EAPA") investigation regarding the exportation of Indian-origin shrimp to the United States by

the Minh Phu Group after processing the shrimp in Vietnam.  See Commerce's Memorandum to

the File Re. CBP's "Notice of Determination as to Evasion in EAPA Case No. 7356 (Oct. 13,

2020)" (October 27, 2020) ("EAPA Determination"), PR 187.  In the investigation, CBP found

that the Minh Phu Group: (1) imported shrimp from multiple Indian suppliers into Vietnam for

processing; (2) stored and processed Indian-origin shrimp in the same facilities and locations in

which it processed Vietnam-origin shrimp; (3) processed and comingled Indian-origin shrimp

and Vietnam-origin shrimp in its production lines; and (4) did not maintain production records

sufficient to trace the processed Indian-origin shrimp through its production processes to its

sales.  Id. at pp. 3-10 of Attachment 1.  Although the Minh Phu Group claimed that it did not

ship Indian-origin shrimp to the United States, CBP found that the Minh Phu Group had

transshipped Indian-origin shrimp to the United States in at least some instances; and had evaded

U.S. duties by claiming the shrimp was of Vietnamese origin.  Id. at pp. 3-10 of Attachment 1.

 Plaintiff ZASF, AHSTAC, and ASPA all submitted comments on CBP's EAPA

determination.  See, e.g., ZASF's Comments on CBP EAPA Evasion Determination (November

3, 2020), PR 190.  None of the information contained in CBP's EAPA Determination indicated

that ZASF was aware of an evasion scheme by Minh Phu Group to re-export Indian-origin

shrimp from Vietnam to the United States, or that the Minh Phu Group actually re-exported

ZASF shrimp merchandise to the United States.  See EAPA Determination, pp. 1-10, PR 187.

Nor did any information in the EAPA Determination suggest that ZASF knew or should have

known the ultimate disposition of any shrimp products that ZASF sold to the Minh Phu Group or

to any customer in Vietnam during the POR (i.e., the EAPA determination contained no

evidence that established that ZASF's sales to Vietnam were or were not sold domestically in

Vietnam or were or were not re-exported from Vietnam after further processing).  Id. pp. 2-3.

The EAPA Determination did not reference ZASF, and indicated that Minh Phu purchased

shrimp for processing from multiple Indian suppliers.  Id. pp. 4-5.

 On December 20, 2020, Commerce issued its final results of review, and continued to

calculate ZASF's dumping margin by comparing ZASF's U.S. sales to constructed value.  See

<u>Final Results</u>, PR 199; IDM, PR 194.  Commerce concluded that "while there is no evidence on the record showing that ZA Sea Foods knew of the evasion scheme or knew that these sales may ultimately be destined for the United States, that does not mean that the Vietnamese sales are a permissible basis for {normal value}."  IDM, p. , PR 194.  Commerce modified the AD margin for ZASF in other small respects, and assigned ZASF and all other Plaintiffs a final review-specific dumping margin of 3.06%.  This appeal ensued.

## IV.     SUMMARY OF ARGUMENT

In accordance with section 773(a)(1)(B)(i) of the Act, Commerce normally uses home market sales as the basis for normal value.  In this review, Commerce compared the volume of ZASF's home market sales of the foreign like product to the volume of its U.S. sales of subject merchandise, in accordance with section 773(a)(1)(C) of the Act, and determined that the aggregate volume of ZASF's home market sales was insufficient to permit a proper comparison with U.S. sales of the subject merchandise (*i.e.*, the aggregate volume of home market sales of the foreign like product was not five percent or more of the aggregate volume of U.S. sales).  In such cases, Commerce's first alternate option is to use third-country sales of the foreign like product as the basis for normal value pursuant to section 773(a)(1)(C)(ii) and 19 C.F.R. § 351.404(f).  Because ZASF's largest third-country market was Vietnam, Commerce normally would have relied on ZASF's Vietnam sales to calculate normal value.  But based on Commerce's consideration of the trade patterns of ZASF's Vietnam customers, and one customer in particular, Commerce determined that ZASF's sales to Vietnam were unsuitable and instead calculated normal value for ZASF using constructed value.

Commerce erred in disregarding ZASF third-country sales to Vietnam as the basis for normal value.  ZASF's sales to Vietnam were substantial, were arm's-length, were shipped

directly to Vietnamese customers, were negotiated in good faith without ZASF having any

knowledge of whether or where the merchandise might be resold after further processing in

Vietnam, and were representative of ZASF's sales.  Commerce's consideration of the trade

patterns of ZASF's Vietnam customers was not reasonable because the downstream use and

trade of such shrimp merchandise was irrelevant to determining whether ZASF's own selling

prices to Vietnam were representative and made in the ordinary course of trade.  While the

antidumping statute authorizes Commerce to interpret ambiguous or unclear situations, it was not

reasonable for Commerce to disregard substantial portions of the administrative record, which

established that ZASF's sales to Vietnam were adequate, verifiable, and useable as comparison

sales for purposes of establishing normal value.  Moreover, in concluding that ZASF's sales to

Vietnam were part of a U.S. duty evasion scheme; that ZASF's sales to Vietnam should be

considered "U.S. sales"; and that  ZASF's sales to Vietnam were not "representative,"

Commerce ignored substantial record evidence, made conclusions that were unsupported by

substantial evidence, contradicted long-standing Commerce practice, and failed to make a

rational connection between the facts on the record and the conclusions drawn.

## V.    ARGUMENT

### A.    Statutory Framework for Establishing Normal Value

Pursuant to 19 U.S.C. § 1673, Commerce imposes AD duties on foreign goods if it

determines that the goods are being, or are likely to be, sold at less than fair value, and if the

United States International Trade Commission concludes that the sale of the merchandise below

fair value "materially injures, threatens, or impedes the establishment of an industry in the

United States."  Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1306 (Fed.

Cir. 2017).  Merchandise is sold at less than fair value when the product's normal value is greater

than the price charged for the product in the United States (represented by the product's export

price).  Union Steel v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013).  Commerce

determines dumping margins by "comparing the weighted average of the normal values to the

weighted average of the export prices (and constructed export prices) for comparable

merchandise."  19 U.S.C. § 1677f–1(d)(1)(A)(i).  The question in this case is whether

Commerce's reliance on constructed value instead of ZASF's selling prices to Vietnam as the

basis for normal value was supported by substantial evidence and was otherwise in accordance

with law.  The analysis thus begins with an examination of the statute, 19 U.S.C. § 1677b,

governing the calculation of normal value.

     The statute defines normal value as "the price at which the foreign like product is first

sold … for consumption in the exporting country, in the usual commercial quantities and in the

ordinary course of trade."  19 U.S.C. § 1677b(a)(1).  The starting point for determining normal

value therefore is home market sales.  The statute provides that the home market is not a viable

basis for determining normal value if:

> the administering authority determines that the aggregate quantity (or, if quantity
> is not appropriate, value) of the foreign like product sold in the exporting country
> is insufficient to permit a proper comparison with the sales of the subject
> merchandise to the United States.

19 U.S.C. § 1677b(a)(1)(C)(ii).  For the purposes of subparagraph (ii), home market sales "shall

normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the

aggregate quantity (or value) of sales of the subject merchandise to the United States."  19

U.S.C. § 1677b(a)(1)(C).  In this case, Commerce determined that ZASF's home market was not

viable during the POR based on data provided by ZASF, and no party disputes that finding.

Preliminary Decision Memorandum, p. 9, PR 166.

     When the home market is not viable, Commerce may look to third country sales to

determine normal value.  As with the home market, the statute provides that a third country

market must also be viable – specifically:

> the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like
> product sold by the exporter or producer in such other country is 5 percent or
> more of the aggregate quantity (or value) of the subject merchandise sold in the
> United States or for export to the United States.

19 U.S.C. § 1677b(a)(1)(B)(ii)(II).  If neither the home market nor the third country market is

found to be viable, Commerce may use constructed value to determine normal value, 19 U.S.C. §

1677b(a)(4).  But once Commerce is satisfied that a third country market is viable, any party

alleging that the prices to the third country are *not* representative bears the burden of establishing

that the criterion is not met.  See Alloy Piping Products v. United States, 26 C.I.T. 330, 339, 201

F.Supp.2d 1267, 1276 (2002) ("Alloy Piping"), citing 19 C.F.R. § 351.404(c)(2); Antidumping

Duties, Countervailing Duties: Final Rule, 62 Fed. Reg. 27296, 27357 (Dep't Commerce May

19, 1997) ("Preamble").

   Neither the statute, legislative history, nor regulations define "representative," but

Commerce's regulations do limit the inquiry of market viability to one criterion: the sufficiency

of sales in the third country.  See 19 C.F.R. § 351.404.  In Alloy Piping, the Court quoted from

the Preamble to explain Commerce's rationale for focusing on the sufficiency of the sales for the

purpose of establishing viability:

> {T}he criteria of a "particular market situation" and the "representativeness" of
> prices fall into the category of issues that the Department need not, and should
> not, routinely consider....  {T}he SAA at 821 recognizes that the Department must
> inform exporters at an early stage of a proceeding as to which sales they must
> report.  This objective would be frustrated if the Department routinely analyzed
> the existence of a "particular market situation" or the "representativeness" of third
> country sales.

201 F.Supp.2d 1267, 1276, citing Preamble, 62 Fed. Reg. at 27,357.  The Court in Alloy Piping

found this approach a reasonable application of the statute because the time frame within which

Commerce must conduct its investigations is necessarily very short.  Therefore, it was sensible to

establish a bright line rule for determining viability early in the process.  See id.  As noted above,

there was no dispute in this proceeding that ZASF's third-country market, Vietnam, was viable

during the POR.  See ZASF Section A Response (Sept. 16, 2019), Exhibit A-1 (showing that

ZASF's sales to Vietnam even exceeded its sales to the United States), PR 114-121, CR 28-31.

As such, ZASF's third-country sales to Vietnam were presumptively representative, and the

burden was on Commerce to establish that ZASF's Vietnamese selling prices were not

"representative."  For the reasons below, the Court should find that Commerce failed to satisfy

its burden in this case.

### B.  Commerce's Consideration of the Trade Patterns of ZASF's Customers Was Irrelevant and Unsupported by Substantial Evidence

Commerce's determination to disregard ZASF's sales to Vietnam because of the alleged

trade patterns of ZASF's customers was both irrelevant to the question of the representativeness

of ZASF's sales and unsupported by substantial evidence.  Over the course of the review, ZASF

submitted considerable information demonstrating that Vietnam was ZASF's largest third

country market and that, of all its third-country markets, Vietnam was the most similar to the

United States in terms of the product mix sold, the physical characteristics of the shrimp

merchandise, and the volume of sales.  See, e.g., ZASF Supplemental Questionnaire Response

for Comparison Market Selection (Oct. 2, 2019), pp. S-2 to S-12, PR 122, CR 33.  These factors

thus satisfied the regulatory criteria under 19 C.F.R. §§ 351.404(e)(1) and (2) for third country

market selection, and no party, including Commerce, contested that Vietnam was the most

appropriate third country to use for purposes of calculating normal value.  Nonetheless, in the

Preliminary Results, Commerce concluded that:

> {i}n the instant case, based upon Commerce's consideration of the trade patterns
> evidenced by Z.A. Sea Foods' customers in Vietnam (*i.e.*, the factor under 19
> CFR 351.404(e)(3)), we find that Z.A. Sea Foods' sales to Vietnam are not
> appropriate for consideration as comparison sales to establish NV in this review.
> Therefore, we used CV as our comparison for Z.A. Sea Foods' U.S. sales, in
> accordance with section 773(a)(4) of the Act and 19 CFR 351.404.

Preliminary Decision Memorandum, p. 9, PR 166.  Here, it was not reasonable for Commerce to

consider the downstream trade patterns of ZASF's Vietnam customers because ZASF had no

knowledge of how, whether, or where its Vietnam customers resold the shrimp products and

because the trade patterns are not relevant to whether ZASF's own sales **to** Vietnam were

representative.  In Welded Line Pipe From the Republic of Korea, Commerce found that:

> HYSCO sells welded line pipe to customers in Korea who may further process the
> product in a manner which may or may not transform the product into non-subject
> merchandise prior to export, may resell the pipe to another Korean customer
> before export, or may simply export the pipe "as is."  We found no evidence at
> verification, nor is there any other record evidence, to demonstrate that HYSCO
> had control over the merchandise after sale, or other knowledge sufficient to
> demonstrate that it knew or should have known that the pipe sold to its local
> domestic sales customers would be exported to specific foreign destinations
> without any further processing.

80 Fed. Reg. 61366 (Dep't Commerce Oct. 13, 2015), Issues and Decision Memorandum, at

Comment 6.  Based on these findings, Commerce concluded in Welded Line Pipe From the

Republic of Korea that HYSCO's sales to its customers in Korea were appropriately reported as

home market sales, *regardless of what their customers did with the merchandise*.  This logic is

consistent with the holding in Allegheny Ludlum Corp. United States, where the Court

confirmed that, in implementing the provisions of 19 U.S.C. §§ 1677a(a) and 1677b(a),

Commerce looks to whether the producer knew or should have known, at the time of a sale,

whether or not the merchandise will be exported.  See 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l

Trade 2000).  The same logic also applies equally to ZASF's third-country sales to Vietnam.  In

this case, ZASF reported that it had no control over the merchandise after its sales to Vietnam

and that it neither knew nor should have known that any frozen shrimp it sold to its Vietnamese

customers would be sold domestically after processing or re-exported.  ZASF Second

Supplemental Response (Jan. 29, 2019), S2-1 to S2-11, PR 160-163, CR 65-69.  Because ZASF

did not know the ultimate disposition of the shrimp products at the time of sale, it was

unreasonable and irrelevant for Commerce to base any decision on the representativeness of

ZASF's sales on the alleged trade patterns of ZASF's customers.

Even if the trade patterns were relevant, however, Commerce's conclusions were not

supported by substantial evidence.  Nothing on the administrative record establishes that the

shrimp sold to Vietnam by ZASF was *not* resold in Vietnam.  Nor is there any record evidence

that the shrimp sold to Vietnam by ZASF was *not* processed into merchandise outside the scope

of the antidumping duty order.  If ZASF's Vietnam customers had processed ZASF's shrimp into

breaded shrimp, battered shrimp, prepared meals, canned shrimp, or other forms of non-subject

shrimp merchandise, then the shrimp would have been "consumed" in Vietnam under long-

standing Commerce practice (regardless of whether the customers sold the downstream products

within Vietnam or exported such merchandise abroad).[3]  In this review, the administrative record

does not establish that ZASF's customers did *not* process the frozen shrimp purchased from

ZASF into merchandise not under consideration.  As such, Commerce erred in presuming that

---

[3]    Merchandise sold to a market, even if ultimately destined for export, is "consumed" in the
market if it is used there to produce non-subject merchandise prior to exportation.  *See Final
Determination of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat
Products, Certain Corrosion Resistant Carbon Steel Flat Products, and Certain Cut-to-
Length Carbon Steel Plate From Korea*, 58 Fed. Reg. 37176, 37182 (Dep't Commerce July
9, 1993); *Final Determination of Sales at less Than Fair Value: Dynamic Random Access
Memory Semiconductors of One Megabit and Above From the Republic of Korea*, 58 Fed.
Reg. 15467, 15473 (Dep't Commerce March 23, 1993) ("where a product within the scope of
an investigation has been transformed into a product outside that scope before exportation,
we consider that product to have been 'consumed' within the country").

such "consumption" in Vietnam did not occur, and Commerce's conclusion that ZASF's

Vietnam sales thus were not representative for purposes of calculating normal values was

unsupported by substantial evidence.

With respect to processing Indian-origin shrimp in Vietnam into non-scope merchandise,

Commerce claimed in the Final Results that "there is now evidence on the record to show that *no*

*such further processing* was done by {ZASF's} primary Vietnamese customer before the goods

were re-exported."  IDM, p. 17, PR 194 (emphasis added).  As support, Commerce cited the

EAPA Determination's conclusion that the Minh Phu Group entered commingled Indian- and

Vietnam-origin shrimp into the United States under the Vietnam AD order, and that such

merchandise therefore "was still in-scope merchandise."  Id. p. 17, PR 194.  But Commerce's

reasoning is faulty.  That some shrimp merchandise might not have been transformed into non-

scope merchandise does not support a conclusion that "no such further processing" was done.

Moreover, there is no record evidence that any of the scope merchandise that the Minh Phu

Group might have commingled and entered into the United States was purchased from ZASF.

Because ZASF did not know and should not have known that its sales to Vietnam might or might

not be re-exported after undergoing further manufacture, and because no evidence demonstrates

that ZASF's merchandise was re-exported (either as in-scope or non-scope merchandise), it was

unreasonable for Commerce to conclude that ZASF's sales **to** Vietnam were unsuitable for

establishing ZASF's normal values.

### C.     Commerce's Treatment of ZASF's Vietnam Sales as U.S. Sales Is Unsupported and Contradicts Long-Standing Practice With Respect to the "Knowledge Test"

Commerce determined in the Final Results that "some of {ZASF's sales to the Minh Phu

Group} ultimately entered the United States and are an unsuitable comparison for {ZASF's}

own sales to the United States" because "{s}uch a comparison would compare U.S. sales to U.S.

sales rather than U.S. sales to a third-country market."  IDM, p. 19, PR 194.  Substantial

evidence does not support these conclusions.  First, there is no evidence on the record that any

shrimp merchandise sold by ZASF to the Minh Phu Group or to any other Vietnam customer

"ultimately entered" the United States either after processing or without processing.  CBP's

EAPA Determination did not find that the Minh Phu Group channeled ZASF merchandise to the

United States.  See EAPA Determination, pp. 1-10 of Attachment 1, PR 187 (which does not

reference purchases from ZASF or even mention ZASF at all).  And no other information

collected by Commerce established that any ZASF merchandise sold to Vietnam ended up in the

United States.  It is simply a fiction for Commerce to state unequivocally that ZASF's

Vietnamese sales "ultimately entered the United States."  Second, even if Commerce "assumed"

that the shrimp products that ZASF sold to the Minh Phu Group (one of many of ZASF's

Vietnamese customers during the POR) ultimately were redirected to the United States after

processing, treating such ZASF's sales to Vietnam as "U.S. sales" contradicts decades of

Commerce practice with respect to whether sales not made to the United States nonetheless can

be considered U.S. sales.

As discussed above, under longstanding and well-established Commerce practice:  (1) the

seller's knowledge at the time of sale determines whether sales are U.S. sales transactions; and

(2) merchandise that is destined for a third country without any evidence establishing an actual

U.S. destination cannot be considered U.S. sales under the U.S. antidumping laws.  Commerce

has explained that:

> The Department's standard for the 'knowledge test' is well-established. . . .  In
> general, the Department's practice has been to consider documentary or physical
> evidence that the producer knew or should have known its goods were destined
> for the United States, because this type of evidence is more probative, reliable and

19

verifiable than unsubstantiated statements or declarations. . . .  This is not the only
type of evidence that the Department will consider.  An admission by the
producer or a representative of the producer to the Department that it knew of
the ultimate U.S. destination can also establish knowledge. . . . In some cases, the
Department might find other evidence to be relevant to the knowledge issue.  In
prior cases, the Department has considered whether the relevant party prepared or
signed any certificates, shipping documents, contracts, or other such documents
stating that the merchandise was destined for the United States. . . .  The
Department has also considered whether the relevant party used any packaging or
labeling stating that the merchandise was destined for the United States. . . .
Additionally, the Department has examined whether the features, brands, or
specifications of the merchandise indicated that it was destined for the United
States. . . .  These factors considered by the Department in past knowledge
determinations were relied upon by the Department in order to determine whether
the producer had constructive knowledge (*i.e.*, should have known) that the goods
were destined for the United States. . . .  In other words, we were able to
determine whether or not a producer should have known that its merchandise was
destined for export to the United States by examining evidence on record that the
producer or relevant party used packaging or labeling materials unique to U.S.
sales of the merchandise under investigation or review or signed documentation
stating the ultimate U.S. destination.

It is important to note that a general knowledge or belief on the part of a producer
that an exporter generally sells to the United States is insufficient to establish
knowledge with respect to particular sales.  Rather, the standard for making a
knowledge determination is that the producer must have reason to know *at the
time of the sale* that the *specific sales* of subject merchandise were destined for the
United States. . . .  The possibility that the producer may have speculated that the
goods might ultimately be destined for the United States is insufficient for a
knowledge determination.  Rather, the standard is whether the producer knew or
should have known at the time of the sale that the goods were destined for the
United States.

Certain Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty

Administrative Review, 76 Fed. Reg. 36086 (June 21, 2011) ("Mexican Standard Pipe"), and

accompanying Issues and Decision Memorandum (June 13, 2011) at Comment 1 (internal

citations omitted).  In Mexican Standard Pipe, Commerce found that the Mexican respondent had

no knowledge at the time of sale that any specific sale of standard pipe to its Mexican customer

was destined for the United States.  Neither the documentation, packaging, nor any aspects of the sale indicated the United States as the final destination of the merchandise sold.

In this case, Commerce not only disregarded the knowledge test, but turned it upside down.  First, Commerce ignored all the record evidence (including purchase orders, invoices, bills of lading, export certificates, health certificates, payment documentation, and packaging) that established that ZASF had no actual or constructive knowledge that its sales to Vietnam might be processed and re-exported to the United States.  Second, Commerce expressly asserted that ZASF's knowledge did not matter, concluding in the <u>Final Results</u> that:

- "there is no documentation on the record showing that ZA Sea Foods had knowledge that its Vietnamese sales may ultimately be re-exported to the United States," IDM, p. 16, PR 194;

- "ZA Sea Foods itself may have been unaware of re-exports to the United States," IDM, p. 16, PR 194;

- "the record does not indicate that ZA Sea Foods was aware of the evasion scheme," IDM, p. 16, PR 194; and

- "there is no evidence on the record showing that ZA Sea Foods knew of the evasion scheme or knew that these sales may ultimately be destined for the United States."  IDM, p. 20, PR 194.

And yet, despite these acknowledgements, Commerce nonetheless considered all of ZASF's sales to Vietnam (including its sales to non-Minh Phu Group customers) to be to "U.S. sales," and thus "an unsuitable comparison for ZA Sea Foods' own sales to the United States." IDM, p. 19, PR 194.  It is impossible to square Commerce's conclusions with the factual assertions that Commerce made.  Commerce's determination that ZASF's sales to Vietnam should be considered sales to the United States (without any actual or constructive knowledge of such) was not supported by factual evidence, and the Court should remand this case to Commerce with instructions to correct this contradiction that led Commerce to disregard ZASF's third-country sales to Vietnam and to use constructed value to establish normal values.

### D. Commerce's Determination That ZASF's Sales to Vietnam Were Part of an Evasion Scheme Also Is Unsupported by Substantial Evidence

CBP's Evasion Determination also does not inform whether ZASF's Vietnam Sales were representative. In the <u>Final Results</u>, Commerce claimed that in addition to the trade patterns relied on in the <u>Preliminary Results</u>, "there is now additional information available on the record supporting the unsuitability of using sales to Vietnam to establish a comparison price for U.S. sales." IDM, p. 15, PR 194. This additional information – which was central to Commerce's resort to the use of constructed value to determine normal value – was CBP's determination in its EAPA investigation that a Vietnamese processor had evaded the Indian shrimp AD order by co-mingling Indian and Vietnamese shrimp in its processing operations and shipping the finished merchandise to the United States as shrimp solely of Vietnam origin. IDM, pp. 16, 17, 19, PR 194. Specifically, Commerce found that record evidence showed "an evasion scheme by one of {ZASF's} Vietnamese customers, the Minh Phu Group, to transship Indian shrimp through Vietnam to the United States" and that "sales that are found to be part of an evasion scheme are not an appropriate basis to use for comparison with sales made directly to the United States." IDM, pp. 16, PR 194.[4] But there is no evidence on the record that ZASF's sales to the Minh Phu

---

[4] On November 10, 2020, in response to a request from the Minh Phu Group, CBP's Office of Trade, Regulations and Rulings ("ORR"), commenced a *de novo* administrative review of the EAPA Determination of evasion. CBP's ORR issued its *de novo* administrative determination on February 11, 2021, in which it reversed the earlier determination of evasion, holding that there was insufficient evidence that Indian-origin shrimp was contained in the Minh Phu Group's entries during the period of investigation. CBP's reversal of its EAPA Determination occurred after the <u>Final Results</u> in this review, was not on the record of the review, and is being appealed before this Court in *Ad Hoc Shrimp Trade Enforcement Committee v. United States*, Ct. No. 21-00129. In any event, as discussed herein, Plaintiffs' position is that neither CBP's original EAPA Determination nor CBP's reversal of that determination are relevant to whether substantial evidence supports Commerce's determination that ZASF's sales to Vietnam were unrepresentative and thus unsuitable for establishing a comparison price for U.S. sales.

Group were part of the Minh Phu Group's duty evasion scheme, and none of the following

claims that Commerce relied on to find that ZASF's sales to Vietnam were not representative has

any support in the administrative record:

> {T}here is evidence that the prices of the Vietnamese sales are not representative
> due to the evasion scheme.
>
> The prices to Vietnam are not truly prices for consumption in Vietnam as the
> shrimp is exported without further processing.
>
> Further, in some cases, the prices to Vietnam are in fact prices for sales that
> eventually become U.S. sales, meaning that they cannot be representative of
> prices for sales in the third-country market because they are ultimately U.S. sales.
>
> Thus, the sales to the Minh Phu Group do not represent prices of sales made for
> consumption in Vietnam nor do they represent a third country given that they are
> resold to other countries including the United States.

IDM, pp. 16, PR 194.  There is no evidence that ZASF's selling prices to Vietnam (let alone its

selling prices to the Minh Phu Group) were not representative "due to the evasion scheme."

Commerce speculates that ZASF's shrimp products "were first sold to Vietnam shrimp

customers and then sold to customers in the United States, meaning that there had to be some

price advantage to the Vietnamese sales to make this scheme worthwhile, profitable, and price

competitive."  IDM, pp. 16, PR 194.  But the former part of this rationale has no support in the

administrative record and the latter is mere conjecture.  Moreover, Commerce acknowledged

numerous times that ZASF was "unaware of re-exports to the United States" and conceded

repeatedly that nothing showed that ZASF knew of the evasion scheme.  It was entirely arbitrary

and unreasonable for Commerce to assert that ZASF's prices were not representative because of

an evasion scheme that it knew nothing about.  See IDM, pp. 16, 19, 20, PR 194.

Moreover, Commerce's claim that the Indian-origin shrimp that the Minh Phu Group

shipped to the United States was "exported without further processing" is contradicted

throughout the EAPA Determination.  See, e.g., EAPA Determination, pp. 4-9 of Attachment 1,

PR 187 (finding that the Minh Phu Group imported Indian-origin shrimp from multiple Indian suppliers into Vietnam for *processing*; stored and *processed* Indian-origin shrimp in the same facilities and locations in which it processed Vietnam-origin shrimp; and *processed* and comingled shrimp of Indian-origin and Vietnamese-origin in its *production* lines).

Finally, Commerce's claims that "the prices to Vietnam are in fact prices for sales that eventually become U.S. sales" and "do not represent prices of sales made for consumption in Vietnam" are without foundation as there is no record evidence that establishes that the shrimp merchandise that ZASF sold to the Minh Phu Group or to any customers in Vietnam was not consumed in Vietnam or eventually comprised some, part, or all of any U.S. sale.

In sum, there is no evidence on the record that ZASF made sales to Vietnam with knowledge that a customer might engage in a duty evasion scheme, or that ZASF sold shrimp products to Vietnam at particular prices that facilitated or were in any way influenced by a U.S. duty evasion scheme, or that any of the shrimp that the Minh Phu Group sold to the United States was purchased from ZASF.  As such, there is no support for Commerce's conclusions that a duty evasion scheme supported the unsuitability of ZASF's Vietnam sales, and the Court should remand this case to Commerce with instructions to reconsider its decision without such speculation and conjecture.

### E. Commerce's Determination That ZASF's Sales to Vietnam Were Not Representative Ignores Substantial Record Evidence

Commerce's decision on the "representativeness" of ZASF's sales also is unsupported by substantial evidence because Commerce failed to consider contradictory evidence that ZASF's sales to Vietnam *were* representative.  Commerce claimed that "serious issues were discovered during the course of this review with {ZASF's} Vietnamese sales," IDM, p. 21, PR 194, but Commerce did not identify any of those issues.  For example, Commerce did not identify or

highlight any problems with the quantities, prices, terms of sale, terms of payment, product mix,
and expenses of ZASF's sales to Vietnam, nor question any aspect of ZASF's reported third-
country sales database.  Significantly, Commerce made no effort to examine the individual sales
prices to Vietnam or to compare the selling prices of shrimp products to Vietnam customers who
were processors to the selling prices to customers that were not.  Nor did Commerce
acknowledge that the shrimp products that ZASF sold to Vietnam, among sales to all third
countries, were the most similar to those sold to the United States in terms of product mix and
sales volumes.  See ZASF Supplemental Questionnaire Response for Comparison Market
Selection (Oct. 2, 2019), pp. S-2, S-4, PR 122, CR 33.  Nor did Commerce recognize that ZASF
had a "single channel of distribution" in both the United States and Vietnam, that the sales
processes within this channel were identical for both markets, that all sales to Vietnam and the
United States were made by the same sales staff, that most sales to both markets were made on a
"manufactured-to-order" basis, that all sales were made to unrelated customers, and that ZASF's
selling activities were the same for sales to both Vietnam and the United States.  ZASF Section
A Response (Sept. 16, 2019), p. A-12 to A-18, PR 114-121, CR 28-31.

In addition, while the shrimp products that ZASF sold to Vietnam generally were
[          ] than the shrimp products sold to the United States and mostly were sold in metric-sized
containers (i.e., normal for countries that follow the metric system), all the products sold to
Vietnam shared the same major physical characteristics as those sold to the United States: i.e.,
they all were uncooked, headless, shell-on, tail-off, vannamei species shrimp products.  Id. pp. S-
4 to S-12.  In this respect, all of ZASF's sales to Vietnam were representative of each other and
of sales to the United States.  In addition, ZASF's sales to Vietnam were made to a number of
different customers, and Commerce made no finding that ZASF's Vietnam sales were made in

non-commercial quantities, at unusual times during the period of review, with particular sales

terms, through unique channels, or that they were in any way atypical of ZASF's normal sales.

In failing to perform such analyses and to consider such factors, Commerce failed to demonstrate

that any of ZASF's sales prices **to** its Vietnam customers were unrepresentative or to recognize

that ZASF's sales prices **Vietnam** *were* representative.  Therefore, even if the downstream trade

patterns of ZASF's Vietnam customers (and the duty evasion scheme of one of them) were

relevant, Commerce ignored significant other information showing that ZASF's sales to Vietnam

were representative.  See Universal Camera Corp v. NLRB, 340 U.S. 474, 488 (1951) ("The

substantiality of evidence must take into account whatever in the record fairly detracts from its

weight").

Commerce's failure to discuss at all the representative aspects of ZASF's sales to

Vietnam rendered Commerce's decision arbitrary and unsupported by substantial evidence.  By

ignoring detracting evidence and by not citing any "serious problems" that undermined the

legitimacy of the sales prices **to** Vietnam that ZASF reported to determine normal value,

Commerce reached a decision to calculate ZASF's normal value based on constructed value that

was unsupported by substantial evidence.

### F.    Commerce Misinterpreted the Regulatory Preference for Using Third-Country Sales Over Constructed Value to Establish Normal Value

A final aspect of Commerce's reliance on constructed value instead of ZASF's sales to

Vietnam as the basis for normal value in this case was not in accordance with law.  In the Final

Results, Commerce concluded that

> {O}ther regulations under 19 CFR 351.404 support the use of CV rather than
> third-country sales for NV.  The language in 19 CFR.404(a) states that, while
> Commerce generally prefers to use home market sales, section 773 of the Act
> "also permits use of sales to a third country or constructed value as the basis for
> normal value" and *does not specify a preference for third-country sales over CV*.

Plaintiffs' Rule 56.2 Memorandum                                    *Public Version*
Court No. 21-00031

IDM pp. 19-20, PR 194 (emphasis added).  Commerce thus suggests that its regulations not only

do not state a preference for establishing normal value if home market sales are not available, but

in fact support the use of CV over third country sales.  But while the statute grants Commerce

discretion to choose third country sales or constructed value and 19 C.F.R. § 404(a) does not

articulate an order of preference, 19 C.F.R. § 404(f) clearly establishes a preference for third

country sales as the basis for normal value.  The regulation provides:

> (f) *Third country sales and constructed value*.  The Secretary normally will
> calculate normal value based on sales to a third country rather than on constructed
> value if adequate information is available and verifiable … . "  19 C.F.R. §
> 351.404(f).

The inclusion of the word "normally" in the regulation necessarily anticipates exceptions, and

Commerce asserts that "the facts surrounding ZA Sea Foods's Vietnamese sales" is an

"exceptional situation."  IDM p. 20, PR 194.  At the same time, however, Commerce appears to

defend its normal value decision on its premise that "other regulations under 19 CFR 351.404"

establish a preference for the use of constructed value rather than third-country sales for normal

value.  In this respect, Commerce is mistaken.  In 2016, Commerce proposed to modify its

regulations pertaining to the use of constructed value or third country sales for purposes of

determining normal value where the exporting country does not constitute a viable market.

Commerce's modification would have specified that:

> Where the exporting country does not constitute a viable market, the Department
> normally will calculate normal value based upon constructed value.  This
> modification *would invert the preexisting order of preference* that, where the
> exporting country does not constitute a viable market, the Department normally
> calculates normal value based on sales in a viable third country.

Modification of Regulations Regarding Basis for Normal Value, 81 Fed. Reg. 58419 (Dep't

Commerce Aug. 25, 2016) (emphasis added).  Commerce never implemented its proposed

changes, and 19 C.F.R. § 351.404(f) continues to establish a preference for basing normal value

on third-country prices instead of constructed value.  Commerce cannot assert a new order of

preference that conflicts with the existing regulatory standard.

In this case, there is no question that Z.A. Sea Foods submitted a complete and reconciled

Vietnam export sales database in the format required by Commerce.  See ZASF Sections B, C, D

Response (Oct. 4, 2019), PR 123-147, CR 34-37.  Given that adequate information regarding

ZASF's Vietnam export sales was both available and verifiable, and given that there were no

applicable exceptions to the rule in this case, Commerce unreasonably departed from the 19

C.F.R. §351.404(f) regulatory preference of using third country sales over constructed value

when it compared ZASF's U.S. prices to constructed value.

## VI.   <u>RELIEF REQUESTED</u>

The statute, regulations, and the record evidence do not support Commerce's

determination in this proceeding.  For the reasons set forth above, Plaintiffs respectfully request

that this Court:  (1) determine that Commerce's final results of review of the antidumping duty

order on certain frozen warmwater shrimp from Vietnam were unsupported by substantial

evidence on the record and were otherwise not in accordance with law; (2) remand this case to

Commerce with instructions to revise the <u>Final Results</u> consistent with the findings of the Court;

and (3) provide such other or additional relief as this Court may deem just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

<u>/s/ Robert G. Gosselink</u>
Robert G. Gosselink
Jonathan M. Freed

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760
*Counsel to Plaintiffs*

</div>

Dated:  June 18, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED,<br>B-ONE BUSINESS HOUSE PVT. LTD.,<br>HARI MARINE PRIVATE LIMITED,<br>MAGNUM EXPORT,<br>MEGAA MODA PVT. LTD.,<br>MILSHA AGRO EXPORTS PRIVATE LTD.,<br>SEA FOODS PRIVATE LIMITED,<br>SHIMPO EXPORTS PRIVATE LIMITED,<br>FIVE STAR MARINE EXPORTS PVT. LTD.,<br>HN INDIGOS PRIVATE LIMITED,<br>RSA MARINES, AND ZEAL AQUA LTD.,<br><br>        Plaintiffs,<br>   v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>    and<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>        Defendant-Intervenor. | Court No. 21-00031 |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Memorandum of Law in Support of Plaintiffs' Rule 56.2 Motion for Judgment upon the Agency Record, dated June 18, 2021, complies with the 14,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures. The memorandum of law contains 9,328 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760
*Counsel to Plaintiffs*

Dated: June 18, 2021