## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, and ZEAL AQUA LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) **Before: Gary S. Katzmann, Judge** ) |
| v. | ) **Court No. 21-00031** ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| AD HOC SHRIMP TRADE ACTION COMMITTEE | ) ) ) |
| Defendant-Intervenor. | ) ) |

## PROPOSED JUDGMENT

Upon consideration of Plaintiffs' Motion for Judgment on the Agency Record, Defendant

United States' response thereto, Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee's

response thereto, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the USCIT Rule 56.2 Motion for Judgment on the Agency Record filed by

Plaintiffs is denied; and it is further

**ORDERED** that the Complaint filed by Plaintiffs is dismissed.

**SO ORDERED.**

_____
Gary S. Katzmann, Judge

Dated: _____
New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, and ZEAL AQUA LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Before: Gary S. Katzmann, Judge |
| v. | ) ) | Court No. 21-00031 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE | ) ) ) | |
| Defendant-Intervenor. | ) ) ) | |

## DEFENDANT-INTERVENOR AD HOC SHRIMP TRADE ACTION COMMITTEE'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Nathaniel Maandig Rickard
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street N.W.
Suite 800
Washington, D.C. 20006
(202) 331-4040

*On behalf of the Ad Hoc Shrimp
Trade Action Committee*

September 2, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION .................................................................................................................1

STATEMENT PURSUANT TO RULE 56.2 .......................................................................1

     **A.**   **The Administrative Determination Under Review** .....................................1

     **B.**   **Issue Presented for Review** ........................................................................2

STATEMENT OF FACTS .....................................................................................................2

     **I.**   ADMINISTRATIVE PROCEEDING AT ISSUE ...........................................2

     **II.**   COMMENCEMENT OF THIS ACTION ........................................................8

SUMMARY OF ARGUMENT ..............................................................................................8

STANDARD OF REVIEW ....................................................................................................9

ARGUMENT ..........................................................................................................................10

     **I.**   COMMERCE PROPERLY USED CONSTRUCTED VALUE TO DETERMINE NORMAL VALUE ......................................................................10

          **A.**   **Legal Framework Controlling Commerce's Determination of Normal Value**..................................................................................................11

          **B.**   **Record Evidence Supports Commerce's Factual Findings That ZA Sea Foods' Sales To Vietnam Were Not Representative** .................................14

CONCLUSION .......................................................................................................................20

i

## TABLE OF AUTHORITIES

### CASES

*Allegheny Ludlum Corp. v. United States,*
  215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ................................................................17

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States,*
  No. 2020-2014, 2021 U.S. App. LEXIS 21386 (Fed. Cir. July 20, 2021)...................9, 10

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938).....................................................................................................9

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966).....................................................................................................9

*F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States,*
  216 F.3d 1027 (Fed. Cir. 2000)...................................................................................10

*Goldlink Industries Co. v. United States,*
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................................................9

*Husteel Co. v. United States,*
  Consol. No. 19-00112, 2021 Ct. Intl. Trade LEXIS 76 (Ct. Int'l Trade June 7, 2021) .............13, 15

*INS v. Elias-Zacarias,*
  502 U.S. 478 (1992).....................................................................................................9

*Matsushita Elec. Industrial Co. v. United States,*
  750 F.2d 927 (Fed. Cir. 1984)......................................................................................9

*Nucor Corp. v. United States,*
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ................................................................9

*Shandong Huarong Gen. Corp. v. United States,*
  159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ..................................................................9

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
  672 F.3d 1041 (Fed. Cir. 2012).....................................................................................11

*Stupp Corp. v. United States,*
  413 F. Supp. 3d 1326  (Ct. Int'l Trade 2019) ................................................................15

*Viraj Forgings, Ltd. v. United States,*
  283 F. Supp. 2d 1335 (Ct. Int'l Trade 2003) ................................................................13

## STATUTES

19 U.S.C. § 1516a ..................................................................................................9

19 U.S.C. § 1677a ...............................................................................................11

19 U.S.C. § 1677b ........................................................................................*passim*

## REGULATIONS

19 C.F.R. § 351.404 ...................................................................... 4, 13, 14-15

## ADMINISTRATIVE DETERMINATIONS

Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) ..........................................................*passim*

Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) 7, 14-15

Certain Frozen Warmwater Shrimp From India: Rescission of Antidumping Duty Administrative Review; 2018– 2019, in Part, 84 Fed. Reg. 62,506 (Dep't Commerce Nov. 15, 2019) ....................3

Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review, 76 Fed. Reg. 36,086 (Dep't Commerce June 21, 2011) ..................... 18-19

Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005) .......................................................................................................2

Welded Line Pipe From the Republic of Korea: Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) .......................................17

## OTHER AUTHORITIES

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316 (1994) ................................................................................................................. 13-14

**INTRODUCTION**

Pursuant to this Court's order of April 12, 2021, as amended by the Court's orders of June 1, 2021 and August 25, 2021, Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC" or "Domestic Producers"), an association of domestic producers of warmwater shrimp, hereby submits its response to the motion for judgment on the agency record filed by Plaintiffs Z.A. Sea Foods Private Limited ("ZA Sea Foods"), B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited (collectively, the "Plaintiffs"). See Pls.' Rule 56.2 Mot. for J. Upon the Agency R., June 18, 2021, ECF Nos. 26 and 27.[1]  AHSTAC respectfully requests that Plaintiffs' motion for judgment on the agency record be denied and that judgment be entered in favor of Defendant the United States for the reasons detailed below.

**STATEMENT PURSUANT TO RULE 56.2**

A.     **The Administrative Determination Under Review**

The administrative determination under review is the final results of the fourteenth administrative review ("AR14") of the antidumping duty order covering certain frozen warmwater shrimp from India.[2]  See Certain Frozen Warmwater Shrimp From India: Final

---

[1]     Plaintiffs filed both Confidential and Public Versions of their brief in support of their motion for judgment upon the agency record. See Mem. in Supp. of the Rule 56.2 Mot. of Pls. for J. on the Agency R., June 18, 2021, ECF Nos. 26 and 27 ("Pls.' Brief").  This response cites only to the Public Version of Plaintiffs' brief.

[2]     The antidumping duty order on frozen warmwater shrimp from India was issued in February 2005 and includes within its scope "warmwater shrimp and prawns, whether frozen, wild-caught (ocean harvested) or farm-raised (produced by aquaculture), head-on or head-off, shell-on or peeled, tail-on or tail-off, deveined or not deveined, cooked or raw, or otherwise processed in frozen form."  See Notice of Amended Final

1

<u>Results of Antidumping Duty Administrative Review and Final Determination of No Shipments;</u>

<u>2018-2019</u>, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) ("<u>Final Results</u>"), P.R. 199.[3]

The challenged determinations, findings, and conclusions are set out primarily in the "Issues and

Decision Memorandum" accompanying the <u>Final Results</u>. <u>See</u> Issues and Decision

Memorandum for the Final Results of the 2018-2019 Antidumping Duty Administrative Review

of Certain Frozen Warmwater Shrimp from India (Dec. 21, 2020) ("AR14 IDM"), P.R. 194,

available at: https://enforcement.trade.gov/frn/summary/india/2020-28753-1.pdf.

The <u>Final Results</u> apply to entries of subject merchandise made from February 1, 2018

through January 31, 2019 (the "POR"). <u>Final Results</u>, 85 Fed. Reg. at 85,580.

### B.    Issue Presented for Review

Plaintiffs present a single issue for this Court's review:

> Whether Commerce appropriately used constructed value, instead of third-country sales to Vietnam, to determine the normal value of ZA Sea Foods' merchandise when record evidence demonstrated that the company's sales to Vietnam were not representative.

## STATEMENT OF FACTS

## I. ADMINISTRATIVE PROCEEDING AT ISSUE

Based on administrative review requests filed by AHSTAC and other interested parties,

<u>see, e.g.</u>, Letter from Picard Kentz & Rowe LLP to Commerce, "Request for Administrative

Reviews" (Feb. 28, 2019), P.R. 12, Commerce initiated its 14th administrative review of the

---

<u>Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India</u>, 70 Fed. Reg. 5,147, 5,148 (Dep't Commerce Feb. 1, 2005).

[3]   All citations in this response brief to documents contained in the administrative record of the underlying proceeding are to public documents or public versions of business proprietary documents. Citations to these documents include the "P.R." document number from the public record index filed with the Court. <u>See</u> Public Index to the Administrative Record, Mar. 9, 2021, ECF No. 19-5.

antidumping duty order on frozen warmwater shrimp from India on May 2, 2019.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 18,777 (Dep't Commerce May 2, 2019), P.R. 16.  Following initiation, Commerce determined that it was not practicable to determine weighted-average dumping margins for each known exporter and producer because of the large number of such entities involved in the proceeding, see 19 U.S.C. § 1677f-1(c)(2), and chose to limit its review to the two largest exporters and producers under review – Devi Fisheries Group ("Devi Fisheries") and Falcon Marine Exports Limited ("Falcon Marine").  Department Memorandum, "Selection of Respondents for Individual Review," (June 25, 2019), P.R. 36.

All interested parties withdrew their respective requests that Commerce individually review Devi Fisheries and Falcon Marine in July 2019.[4]  See Department Memorandum, "Selection of New Respondents for Individual Review," at 2 (Aug. 8, 2019), P.R. 66.  Thereafter, Commerce, again relying on section 777A(c)(2) of the Tariff Act of 1930 to limit its review to the "largest exporters of shrimp to the United States during the POR," selected ZA Sea Foods and Razban Seafoods Ltd. ("Razban") to replace Devi Fisheries and Falcon Marine as mandatory respondents.[5]  Id. at 3-4, P.R. 66.  The day after selecting ZA Sea Foods and Razban as mandatory respondents, Commerce issued the respondent companies its standard antidumping

---

[4]     Commerce formally rescinded AR14 with respect to Devi Fisheries Group and Falcon Marine Exports Limited and certain other Indian exporters and producers in November 2019.  See Certain Frozen Warmwater Shrimp From India: Rescission of Antidumping Duty Administrative Review; 2018– 2019, in Part, 84 Fed. Reg. 62,506 (Dep't Commerce Nov. 15, 2019), P.R. 99.

[5]     In the Final Results, Commerce determined that Razban had no shipments of the subject merchandise during the POR and ordered that all shipments of subject merchandise entered during the POR using Razban's unique ten-digit case number be assessed antidumping duties at the all-others rate in effect at the time of entry.  Final Results, 85 Fed. Reg. at 85,581; Customs Message No. 1040405 (Feb. 9, 2021), P.R. 204.

duty questionnaire to determine whether subject merchandise produced and/or exported by these entities was being sold in the United States at dumped prices.  See Letter from Commerce to ZA Sea Foods, "Request for Information: Antidumping Duty Administrative Review" (Aug. 8, 2019), P.R. 68.

Relevant to this appeal, ZA Sea Foods' response to Commerce's antidumping duty questionnaire explained that the company's sales in India (i.e., the company's home market) accounted for less than five percent of the volume of its sales in the United States.  Letter from ZA Sea Foods to Commerce, "ZASF's Section A Questionnaire Response," at A-4 (Sept. 16, 2019) ("ZA Sea Foods Section A Response"), P.R. 114.[6]  Because ZA Sea Foods' home market sales were less than five percent by volume of its sales to the United States, ZA Sea Foods' home market sales were of insufficient quantity for India to be considered a viable comparison market.  See 19 C.F.R. § 351.404(b)(2); 19 U.S.C. § 1677b(a) ("In determining . . . whether subject merchandise is being . . . sold at less than fair value, a fair comparison shall be made between the export price or constructed export price and normal value.").  Therefore, consistent with Commerce's questionnaire, ZA Sea Foods reported to the agency the quantity and value of frozen warmwater shrimp sold to ZA Sea Foods' three largest third-country markets – Vietnam, Japan, and the Netherlands – to determine whether the exporter's normal value could be determined based on third-country sales.  See ZA Sea Foods Section A Response at Exhibit A-1(a).  According to ZA Sea Foods' Section A response, all shrimp sold in the U.S. and Vietnam markets were "uncooked, headless, shell on, undeveined, tail on, in block form, with no

---

[6]     ZA Sea Foods first submitted its response to Section A of Commerce's questionnaire on September 16th.  However, due to a "technical issue" with the public versions of several of ZA Sea Foods' filings with Commerce, the agency instructed ZA Sea Foods "to fix and re-submit" the public versions of its responses.  Department Memorandum, "Rejection of Public Versions" (Feb. 14, 2020), P.R. 164.

flavor." Id. at A-4.  ZA Sea Foods further noted that 96 percent of its shrimp product sold in the

U.S. market were of white shrimp species compared to 93 percent in the Vietnam market.[7] Id.

at A-4 – A-5.

Based on deficiencies with ZA Sea Foods' response to Section A of Commerce's

questionnaire, the agency issued the company a supplemental questionnaire regarding its sales to

the United States, Vietnam, Japan, and the Netherlands.  See Letter from Commerce to ZA Sea

Foods, "Supplemental Questionnaire for Selection of Comparison Market," (Sept. 25, 2019),

P.R. 92. This letter sought additional information from ZA Sea Foods regarding the company's

third country sales.  See Id. at Attachment.  At the same time that Commerce issued ZA Sea

Foods its comparison market questionnaire, AHSTAC submitted comments to Commerce on ZA

Sea Foods' initial Section A response requesting that the agency seek further information from

ZA Sea Foods regarding the company's sales to Vietnam.  Letter from Picard Kentz & Rowe

LLP to Commerce, "Comments on Z.A. Sea Foods Private Limited's Section A Response and

Request for Verification," (Sept. 26, 2019) ("AHSTAC Section A Comments"), P.R. 94.

AHSTAC's submission provided information from a subscription trade data service showing that

an "overwhelming majority" of ZA Sea Foods' sales to Vietnam were to Vietnamese companies

that exported shrimp to the United States that have been subject to and, in most cases, have

actively participated in Commerce's proceedings regarding the antidumping duty order on

certain frozen warmwater shrimp from Vietnam.  Id. at 3-4.  For example, AHSTAC provided

trade data showing that roughly 60 percent of ZA Sea Foods' shipments to Vietnam during the

---

[7]     White shrimp refers to shrimp of the *Penaeus vannamei* species.  See AR14 IDM at 3
        (describing the shrimp species included within the scope of the antidumping duty order);
        ZA Sea Foods Section A Response at Exhibit A-11 (ZA Sea Foods' Product Brochure),
        P.R. 121.

POR were to three companies that, in part, comprise the Minh Phu Group.  Id. at 3-5.  AHSTAC also provided data from earlier Commerce antidumping duty proceedings showing that Minh Phu consumed imported shrimp as an input in its production of shrimp merchandise exported to the United States.  Id. at 5-6.  In light of this information, AHSTAC requested that Commerce "require {ZA Sea Foods} to provide a more fulsome and comprehensive explanation for why it is reasonable to rely" on the company's reported third-country sales to Vietnam to determine normal value.  Id. at 7.

In January 2020, Commerce issued ZA Sea Foods a supplemental questionnaire seeking additional information related to the company's sales to Vietnam for the purpose of ascertaining the suitability of using these sales in calculating normal value.  See Letter from Commerce to ZA Sea Foods, "Second Supplemental Questionnaire" (Jan. 14, 2020), P.R. 111.  This questionnaire noted in its cover letter that Commerce had "not issued a decision on the appropriate third country market."  Id.  In response to Commerce's January 14th supplemental questionnaire, ZA Sea Foods claimed that "none of the document {sic} or communication with customer" indicates that ZA Sea Foods is "aware that the shrimp it sells to Vietnam is destined for other markets." Letter from ZA Sea Foods to Commerce, "ZASF 2nd Supplemental Questionnaire Response," at S2-5 – S2-6 (Jan. 29, 2020), P.R. 160.  ZA Sea Foods made this claim despite acknowledging in the same submission that "most of the customer {sic} in Vietnam are processors."  Id. at S2-5. Indeed, ZA Sea Foods observed that "based on the website {of its Vietnamese customers} and discussion with commission agent ZASF understands that all Vietnamese customer {sic} are processors of shrimp."  Id. at S2-11; see also id. at Exhibits S2-6(a)-(b) (images of ZA Sea Foods' Vietnamese customers' websites).

On March 6, 2020, Commerce published the <u>Preliminary Results</u> of its administrative review of ZA Sea Foods.  <u>Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019</u>, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) ("<u>Preliminary Results</u>"); <u>see also</u> Decision Memorandum for the Preliminary Results of the 2018-2019 Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India (Feb. 27, 2020) ("AR14 PDM"), P.R. 166.  In the <u>Preliminary Results</u>, Commerce used a constructed value, instead of using ZA Sea Foods' reported third-country sales to Vietnam, to determine normal value.  AR14 PDM at 9, 11-12, P.R. 166.  Commerce explained that "ZA Sea Foods' sales to Vietnam are not appropriate for consideration as comparison sales to establish" normal value based on the agency's "consideration of trade patterns evidenced by ZA Sea Foods' customers in Vietnam."  <u>Id.</u> at 9.  Thus, in the <u>Preliminary Results</u>, Commerce used "ZA Sea Foods' raw materials and manufacturing costs incurred in producing the subject merchandise, plus amounts for selling, general, and administrative expenses, interest expenses, U.S. packing expenses, and profit" to determine a normal value based on constructed value.  <u>Id.</u> at 11; <u>see also</u> 19 U.S.C. § 1677b(e).

In the <u>Final Results</u>, Commerce continued to use a constructed value methodology, instead of ZA Sea Foods' third-country sales to Vietnam, to calculate normal value.  AR14 IDM at Comment 2, pp.8-21, P.R. 194.  Commerce's decision memorandum described record evidence "supporting the unsuitability of using sales to Vietnam to establish a comparison price for U.S. sales."  <u>Id.</u> at 15.  The agency noted that "ZA Sea Foods' primary customer in Vietnam, the Minh Phu Group, also exported shrimp to the United States."  <u>Id.</u> at 16.  Commerce further explained that ZA Sea Foods' sales to Vietnam were not representative due to Minh Phu's use of imported shrimp from India in their production of shrimp merchandise exported to the U.S.

market.  Id. at 19.  Accordingly, because the shrimp sold by ZA Sea Foods to processers in Vietnam may have been exported to the U.S. market, Commerce determined that the company's third-country sales could not be used to achieve a fair comparison with export price.  As a result of its administrative review, Commerce assigned ZA Sea Foods a weighted-average dumping margin of 3.06 percent for entries of frozen warmwater shrimp made during the POR.  Final Results, 85 Fed. Reg. at 85,581.  This rate also became the cash deposit rate for entries of frozen warmwater shrimp made by ZA Sea Foods after the publication date of the Final Results.  Id.

## II.  COMMENCEMENT OF THIS ACTION

Plaintiffs initiated this action in January 2021 to challenge Commerce's Final Results. See Summons, Jan. 28, 2021, ECF No. 1; Compl., Jan. 28, 2021, ECF No. 6.  In accordance with the Court's first amended scheduling order, Plaintiffs moved for judgment on the agency record on June 18, 2021.  See Pls.' Rule 56.2 Mot. for J. Upon the Agency R., June 18, 2021, ECF Nos. 26 and 27; see also Mem. in Supp. of the Rule 56.2 Mot. of Pls.' for J. on the Agency R., June 18, 2021, ECF Nos. 26 and 27 ("Pls.' Brief").

## SUMMARY OF ARGUMENT

The record does not support the Plaintiffs' claim that Commerce erred by using constructed value, instead of ZA Sea Foods' third-country sales to Vietnam, to calculate the company's normal value in this administrative review.  Rather, record evidence demonstrates that Commerce reasonably determined that ZA Sea Foods' sales to customers in Vietnam were not representative given substantial record evidence demonstrating that ZA Sea Foods' primary customers in Vietnam were processors and exporters of shrimp to the U.S. market.  Accordingly, this Court should sustain the Final Results in toto and reject Plaintiffs' request that the Final Results be remanded for Commerce to determine normal value based on ZA Sea Foods' third-country sales to Vietnam.

**STANDARD OF REVIEW**

Commerce's determinations in administrative reviews may be held unlawful only if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted); see also Matsushita Elec. Industrial Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984). Moreover, the fact that the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted); see also Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States, No. 2020-2014, 2021 U.S. App. LEXIS 21386, at *16 (Fed. Cir. July 20, 2021) ("Reasonable minds may differ on the outcome, but 'a determination does not fail for lack of substantial evidence on that account.'") (citation omitted). Rather, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); see also Nucor Corp. v. United States, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009). Accordingly, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." Shandong Huarong Gen. Corp. v. United States, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001); see also Goldlink Industries Co. v. United States, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations and internal quotation marks omitted).

9

## <u>ARGUMENT</u>

### I. COMMERCE PROPERLY USED CONSTRUCTED VALUE TO DETERMINE NORMAL VALUE

Commerce reasonably determined that ZA Sea Foods' third-country sales to Vietnam were not representative and were thus inappropriate to use as the starting point for calculating normal value.  Plaintiffs challenge this determination and ask this Court to reweigh record evidence and reach a different conclusion.  <u>See, e.g.</u>, Pls.' Brief at 15 (arguing that Commerce's consideration of trade patterns was "unsupported by substantial evidence"); <u>id.</u> at 19 (arguing that substantial evidence does not support Commerce's finding that shrimp products sold by ZA Sea Foods to Vietnam "ended up in the United States"); <u>id.</u> at 22 (arguing that substantial evidence does not support Commerce's claim that ZA Sea Foods' sales to the Minh Phu Group were part of an evasion scheme).  In making these arguments, Plaintiffs ignore the appropriate standard of review and seek to have the Court substitute its judgment for that of the agency.  <u>See Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States</u>, No. 2020-2014, 2021 U.S. App. LEXIS 21386, at *17 (Fed. Cir. July 20, 2021) (noting that "{f}actual determinations supporting antidumping margins are . . . 'best left to the agency's expertise'") (citing <u>F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).  As demonstrated below, Plaintiffs' argument that Commerce erred by using constructed value to calculate ZA Sea Foods' normal value is without merit as record evidence supports Commerce's determination that ZA Sea Foods' sales to customers in Vietnam were not representative and thus were an inappropriate basis to determine normal value.  As such, because ZA Sea Foods' sales to Vietnam were not representative and did not achieve a fair comparison with U.S. price, Commerce reasonably used constructed value to determine normal value in this review.

A.      **Legal Framework Controlling Commerce's Determination of Normal Value**

Commerce is directed by Congress to impose remedial antidumping duties on imported

products that are sold in the United States at less than a "fair value."  <u>Sioux Honey Ass'n v.</u>

<u>Hartford Fire Ins. Co.</u>, 672 F.3d 1041, 1046-47 (Fed. Cir. 2012).  In order to determine whether

merchandise is sold in the United States at less than fair value, the statute directs Commerce to

make a comparison "between the export price or constructed export price and normal value."

19 U.S.C. § 1677b(a).  Export price is defined by the Act as "the price at which the subject

merchandise is first sold . . . by the producer or exporter of the subject merchandise outside of

the United States to an unaffiliated purchaser in the United States."  19 U.S.C. § 1677a(a).

Normal value, meanwhile, is defined in section 773 of the Act, 19 U.S.C. § 1677b, which

provides as follows:

> **(a) Determination**  In determining . . . whether subject merchandise is being, or
> is likely to be, sold at less than fair value, a fair comparison shall be made
> between the export price or constructed export price and normal value.  In order
> to achieve a fair comparison with the export price or constructed export price,
> normal value shall be determined as follows:
>
> > **(1) Determination of normal value**
> >
> > > **(A) In general**  The normal value of the subject merchandise shall be the
> > > price described in subparagraph (B), at a time reasonably corresponding to the
> > > time of the sale used to determine the export price or constructed
> > > export price under section 1677a(a) or (b) of this title.
> > >
> > > **(B) Price**  The price referred to in subparagraph (A) is—
> > >
> > > > **(i)** the price at which the foreign like product is first sold . . . for
> > > > consumption in the exporting country, in the usual commercial
> > > > quantities and in the ordinary course of trade and, to the extent
> > > > practicable, at the same level of trade as the export price or constructed
> > > > export price, or
> > > >
> > > > **(ii)** in a case to which subparagraph (C) applies, the price at which the
> > > > foreign like product is so sold . . . for consumption in a country other
> > > > than the exporting country or the United States, if—

11

**(I)** such price is representative,

**(II)** the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and

**(III)** the administering authority does not determine that the particular market situation in such other country prevents a proper comparison with the export price or constructed export price.

**(C) Third country sales**  This subparagraph applies when—

**(i)** the foreign like product is not sold (or offered for sale) for consumption in the exporting country as described in subparagraph (B)(i),

**(ii)** the administering authority determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or

**(iii)** the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

For purposes of clause (ii), the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States.

Section 773(a)(4) of the Act, 19 U.S.C. § 1677b(a)(4), goes on to explain when

constructed value will be used by Commerce to determine normal value:

**(4) Use of constructed value**  If the administering authority determines that the normal value of the subject merchandise cannot be determined under paragraph (1)(B)(i), then, notwithstanding paragraph (1)(B)(ii), the normal value of the subject merchandise may be the constructed value of that merchandise, as determined under subsection (e) of this section.

"In most instances, Commerce bases normal value . . . on sales of the foreign like product

in the home market." Viraj Forgings, Ltd. v. United States, 283 F. Supp. 2d 1335, 1339 (Ct. Int'l

Trade 2003).  However, Congress specifically declared in the statute that if home market sales cannot be used to calculate normal value under section 773(a)(1)(B)(i) of the Act, then "notwithstanding paragraph (1)(B)(ii), the normal value of the subject merchandise may be the constructed value of that merchandise."  19 U.S.C. § 1677b(a)(4).  Commerce's regulations are similarly clear that both third-country sales and constructed value are permissible bases for determining normal value when the exporting country does not constitute a viable market. Specifically, section 351.404(a) of Commerce's regulations state that "section 773 of the Act also permits use of sales to a third country or constructed value as the basis for normal value."  19 C.F.R. § 351.404(a).  However, "Commerce may only rely on third country sales where the 'prices {for those sales are} representative,' where the aggregate quantity of sales are at a sufficient level, and where Commerce does not determine that a PMS prevents a proper comparison between the export price, or constructed export price, and the third country price." Husteel Co. v. United States, Consol. No. 19-00112, 2021 Ct. Intl. Trade LEXIS 76, at *12 (Ct. Int'l Trade June 7, 2021) (citing 19 U.S.C. § 1677b(a)(1)(B)(ii)).

In summary, where the home market is not a viable market to calculate normal value, the statute and Commerce's regulations allow the agency to use the price of third-country sales to determine normal value only if such price is "representative."  19 U.S.C. § 1677b(a)(B)(ii)(I). Indeed, the statute provides for Commerce to use the price of third-country market sales to determine normal value only if:  (i) "such price is representative;" (ii) the "aggregate quantity . . . of the foreign like product sold" is sufficient; and (iii) Commerce does not determine that a "particular market situation prevents a proper comparison."  Id. § 1677b(a)(B)(ii)(I)-(III).  The SAA, which Congress has stated is an authoritative guide to the interpretation of the statute, see

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, at 656 (1994) ("SAA"), provides that:

> New section 773(a)(l)(B)(ii) establishes rules for using third country sales. Unlike the existing law, which permits the use of sales to multiple third countries, this section permits only the use of sales to a single third country.  As with home market sales, the third country market must be 'viable' (i.e., sales to the third country must not be less than five percent of sales to the United States), and the particular market situation in the third country must not prevent a proper comparison.  In addition, consistent with the Agreement, the price to the third country <u>must be representative</u>.

SAA at 822 (emphasis added).  Thus, Commerce maintains discretion to "decline to calculate normal value" using third country sales if those sales are not representative.  <u>See</u> 19 C.F.R. § 351.404(c)(2)(ii).

**B.     Record Evidence Supports Commerce's Factual Findings That ZA Sea Foods' Sales To Vietnam Were Not Representative**

Commerce reasonably determined that ZA Sea Foods' sales to Vietnam were not representative and, therefore, an inappropriate basis to determine normal value.  As demonstrated below, substantial record evidence supports Commerce's factual finding that ZA Sea Foods' sales to Vietnamese processors and exporters of shrimp were an unsuitable basis to establish a comparison price for U.S. sales.  <u>See</u> AR14 IDM at 15.

As an initial matter, ZA Sea Foods' response to Commerce reported that the company's sales in its home market were of insufficient quantity for India to be considered a viable comparison market.  <u>See</u> ZA Sea Foods Section A Response at A-3 – A-4 ("ZASF's home market sales of the foreign like product is less than five percent of the volume of United States sales of the subject merchandise."), P.R. 114.  In the <u>Preliminary Results</u>, Commerce compared the volume of ZA Sea Foods' home market sales of the foreign like product to the volume of its U.S. sales of subject merchandise and determined, "in accordance with section 773(a)(1)(C) of the Act and 19 CFR 351.404," that ZA Sea Foods' home market sales were insufficient to permit

a proper comparison with U.S. sales.  AR14 PDM at 9, P.R. 166.  This conclusion is

unchallenged by ZA Sea Foods.  See Pls.' Brief at 13.  Accordingly, because ZA Sea Foods'

home market was not viable, Commerce was required to use either ZA Sea Foods' sales to a

third-country or constructed value to determine normal value in this review.  See Stupp Corp. v.

United States, 413 F. Supp. 3d 1326, 1331 (Ct. Int'l Trade 2019) ("If the exporting country does

not constitute a viable market, Commerce may resort to a third country or constructed value.")

(citation omitted).

In exercising discretion to use constructed value, instead of third-country sales to

Vietnam, to calculate ZA Sea Foods' normal value Commerce followed the statute and the

agency's regulations.  As noted above, if the exporting country does not constitute a viable

market, Commerce may base normal value on either the price of sales to a third country or on

constructed value.  See 19 C.F.R. § 351.404(c).  Commerce may decline to calculate normal

value in a third country when the price in that market is not representative.  Id.; see also Husteel

Co. v. United States, Consol. No. 19-00112, 2021 Ct. Intl. Trade LEXIS 76, at *12 (Ct. Int'l

Trade June 7, 2021) ("Commerce may only rely on third country sales where the 'price {for

those sales are} representative.'").  The term "representative" is not defined in the statute.

Husteel Co. v. United States, Consol. No. 19-00112, 2021 Ct. Intl. Trade LEXIS 76, at **12-13

(Ct. Int'l Trade June 7, 2021) (also explaining that "Commerce's determination that sales into a

third country comparator market are not representative must be supported by substantial

evidence.").

In this case, Commerce supported its determination that ZA Sea Foods' sales to Vietnam

are not representative.  See AR14 IDM at 15-21.  Commerce explained in the Final Results that

"{a}lthough there is no documentation on the record showing that ZA Sea Foods had knowledge

that its Vietnamese sales may ultimately be re-exported to the United States, there is evidence

which provides serious concerns with using Vietnamese sales as the basis for {normal value}."

Id. at 16.  Commerce went on to explain how the Minh Phu Group, ZA Sea Foods' primary

customer in Vietnam, transshipped Indian-origin shrimp through Vietnam to the U.S. market.  Id.

Indeed, the agency explained that U.S. Customs and Border Protection's ("CBP") Trade Remedy

& Law Enforcement Directorate ("TRLED") had determined that the Minh Phu Group "entered

covered merchandise in to the customs territory of the United States through evasion."  See

Department Memorandum, "Placing U.S. Customs and Border Protection Decision on the

Record and Setting Comment Deadline," at p.10 of Attachment (Oct. 27, 2020), P.R. 187.  The

Final Results explained that:

> Given that CBP found sales made by the Minh Phu Group during the POR were
> ultimately sold in the United States, it would be unreasonable to use ZA Sea
> Foods' Vietnamese sales, which include sales to the Minh Phu Group, as the
> comparison market.  Some of these sales ultimately entered the United States and
> are an unsuitable comparison for ZA Sea Foods' own sales to the United States.
> Such a comparison would compare U.S. sales to U.S. sales rather than U.S. sales
> to a third-country market.  ZA Sea Foods argues that Commerce was not justified
> in using CV because we have not demonstrated that the third-country price is not
> representative.  However, the sales that were part of this evasion scheme were
> first sold to Vietnam shrimp customers and then sold to customers in the United
> States, meaning that there had to be some price advantage to the Vietnamese sales
> to make this scheme worthwhile, profitable, and price competitive with direct
> sales to the United States made by ZA Sea Foods.

Id. at 19.

Commerce's decision memorandum further explained why the prices of ZA Sea Foods'

sales to Vietnam were not representative.  Specifically, Commerce noted that the price of ZA Sea

Foods' "Vietnamese sales are not representative due to the evasion scheme" of the company's

Vietnamese customer because "{t}he prices to Vietnam are not truly prices for consumption in

Vietnam as the shrimp" are exported from Vietnam to the United States.  Id. at 19; see also id. at

20 (explaining that because the shrimp sold by ZA Sea Foods to Vietnam was "not consumed in

Vietnam," they "were not third-country sales as the regulations conceive of the term").  In challenging this determination, Plaintiffs argue that Commerce "failed to satisfy its burden" of showing that ZA Sea Foods' selling prices to Vietnam were not representative.  Pls.' Brief at 15. Plaintiffs' further assert that there is "no evidence" that ZA Sea Food's sales to the Minh Phu Group were part of a duty evasion scheme.  Pls.' Brief at 22-23.

First, Plaintiffs misapply the burden of proof.  In its brief, Plaintiffs state that "ZASF's third-country sales to Vietnam were presumptively representative, and the burden was on Commerce to establish that ZASF's Vietnamese selling prices were not 'representative.'"  Pls.' Brief at 15.  In making this argument, Plaintiffs direct the Court to Commerce's decision in Welded Line Pipe From Korea and the CIT's decision in Allegheny Ludlum Corp. v. United States.  Pls.' Brief at 16 (citing Welded Line Pipe From the Republic of Korea: Final Determination of Sales at Less Than Fair Value, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) and Allegheny Ludlum Corp. v. United States, 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000)).  These citations do not support Plaintiffs' argument.  Both Welded Line Pipe Fom Korea and Allegheny Ludlum Corp. v. United States deal with the issue of whether certain sales were appropriately reported by the respondents in those proceedings as home market sales.  In this case, the issue facing Commerce was not whether certain sales were appropriately reported as home market sales but whether ZA Sea Foods' sales to Vietnam were an appropriate basis to determine normal value.  Contrary to the issue in those cases, in this review, Commerce was required to make a factual determination as to whether ZA Sea Foods' sales to Vietnam were representative and support that determination with substantial evidence.

Moreover, as outlined above, the record developed in this review offers substantial evidence to support Commerce's determination that ZA Sea Foods' third-country sales were not

representative.  For example, Commerce detailed evidence submitted by AHSTAC showing that "ZA Sea Foods' primary customer in Vietnam, the Minh Phu Group, also exported shrimp to the United States."  AR14 IDM at 16 (citing AHSTAC Section A Comments at 3-5 and Exhibit 2, P.R. 94); see also id. (noting that the Minh Phu Group "was itself a processor and trader of shrimp").  While Plaintiffs argue that "{n}othing on the administrative record establishes that the shrimp sold to Vietnam by ZASF was *not* resold in Vietnam," Pls.' Brief at 17, such argument misses the mark.  In determining not to rely on ZA Sea Foods' sales to Vietnam to determine normal value, Commerce was required to support with substantial evidence that such sales were not representative.  Commerce did that by explaining that ZA Sea Foods' "primary customer" in Vietnam co-mingled Indian- and Vietnamese-origin shrimps for export to the United States.  AR14 IDM at 19.  Commerce further supported its factual findings that ZA Sea Foods' sales to Vietnam are not representative by noting that "{s}uch a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market."  Id.  Accordingly, contrary to Plaintiffs' argument, record evidence supports Commerce's conclusion that ZA Sea Foods' sales to Vietnam were not representative.

Plaintiffs also argue that Commerce, in the Final Results, deviated from the agency's "long-standing practice with respect to the 'knowledge test.'"  Pls.' Brief at 18-21.  This line of argument is also fundamentally flawed.  Citing to Commerce's decision in an administrative review of Circular Welded Non-Alloy Steel Pipe from Mexico, Plaintiffs argue that "Commerce not only disregarded the knowledge test, but turned it upside down."  Pls.' Brief at 21; see also id. at 19-20 (citing Circular Welded Non-Alloy Steel Pipe from Mexico: Final Results of Antidumping Duty Administrative Review, 76 Fed. Reg. 36,086 (Dep't Commerce June 21, 2011), and accompanying Issues and Decision Memorandum ("Circular Welded Non-Alloy Steel

Pipe from Mexico IDM") at Comment 1.  In Circular Welded Non-Alloy Steel Pipe from

Mexico, a producer claimed that they had no shipments of subject merchandise to the U.S.  See

Circular Welded Non-Alloy Steel Pipe from Mexico IDM at Comment 1.  In examining this "no

shipment" claim, Commerce probed whether the Mexican producer should have known that its

goods were destined for the U.S. market.  Id.  The issue of whether a specific sale is a reportable

U.S. sale is not germane to whether a claimed third-country sale is representative.  While ZA Sea

Foods argues that "downstream use and trade patterns" are "irrelevant" to determining whether

its sales to Vietnam were representative, see Pls.' Brief at 12, 15-18, Commerce is required by

statute to make a "fair comparison" between export price and normal value.  See 19 U.S.C.

§ 1677b(a).  In this review, Commerce reasonably determined that sales that were made to

Vietnamese exporters were not representative of sales to the third-country market.  Accordingly,

the knowledge test is not relevant to the issue of whether ZA Sea Foods' sales to Vietnam were

an appropriate basis to determine normal value, as the knowledge test is used by Commerce to

determine whether a "producer knew or should have known its goods were destined for the

United States" and is not used to determine whether third-country sales are representative.  See

Circular Welded Non-Alloy Steel Pipe from Mexico IDM at Comment 1.  Indeed, Commerce

expressly observed in the Final Results, that ZA Sea Foods' knowledge of whether "its sales may

ultimately be re-exported to the United States," AR14 IDM at 16, was not relevant to whether

record evidence supports Commerce's determination regarding the representativeness of these

sales.  Id.

     Plaintiffs also argue that Commerce "erred in disregarding ZASF third-country sales to

Vietnam as the basis for normal value," as these sales "were substantial, were arm's-length, were

shipped directly to Vietnamese customers, were negotiated in good faith without ZASF having

any knowledge of whether or where the merchandise might be resold . . . ."  Pls.' Brief at 11-13.

According to ZA Sea Foods, Commerce's analysis in the <u>Final Results</u> was "irrelevant" to

determining whether the company's sales to Vietnam were representative.  Pls.' Brief at 12.  This

argument fails as Commerce explained that ZA Sea Foods' sales to Vietnam could not be

representative due to the evasion scheme of ZA Sea Foods' Vietnamese customer as "{t}he

prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp" are exported

from Vietnam to the United States.  <u>Id.</u> at 19.  The mere fact that ZA Sea Foods' sales to

Vietnam may have been substantial does not detract from the fact that its primary customer

co-mingled Indian-origin shrimp with Vietnamese-origin shrimp in shrimp exported to the U.S.

market.  This record evidence further supports Commerce's conclusion that ZA Sea Foods' sales

to customers in Vietnam were not representative.

## CONCLUSION

For the reasons discussed above, the <u>Final Results</u> are supported by substantial evidence

on the record and are fully consistent with law.  Accordingly, the <u>Final Results</u> should be

sustained and this Court should deny the relief requested by Plaintiffs.

Respectfully submitted,

/s/ Nathaniel Maandig Rickard

Nathaniel Maandig Rickard
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street, N.W.
Suite 800
Washington, D.C. 20006

*Counsel to the Ad Hoc Shrimp Trade
Action Committee*

September 2, 2021

## CERTIFICATE OF COMPLIANCE
## Z.A. SEA FOODS PVT. LTD. v. UNITED STATES
## COURT NO. 21-00031

I, <u>Nathaniel Maandig Rickard</u>, hereby certify that the foregoing submission (Response in Opposition to Plaintiffs' Motion for Judgment on the Agency Record) complies with the 14,000 word limit for responsive briefs.  I further certify that this submission contains 6,446 words inclusive of headings, footnotes, and quotations (but exclusive of table of authorities and counsel's signature block).  This word count was calculated using Microsoft Word's word count feature.

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard

**PICARD KENTZ & ROWE LLP**
*Counsel to the Ad Hoc Shrimp Trade*
*Action Committee*