**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | | |
|---|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Court No. 21-00031 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION**
**FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

SPENCER NEFF
Staff Attorney
Office of the Chief Counsel
For Trade Enforcement & Compliance
U.S. Department of Commerce

KARA M. WESTERCAMP
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

Dated: September 2, 2021

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 .................................................................................2

    I.    Administrative Determination Under Review .........................................................2

    II.    Issues Presented For Review ..................................................................................2

STATEMENT OF FACTS ...................................................................................................3

    I.    Initiation Of Review ................................................................................................3

    II.    Preliminary Results .................................................................................................3

    III.    CBP Enforce And Protect Act Investigation .........................................................5

    IV.    Final Results ............................................................................................................6

SUMMARY OF THE ARGUMENT ....................................................................................8

ARGUMENT .......................................................................................................................9

    I.    Standard Of Review ...............................................................................................9

    II.    Legal Background .................................................................................................11

    III.    Substantial Evidence Supports Commerce's Determination
        That Z.A. Sea Foods's Sales To Vietnam Were Part Of
        Minh Phu Group's Transshipment Scheme .........................................................12

    IV.    Commerce's Determination That Z.A. Sea Foods's Sales To
        Vietnam Are Not Representative Is Supported By Substantial
        Evidence And In Accordance With Law ..............................................................14

    V.    Commerce's Determination To Base Z.A. Sea Food's Normal
        Value On Constructed Value, Rather Than Third-Country
        Sales, Is In Accordance With Law .......................................................................20

CONCLUSION ..................................................................................................................22

# **TABLE OF AUTHORITIES**

## **CASES**

*Allegheny Ludlum Corp. v. United States,*
  215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ............................................................ 18, 19, 20

*Alloy Piping Prods. v. United States,*
  201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002) ............................................................ 11, 16, 17

*Atl. Sugar, Ltd. v. United States,*
  744 F.2d 1556 (Fed. Cir. 1984).................................................................................... 10, 14

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938)................................................................................................................ 10

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966)................................................................................................................ 10

*Husteel Co. v. United States,*
  463 F. Supp. 3d 1334 (Ct. Int'l Trade 2020) ...................................................... *passim*

*INA Walzlager Schaeffler KG v. United States,*
  957 F. Supp. 251 (Ct. Int'l Trade 1997) ................................................................................ 18

*INS v. Elias-Zacarias,*
  502 U.S. 478 (1992)................................................................................................................ 10

*Mid Continent Steel & Wire, Inc. v. United States,*
  203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) ................................................................ 10, 11

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983).................................................................................................................. 11

*Nucor Corp. v. United States,*
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ...................................................................... 10

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States,*
  268 F.3d 1376 (Fed. Cir. 2001).............................................................................................. 16

*United States Steel Corp. v. United States,*
  348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018) ...................................................................... 10

*Zhejiang DunAn Hetian Metal Co. v. United States,*
  652 F.3d 1333 (Fed. Cir. 2011).............................................................................................. 13

## **STATUTES**

19 U.S.C. § 1516a ................................................................................................ 9

19 U.S.C. § 1517 ................................................................................................. 5

19 U.S.C. § 1677a ............................................................................................... 18

19 U.S.C. § 1677b .......................................................................................... *passim*

## **REGULATIONS**

19 C.F.R. § 301.404(f) ........................................................................................ 21

19 C.F.R. § 351.404 ...................................................................................... *passim*

## **OTHER AUTHORITIES**

*Antidumping Duties, Countervailing Duties: Final Rule,,*
62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997) ........................................ 11

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam,*
81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016) ......................................... 4

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
83 Fed. Reg. 18,77 (Dep't of Commerce May 2, 2019) ............................................. 3

*Glycine From Japan,*
83 Fed. Reg. 54,718 (Dep't of Commerce Oct. 31 2018) .......................................... 18

*Certain Frozen Warmwater Shrimp From India,*
85 Fed. Reg. 13,131 (Dep't of Commerce Mar. 6, 2020) ........................................ 4, 5

*Certain Frozen Warmwater Shrimp From India,*
85 Fed. Reg. 85,580 (Dep't of Commerce Dec. 29, 2020) .................................. *passim*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Court No. 21-00031 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| AD HOC SHRIMP TRADE ACTION ) | |
| COMMITTEE, ) | |
| ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court's rules, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs, Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Ltd. (collectively, Z.A. Sea Foods). Pls. Br., ECF No. 26. Z.A. Sea Foods challenges certain aspects of the United States Department of Commerce's (Commerce) final results of the administrative review of the antidumping duty order covering certain frozen warmwater shrimp from India. As demonstrated below, Commerce's final results are supported by substantial evidence and are otherwise in accordance with law because record evidence

demonstrates that Z.A. Sea Foods's sales to Vietnam were part of a transshipment scheme that rendered its third-country prices not representative, and therefore, unusable as a basis for normal value, thus warranting the use of constructed value as a basis for normal value.  Accordingly, this Court should sustain Commerce's final results.

## STATEMENT PURSUANT TO RULE 56.2

**I.      Administrative Determination Under Review**

The administrative determination under review is *Certain Frozen Warmwater Shrimp From India*, 85 Fed. Reg. 85,580 (Dep't of Commerce Dec. 29, 2020) (final results), and accompanying Issues and Decision Memorandum (IDM).

**II.     Issues Presented For Review**

1.      Whether substantial evidence supports Commerce's finding that Z.A. Sea Foods's Vietnam sales were part of a Vietnam-based transshipment scheme where record evidence indicates that a majority of those sales were to a Vietnam-based exporter which evaded antidumping duties by transshipping Indian-origin shrimp to the United States.

2.      Whether substantial evidence supports Commerce's determination that Z.A. Sea Foods's third-country prices based on its Vietnam sales are not representative pursuant to 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) and 19 C.F.R. § 351.404(c)(2)(ii), where those sales were eventually consumed in the United States.

3.      Whether Commerce's use of constructed value as a basis for normal value is in accordance with law.

<u>**STATEMENT OF FACTS**</u>

## I.     <u>Initiation Of Review</u>

On May 2, 2019, Commerce initiated its administrative review of the antidumping duty

order covering shrimp from India for the period of review beginning February 1, 2018, through

January 31, 2019.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*,

84 Fed. Reg. 18,777 (Dep't of Commerce May 2, 2019) (P.R. 16).  Out of the numerous

exporters/producers, Commerce selected Z.A. Sea Foods and Razban Seafoods Ltd. (Razban) as

mandatory respondents.[1]  IDM at 1.

## II.     <u>Preliminary Results</u>

On September 26, 2019, in response to Z.A. Sea Foods's Section A Questionnaire

Response, Ad Hoc Shrimp Trade Action Committee (AHSTAC) submitted factual information

on the record indicating that a majority of Z.A. Sea Foods's shipments to Vietnam were to

Vietnamese shrimp exporters that had been subject to Commerce's antidumping duty order

covering shrimp from Vietnam and were active in the United States market.  AHSTAC Factual

Information at 3-7 (P.R. 94).  AHSTAC argued that based on this information, Z.A. Sea Foods's

third-country information was incomplete.  *Id*. at 2-3.  AHSTAC also argued that Z.A. Sea Foods

had provided inadequate documentation to support a finding that its exports were ultimately

consumed in Vietnam.  *Id*.

Moreover, AHSTAC identified in its submission that 91 of Z.A. Sea Foods's 152

shipments to Vietnam were to Minh Phat Seafood Co., Ltd., Minh Phu Hau Giang Seafood

Corp., and Minh Phu Seafood Corp. (collectively, Minh Phu Group).  *Id.* at 4-5.  Previously, on

---

[1] In the preliminary results, Commerce explained that Razban did not have shipments during the period of review.  PDM at 3.

July 22, 2016, Commerce had revoked its antidumping order covering shrimp from Vietnam with respect to the Minh Phu Group, thereby exempting Minh Phu Group from payment of antidumping duties. *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016).

On March 6, 2020, Commerce published its preliminary results. *Certain Frozen Warmwater Shrimp From India*, 85 Fed. Reg. 13,131 (Dep't of Commerce Mar. 6, 2020) (preliminary results), and accompanying Preliminary Decision Memorandum (PDM). Commerce found that the aggregate volume of Z.A. Sea Foods's home market sales were not sufficient to permit a proper comparison to U.S. sales. PDM at 9. Commerce also preliminarily found that, because of the trade pattern data proffered by AHSTAC, with Z.A. Sea Foods's "customers {} also known processors and exporters of shrimp to the United States," Z.A. Sea Foods's sales to Vietnam were not appropriate for use as a basis for normal value. *Id.*

Commerce explained that "{i}n the absence of comparison-market sales made in the ordinary course of trade to serve as the basis for {constructed value} profit and selling expenses," it "must instead rely on one of the three alternatives{.}" *Id.* at 11. The first is "use of the actual amounts incurred and realized by the specific exporter or producer in connection with the production and sale of merchandise that is in the same general category of products as the subject merchandise{.}" *Id.* The second is "the use of the weighted average of the actual amounts incurred and realized by exporters or producers (other than the respondent) that are subject to the investigation or review{.}" *Id.* And the third is "any other reasonable method, except that the amount for profit may not exceed the amount realized by exporters or producers (other than the respondent) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise (*i.e.*,

the "profit cap")." *Id.*  Commerce determined that the first two alternatives were unavailable because there was no "information on the record representing the same general category as the subject merchandise sold by" Z.A. Sea Foods, and it was not possible to use a constructed value profit because there was no other mandatory respondent. *Id.*

Thus, Commerce used the "any other reasonable method" approach by preliminarily calculating normal value based on constructed value using financial statements of Indian producers/exporters from Commerce's 2016-2017 administrative review of the antidumping duty order covering shrimp from India. *Id.* at 11-12.  Commerce explained that "{t}he information meets {Commerce's} criteria in that it represents the experience of Indian producers of subject merchandise (and thus similar business operations and products to the respondent) and is from a period of time just prior to {the period of review}, and is thus the most reasonably contemporaneous data available." *Id.* at 12.

## III.   CBP Enforce And Protect Act Investigation

On October 27, 2020, U.S. Customs and Border Protection (CBP) concluded an Enforce and Protect Act (EAPA) investigation pursuant to 19 U.S.C. § 1517(f), in which it determined that imports of merchandise subject to the antidumping order covering shrimp from India were imported to the United States through Vietnam as part of a transshipment scheme.  CBP EAPA Decision at 9-10 (P.R. 187).  The period of investigation for CBP's investigation was October 8, 2018, through October 13, 2020, which overlapped with the period of review in this administrative review from February 2018 through January 2019.  *Id.* at 4.  Specifically, CBP found that Minh Phu Group had sold commingled Indian- and Vietnamese-origin shrimp to the United States during CBP's period of investigation.  *Id.* at 10.  CBP based its finding, in part, on Minh Phu Group's "refusal" to provide information that would have enabled CBP to trace

Indian-origin shrimp purchases through the sales process. *Id.* at 9. CBP also based its finding, in part, on information provided by Minh Phu Group indicating that it had actually sold a shipment of commingled Indian- and Vietnamese-origin shrimp to the United States. *Id.* Finally, CBP based its finding, in part, on adverse inferences, which it determined were warranted because Minh Phu Group had failed to respond to requests for information. *Id.*

## IV.   <u>Final Results</u>

In the final results, based on the findings outlined in its preliminary results and on CBP's EAPA determination, Commerce found that Z.A. Sea Foods's third-party sales to Vietnam were not representative of sales in Z.A. Sea Foods's home market of India. IDM at 16. Commerce also continued to find that constructed value was appropriate for use as the basis of Z.A. Sea Foods's normal value. *Id.*

Specifically, Commerce acknowledged that although Z.A. Sea Foods "may have been unaware of re-exports to the United States, this does not negate the fact that there is evidence on the record showing an evasion scheme by one of Z.A. Sea Foods' Vietnamese customers, the Minh Phu Group, to transship Indian shrimp through Vietnam to the United States." *Id.* Further, Commerce explained that "{s}ales that are found to be part of an evasion scheme are not an appropriate basis to use for comparison with sales made directly to the United States." *Id.*; *id.* at 20 ("while there is no evidence on the record showing that Z.A. Sea Foods knew of the evasion scheme or knew that these sales may ultimately be destined for the United States, that does not mean that the Vietnamese sales are a permissible basis for {normal value}.")

Although Z.A. Sea Foods had argued that its sales to Vietnam were *bona fide* and that Commerce could not rely on "patterns of trade" because there was no evidence to show that further processing had not occurred, Commerce explained that it did not conduct a *bona fide*

analysis, and "there is now evidence on the record to show that no such further processing was done by its primary Vietnamese customer before the goods were re-exported." *Id.* at 16-17. Commerce also rejected Z.A. Sea Foods's argument that Commerce had given no indication prior to the preliminary results that Commerce might use constructed value, because Commerce explained that although it had asked for "corrections to the Vietnamese sales database, {it} also pursued questions about the appropriateness of Vietnam, in general, because {it was} considering what would be the appropriate basis to use for {normal value}." *Id.* at 17.

Regarding the timing of Commerce's supplemental questionnaires and the potential submission of an alternate third-country sales database, Commerce explained that Z.A. Sea Foods "should have asked for guidance when it first had concerns whether it should submit an alternate sales database in September 2019; its request to submit an alternate sales database in March 2020 was clearly too late." *Id.* at 17-18. Also, Commerce explained that it had not "denied Z.A. Sea Foods a meaningful opportunity to use a comparison market rather than {constructed value}," because "this was a very complex and evolving situation over the course of this review, and {Commerce} made a decision as to the appropriate {normal value} source as soon as possible after asking all necessary questions and a thorough analysis of all the available information on the record." *Id.* at 18.

Commerce then explained why it would be unreasonable to use Z.A. Sea Foods's sales to Vietnam because "{s}uch a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market" due to the evasion scheme. *Id.* at 19. In other words, "{t}he prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp is exported without further processing," and "in some cases, the prices to Vietnam are in fact prices for sales

that eventually become U.S. sales, meaning that they cannot be representative of prices for sales in the third-country market because they are ultimately U.S. sales." *Id.*

Commerce then addressed 19 C.F.R. § 351.404(f), which states that Commerce "normally will calculate normal based on sales to a third country rather than on constructed value if adequate information is available and verifiable." *Id.* at 20. Commerce explained that "{i}t is for exceptional situations, such as the facts surrounding Z.A. Sea Foods' Vietnamese sales, that 19 C.F.R. § 351.404(f) dictates that the use of a third-country market only applies to 'normal' situations and why 19 C.F.R. § 351.404(c)(2)(ii) states that Commerce 'may' rather than 'will,' use prices for third-country markets." *Id.* Rather, Commerce explained that Z.A. Sea Foods's sales to Vietnam "were not consumed in Vietnam and thus were not third-country sales as the regulations conceive of the term." *Id.* And that its use of constructed value was "not intended to be punitive or adverse; it is simply another option when the home market is not viable and there are issues with the third-country market." *Id.* at 20-21.

Therefore, Commerce continued to calculate Z.A. Sea Foods's normal value based on constructed value. *Id.*

## <u>SUMMARY OF THE ARGUMENT</u>

Commerce's determination to base Z.A. Sea Foods's normal value on constructed value is supported by substantial evidence and in accordance with law. First, substantial evidence supports Commerce's finding that Z.A. Sea Foods's Vietnam sales were part of Minh Phu Group's transshipment scheme and eventually consumed in the United States. Record evidence showed that Z.A. Sea Foods's Vietnam exports were primarily to Minh Phu Group. Record evidence also showed that Minh Phu Group commingled Indian- and Vietnamese-origin shrimp in its sales to the United States, thereby entering Indian shrimp duty-free, and that Minh Phu Group was unable to produce paperwork linking its Indian imports to its United States sales.

Based on this evidence, and because no record evidence suggests otherwise, Commerce reasonably determined that Z.A. Sea Foods's Vietnam sales were part of Minh Phu Group's transshipment scheme.

Second, Commerce's determination that Z.A. Sea Foods's third-country prices based on its Vietnam sales are not representative is also supported by substantial evidence and in accordance with law.  Because third-country prices must be for sales *consumed* in the third country and not in the United States, the fact that Z.A. Sea Foods's Vietnam sales were eventually consumed in the United States rendered those prices not representative.  This finding is supported by substantial evidence in the record despite Z.A. Sea Foods's stated lack of knowledge of Minh Phu Group's transshipment scheme because Z.A. Sea Foods's third-country Vietnam sales eventually entered the United States for consumption.

Finally, because Z.A. Sea Foods's third-country prices are not representative, Commerce's determination to base Z.A. Sea Foods's normal value on constructed value is in accordance with 19 U.S.C. § 1677b(a)(4) and 19 C.F.R. § 351.404(a).  The law states that Commerce may not base normal value on third-country prices where those prices are not representative.  Because the third-country prices here are not representative, Commerce's determination to base Z.A. Sea Foods's normal value on constructed value is in accordance with law.

## ARGUMENT

### I.   Standard Of Review

The Court upholds Commerce's determination if it is supported by "substantial evidence on the record" and otherwise "in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to

support the underlying conclusions.  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts

from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562

(Fed. Cir. 1984) (footnote and internal quotation marks omitted).

That the Court may draw two inconsistent conclusions from the record "does not prevent

an administrative agency's finding from being supported by substantial evidence." *Consolo v.*

*Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted).  Rather, when Congress has

entrusted an agency to administer a statute that demands inherently fact intensive inquiries, such

as in this case, the agency's conclusions may be set aside only if the record contains evidence "so

compelling that no reasonable factfinder" could reach the same conclusion.  *See INS v. Elias-*

*Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d

1264, 1287 (Ct. Int'l Trade 2009).

To comply with the statutory requirement that Commerce's determinations be made "in

accordance with law," Commerce must "follow its established practice or explain why it is

reasonable for it to deviate from its practice." *United States Steel Corp. v. United States*, 348 F.

Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018).  Commerce's actions establish a practice "'when a

uniform and established procedure exists that would lead a party, in the absence of notification of

change, reasonably to expect adherence to' the agency's past action."  *Id.* at 1254 (quoting *Mid*

*Continent Steel & Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1312 (Ct. Int'l Trade

2017)).

II.     **Legal Background**

Commerce will typically find normal value to be the price at which the subject

merchandise is sold in the exporting country.  19 U.S.C. § 1677b(a)(1)(B)(i).  Where the

aggregate quantity of subject merchandise sold in the exporting country is less than five percent

of that sold in the United States, Commerce may use the price at which subject merchandise is

sold in a third country (*i.e.*, not the exporting country or the United States) as normal value.  *Id.*

§1677b(a)(1)(C).  Commerce may only use the price of third country sales where such prices are

*representative*.  *Id.* § 1677b(a)(1)(B)(ii)(I).  Commerce may decline to calculate normal value

based on a third country if it is satisfied that the third country price is not representative.  19

C.F.R. § 351.404(c)(2)(ii).

Although neither the statute nor the regulations define the term "representative," the

*Preamble* to Commerce's regulations provides that a determination of whether or not third

country prices are representative is not one that Commerce will regularly consider.  *Antidumping*

*Duties, Countervailing Duties: Final Rule*, 62 Fed. Reg. 27296, 27,357 (Dep't of Commerce

May 19, 1997) (*Preamble*).  The *Preamble* adds that the party seeking to show that sales to a

third country are not representative bears the burden of making such a showing.  *Id*; *see also*

*Husteel Co. v. United States*, 463 F. Supp. 3d 1334, 1341 (Ct. Int'l Trade 2020); *Alloy Piping*

*Prods. v. United States*, 201 F. Supp. 2d 1267, 1276-77 (Ct. Int'l Trade 2002).  Commerce's

determination that third-country prices are not representative must be supported by substantial

evidence.  *Husteel*, 463 F. Supp. 3d at 1341 (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49 (1983)).

The statute, at 19 U.S.C. § 1677b(a)(4), also provides that Commerce may use

constructed value as the basis of normal value where normal value may not be calculated using

home-market prices.  Although the statute does not indicate a preference for the use of third-country prices or constructed value as a replacement for home-market prices, Commerce's regulations at 19 C.F.R. § 351.404(f) provide that Commerce will normally calculate normal value based on third-country sales rather than constructed value if "adequate information is available and verifiable."

## III. Substantial Evidence Supports Commerce's Determination That Z.A. Sea Foods's Sales To Vietnam Were Part Of Minh Phu Group's Transshipment Scheme

Commerce's determination that Z.A. Sea Foods's sales to Vietnam did not constitute representative sales for use in determining normal value is supported by substantial evidence. Undermining the representativeness of Z.A. Sea Foods's sales is the fact that record evidence demonstrates that Z.A. Sea Foods's sales of Indian shrimp to Vietnam were transshipped to the United States by Minh Phu Group, *i.e.*, entering as if they were sales of shrimp from Vietnam. *See* IDM at 19; *see also* 19 U.S.C. § 1677b(a)(1)(B)(ii)(I); 19 C.F.R. § 351.404(c)(2)(ii).

To make this determination, Commerce relied on record evidence provided by AHSTAC showing that a majority of Z.A. Sea Foods's sales were made to Vietnamese shrimp exporters comprising the Minh Phu Group.  *See* IDM at 16; AHSTAC Factual Submission at 3-5 (P.R. 94). Commerce also relied on CBP's EAPA decision, in which CBP had determined that for some months overlapping with a portion of the period of review, Minh Phu Group had commingled Indian- and Vietnamese-origin shrimp in its sales to the United States.  *See* IDM at 16; CBP EAPA Decision (P.R. 187).  Because it had commingled the shrimp, Minh Phu Group had transshipped Z.A. Sea Foods's Indian-origin shrimp through Vietnam and evaded antidumping duties.  *Id.*  Despite CBP's request, Minh Phu Group had failed to provide information that "would allow CBP to trace its imports of Indian-origin shrimp through its production processes to its sales."  CBP EAPA Decision at 9.

Additionally, CBP found that Minh Phu Group had actually made a commingled shipment to the United States during CBP's period of investigation. *Id.* CBP concluded by finding that there was a "strong likelihood that Minh Phu {had} co-mingled Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States." *Id.* at 10. Because record evidence shows that Z.A. Sea Foods primarily sold to Minh Phu Group during the period of review, and because record evidence shows that Minh Phu Group commingled and transshipped Indian-origin shrimp to the United States during that period, it is reasonable for Commerce to determine that Z.A. Sea Foods's Indian-origin shrimp were among those transshipped by Minh Phu Group as Vietnam shrimp. *See* IDM at 20-21; PDM at 9; *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011) ("Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

Notwithstanding the record evidence of (i) commingling, (ii) shipments to the United States, and (iii) the overlap between the period of review and CBP's investigation period, Z.A. Sea Foods argues that Commerce lacked any evidence to find that its sales to Vietnam were part of Minh Phu Group's transshipment scheme. Pls. Br. at 22. The Court should reject this argument.

Z.A. Sea Foods argues that Commerce incorrectly stated that its sales to Minh Phu Group were exported to the United States without further processing. *Id.* at 23-24. This argument misstates Commerce's finding. Commerce explained its usage of "further processing" in the final results to mean processing which would take Minh Phu Group's shrimp exports outside of the scope of the antidumping order on shrimp. *See* IDM at 17 n.54. As Commerce clarified, because Minh Phu Group's transshipped sales had been entered under case number A-533-840 (which is the Commerce proceeding number assigned to the shrimp from Vietnam order) and

13

ultimately evaded the imposition of antidumping duties, any further processing that may have occurred was irrelevant to a finding that Z.A. Sea Foods's sales to Vietnam were part of Minh Phu Group's transshipment scheme. *Id*.

Z.A. Sea Foods also argues that Commerce was unable to pinpoint any record evidence linking Minh Phu Group's imports of Z.A. Sea Foods's shrimp to a specific instance of transshipment, and that this fact abrogates the record evidence upon which Commerce relied to make its determination. Pls. Br. at 24. That Minh Phu Group did not provide CBP with adequate tracing information, thereby making it impossible for CBP and Commerce to know *which* of Minh Phu Group's Indian shrimp imports actually entered the United States, understandably denies Commerce the ability to cite any such particular evidence. *See* CBP EAPA Decision at 19. Yet the evidence is clear: Z.A. Sea Foods sold shrimp to Minh Phu Group and Minh Phu Group, in turn, made shrimp entries into the United States that included Indian-origin shrimp. IDM at 16-17. Thus, Commerce reasonably determined that Z.A. Sea Foods's sales to Vietnam were subsumed in Minh Phu Group's transshipment scheme, and without any record evidence to detract from that likelihood, a reasonable mind could determine that Z.A. Sea Foods's sales to Vietnam were part of Minh Phu Group's transshipment scheme and entered the United States for consumption. *See id.*; *Atl. Sugar, Ltd.*, 744 F.2d at 1562.

## IV.     Commerce's Determination That Z.A. Sea Foods's Sales To Vietnam Are Not Representative Is Supported By Substantial Evidence And In Accordance With Law

Commerce reasonably determined based upon substantial evidence that Z.A. Sea Foods's third-country sales are not representative pursuant to 19 U.S.C. § 1677b(a)(1)(B)(ii)(I). *See* IDM at 19-20; *Husteel*, 436 F. Supp. 3d at 1342. As explained above, substantial evidence supports Commerce's determination that Z.A. Sea Foods's third country sales to Vietnam were part of Minh Phu Group's transshipment scheme. IDM at 16. Based on that finding, Commerce

determined that Z.A. Sea Foods's third-country sales are not representative because they are not prices for consumption *in* Vietnam, and because, in some instances, they are prices that are ultimately for consumption in the United States.  *Id*. at 19.  Commerce also determined that the sales are not representative for normal value purposes because sales that are part of an evasion scheme are inappropriate for comparison with U.S. sales.  *Id.* at 16.

Z.A. Sea Foods argues that Commerce failed to acknowledge certain record evidence that detracted from its finding that its sales to Vietnam were not representative of home-market prices.  Pls. Br. at 24-26.  Z.A. Sea Foods points to several similarities between its sales to Vietnam and its sales to the United States, as well as similarities between its sales to Minh Phu Group and to other Vietnamese importers.  *Id.*  Z.A. Sea Foods argues that this evidence contributed to the representativeness of its third-country prices.  *Id*.  Z.A. Sea Foods also argues that because it "did not know the ultimate disposition of the shrimp products at the time of sale, it was unreasonable and irrelevant for Commerce to base any decision on the representativeness of {its} sales on the alleged trade patterns of {its} customers."  *Id.* at 17.  These arguments are without merit.

First, none of the evidence Z.A. Seafood cites detracts from Commerce's finding that its third-country sales were part of Minh Phu Group's transshipment scheme, which supports Commerce's finding that Z.A. Sea Foods's third-country prices are not "representative."  *See* IDM at 16.  Although the statute does not define "representative," it defines normal value, where based on third-country prices, as "the price at which the foreign like product is so sold . . . for consumption in a country *other than* the exporting country *or the United States*."  19 U.S.C. § 1677b(a)(1)(B)(ii) (emphasis added).  Therefore, third-country prices, when providing a basis for normal value, should be based on sales of subject merchandise *consumed* in that third country

and cannot be based on sales consumed in the United States.  *See id.*  Z.A. Sea Foods's claim

that its sales to Vietnam are representative notwithstanding Minh Phu Group's transshipment

scheme, would have Commerce find that prices based on sales not within the ambit of 19 U.S.C.

§ 1677(a)(1)(B)(ii) are somehow representative of third-country prices.  *See* Pls. Br. at 15-18.

Such a result would run afoul of the statute.

Further, basing Z.A. Sea Foods's normal value on sales found to be part of a

transshipment scheme would subvert the purpose of the antidumping statute, which is to

calculate antidumping margins as accurately as possible.  *See Shakeproof Assembly Components*

*Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001).  Distortions in

pricing of third-country sales, such as dumped sales, remove such sales from consideration when

calculating normal value.  *See Alloy Piping*, 201 F. Supp. 2d at 1277 ("the goal of accuracy

cannot be achieved if Commerce relies upon dumped third country prices to calculate {normal

value}.").  Z.A. Sea Foods's sales to Minh Phu Group were similarly distorted through Minh Phu

Group's transshipment scheme and, indeed, the sales were not even consumed in the third

country, Vietnam, but in the United States.  *See* IDM at 16; CBP EAPA Decision at 10.

Therefore, it would be unreasonable for Commerce to find that prices based on these sales are

representative.

Pursuant to Under 19 C.F.R. § 351.404(c)(2)(ii), Commerce may use third-country sales

when it is satisfied that such sales are representative.  Neither the statute nor Commerce's

regulations instruct Commerce to evaluate the overall representativeness of third-country prices,

or to compare the relative representativeness of each potential basis for calculating normal value.

*See* IDM at 19-20.  As Commerce explained in the final results, third-country prices cannot be

representative where they are part of a transshipment scheme and based on sales not consumed in

that third country, but rather, consumed in the United States. *See id.* at 16, 19. Because Commerce found that Z.A. Sea Foods's third-country prices were based on sales that had been part of a transshipment scheme, such that Z.A. Sea Foods's shrimp sales had been sold for consumption in the United States via Vietnam, Z.A. Sea Foods's third-country sales are not representative pursuant to 19 C.F.R. § 351.404(c)(2)(ii), and Commerce was not required to consider other evidence of the representativeness of Z.A. Sea Foods's third-country prices. *See id.*; 19 C.F.R. § 351.404(c)(2)(ii).

Z.A. Sea Foods also argues that Commerce ignored record evidence showing that it had no knowledge of Minh Phu Group's transshipment scheme, and that it was therefore unreasonable for Commerce to find that its third country sales were unrepresentative. Pls. Br. at 18-21. To the contrary, Commerce acknowledged multiple times in the final results that no record evidence supports a finding that Z.A. Sea Foods knew about Minh Phu Group's transshipment scheme. *See* IDM at 16, 20. But as Commerce explained, whether Z.A. Sea Foods was aware of the transshipment scheme is immaterial to Commerce's determination. *Id.* at 20-21. Commerce found Z.A. Sea Foods's third-country prices not to be representative because they were based on sales that were part of a transshipment scheme, not consumed in the third country, and which were, in part, consumed in the United States; whether Z.A. Sea Foods knew of the scheme does not change the prices' lack of representativeness. *See id.* at 19. That is, Z.A. Sea Foods's lack of knowledge regarding the transshipment scheme, or basically what the customer does with the product or pattern of trade, does not mitigate the fact that those sales were ultimately transshipped to the United States and by statute are inappropriate for use as a basis for normal value. *See id.* at 16.

17

In further support of its argument, Z.A. Sea Foods alleges that Commerce contradicted its own practice and this Court's precedent with regard to the "knowledge test." Pls. Br. at 18-22. Z.A. Sea Foods argues that, because it had no knowledge of Minh Phu Group's transshipment scheme, a proper application of the knowledge test prohibits Commerce from treating its Vietnam sales as U.S. sales. *Id.* at 18-21.

But the knowledge test does not apply here. The knowledge test provides that Commerce will treat as home market sales, sales for which a producer "knew or should have known that the merchandise was . . . for home consumption based upon the particular facts and circumstances of the case." *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1331 (Ct. Int'l Trade 2000) (citing *INA Walzlager Schaeffler KG v. United States*, 957 F. Supp. 251, 264 (Ct. Int'l Trade 1997), *aff'd*, 108 F.3d 301 (Fed. Cir. 1997)). Conversely, when determining whether to treat certain sales as U.S. sales, Commerce "looks to whether the producer knew or should have known, at the time of a sale, whether or not the subject merchandise will be exported." *Id.* Commerce has explained that "the purpose of the knowledge test is to identify the price discriminator to ensure that in performing a dumping calculation, sales and pricing are attributed to the party setting the U.S. price." *Glycine From Japan*, 83 Fed. Reg. 54,718 (Dep't of Commerce Oct. 31 2018) (prelim. results), and accompanying PDM at 8.

Here, the knowledge test is inapplicable because Commerce did not treat Z.A. Sea Foods's Vietnam sales as U.S. sales pursuant to 19 U.S.C. § 1677a(a). *See Allegheny Ludlum*, 215 F. Supp. 2d at 1331 ("{I}n implementing the provisions of 19 U.S.C. § 1677a(a), Commerce looks to whether the producer *knew or should have known*, at the time of a sale, whether or not the subject merchandise will be exported.") (emphasis added). Rather, Commerce merely found,

for reasons unrelated to knowledge, that Z.A. Sea Foods's Vietnam sales are inappropriate for use as the basis of normal value pursuant to 19 U.S.C. § 1677b(a). *See* IDM at 19.

Z.A. Sea Foods also argues that the converse application of the knowledge test should apply in this case. Pls. Br. at 15-18. In other words, Z.A. Sea Foods argues that because it had "reported that it had no control over the merchandise after its sales to Vietnam and that it neither knew nor should have known that any frozen shrimp it sold to its Vietnamese customers would be sold domestically after processing or re-exported," Commerce should consider the sales representative. *Id.* at 16-17.

This argument is a non sequitur. Although the knowledge test permits Commerce to treat eventual exports as home market sales where a producer has no actual or constructive knowledge that such sales are for export, *Allegheny Ludlum*, 215 F. Supp. 2d at 1331, that is irrelevant here because the salient point is that the sales in question were part of a transshipment scheme, as to which Commerce has never applied the knowledge test. *See* IDM at 16; CBP EAPA Decision. Indeed, Commerce has never contemplated whether to use, as normal value, sales to an exporter found to be in violation of EAPA, and nor has Z.A. Sea Foods explained how such sales could possibly be deemed "representative" in such a setting.

Moreover, applying the knowledge test in this case would not even serve the purpose of the knowledge test. Although Z.A. Sea Foods was not in a position to serve as a "price discriminator" for sales to the United States, Commerce explained that the sales procured by Minh Phu Group were likely transshipped at financial advantage, which would enable Minh Phu Group to purchase Indian shrimp at lower prices than its competitors. *See* IDM at 19. "Meaning that there had to be some price advantage to the Vietnamese sales to make this scheme

worthwhile, profitable, and price competitive with direct sales to the United States made by Z.A. Sea Foods." *Id.*

Therefore, the knowledge test has no application to Commerce's determination that transshipped sales are inappropriate for use as third country sales to calculate normal value. *See* IDM at 16. And even though Z.A. Sea Foods may have lacked knowledge of Minh Phu Group's transshipment scheme, substantial evidence supports Commerce's determination that the prices of sales from Z.A. Sea Foods to Minh Phu Group were likely still distortive and made not representative by Minh Phu Group's incentive and ability to offer lower prices than its competitors. *See id.*; *id.* at 19 ("Further, in some cases, the prices to Vietnam are in fact prices for sales that eventually become U.S. sales, meaning that they cannot be representative of prices for sales in the third-country market because they are ultimately U.S. sales."); CBP EAPA Decision.

## V. Commerce's Determination To Base Z.A. Sea Foods's Normal Value On Constructed Value, Rather Than Third-Country Sales, Is In Accordance With Law

Z.A. Sea Foods further argues that 19 C.F.R. § 351.404(f) establishes a preference for the use of third-country sales over constructed value as a basis for normal value. Pls. Br. at 27-28. And, thus, Commerce unreasonably departed from the "regulatory preference of using third country sales over constructed value" because it had "submitted a complete and reconciled Vietnam export sales database in the format required by Commerce." *Id.* at 28. However, as we explain below, Commerce's use of constructed value for calculating normal value is in accordance with law.

Section 1677b(a)(1)(B)(ii)(I) provides that third-country sales must be representative, but the statute does not establish a preference for third-country sales over constructed value as the basis of normal value. *See also* 19 C.F.R. § 351.404(c)(2)(ii) (stating Commerce may base

normal value on third-country sales, but only if those sales are representative).  However, a separate regulation, 19 C.F.R. § 301.404(f), provides that Commerce will normally base normal value on third-country sales rather than constructed value *if* adequate information is available and verifiable.  Therefore, Commerce's regulations provide that Commerce may use third-country prices as the basis of normal value if those prices are *representative* and available.

Here, Commerce found that Z.A. Sea Foods's third-country prices based on sales to Vietnam were not representative, thus foreclosing the use of third-country prices as normal value.  *See* IDM at 16.  Commerce explained in the final results that, "{n}ormally, {it} would use third-country sales as a comparison market," *id.* at 20, but Z.A. Sea Foods argues that Commerce "suggested" otherwise by finding that the statute and regulations permit the use of constructed value instead of third-country prices, and that "Commerce cannot assert a new order of preference that conflicts with the existing regulatory standard."  Pls. Br. at 26-27 (citing IDM at 19-20).  Commerce's determination to use constructed value is not, as Z.A. Sea Foods claims, tantamount to a finding that the regulations state no preference for the use of third-country prices over constructed value, which would contravene 19 C.F.R. § 351.404(f).  Rather, Commerce explained that the statute and regulations permit the calculation of normal value based on constructed value as an alternative to third-country prices.  *See* IDM at 19-20; PDM at 11; *see also* 19 U.S.C. § 1677b(a)(4); 19 C.F.R. § 351.404(a).

Moreover, whether Commerce's regulations express a preference for third-country prices over constructed value is irrelevant here.  Because Commerce found that, pursuant to 19 C.F.R. § 351.404(c)(2)(ii), third-country prices cannot be used as a basis for normal value at all due to the EAPA decision, the only issue was whether the statute and Commerce's regulations permit the use of constructed value as an alternative basis.  *See* PDM at 9, 11-12; IDM at 16, 19.  Because

19 U.S.C. § 1677b(a)(4) and 19 C.F.R. § 351.404(a) permit the use of constructed value as an alternative basis for normal value, Commerce's determination to base Z.A. Sea Foods's normal value on constructed value is in accordance with law.

**CONCLUSION**

For these reasons, we respectfully request that this Court deny plaintiffs' motion for judgment on the administrative record, sustain Commerce's final determination in its entirety, and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

SPENCER NEFF
Staff Attorney
Office of the Chief Counsel
    For Trade Enforcement & Compliance
U.S. Department of Commerce

/s/Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

Dated: September 2, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 6,274 words.

<u>s/Kara M. Westercamp</u>

September 2, 2021

23

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, et al., ) | |
| Plaintiffs, ) | |
| v. ) | Court No. 21-00031 |
| UNITED STATES, ) | |
| Defendant, ) | |
| and ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, ) | |
| Defendant-Intervenor. ) | |

**ORDER**

Upon consideration of plaintiffs' motion for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained in its entirety.

Dated: _____, 2021            _____
     New York, New York                                      Judge