## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

---

|  |  |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED,<br>B-ONE BUSINESS HOUSE PVT. LTD.,<br>HARI MARINE PRIVATE LIMITED,<br>MAGNUM EXPORT,<br>MEGAA MODA PVT. LTD.,<br>MILSHA AGRO EXPORTS PRIVATE LTD.,<br>SEA FOODS PRIVATE LIMITED,<br>SHIMPO EXPORTS PRIVATE LIMITED,<br>FIVE STAR MARINE EXPORTS PVT. LTD.,<br>HN INDIGOS PRIVATE LIMITED,<br>RSA MARINES, AND ZEAL AQUA LTD.,<br><br>            Plaintiffs,<br>      v.<br><br>UNITED STATES,<br><br>            Defendant,<br><br>      and<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>            Defendant-Intervenor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No. 21-00031<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

### PLAINTIFFS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Robert G. Gosselink
Jonathan M. Freed

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

*Counsel to Plaintiffs*

Dated:  October 5, 2021

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ......................................................................................................... 2

      A.     Commerce Failed to Establish that ZASF's Sales to Vietnam Were
            Unrepresentative. .................................................................................... 3

      B.     Commerce's Determination That ZASF's Merchandise Was Part of Minh Phu's
            Transshipment Scheme Is Unsupported by Record Evidence and Not a Valid
            Reason to Disregard ZASF's Vietnam Sales ........................................... 8

      C.     Commerce May Not Disregard Reported Sales Based on the Unknown
            Downstream Actions of a Customer .................................................... 13

      D.     Defendant and Defendant-Intervenor Fail to Explain How a Purported
            Transshipment Scheme Resulted in Distorted Upstream Selling Prices ............. 16

III.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

Burlington Truck Lines v. United States, 371 U.S. 156, 83 S. Ct. 239,
9 L. Ed. 2d 207 (1962) ................................................................................................16

Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S. Ct. 1018,
16 L.Ed.2d 131 (1966) ..................................................................................................3

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951) ..............................................2

Borlem S.A. Empreedimentos Industriais v. United States, 913 F.2d 933 (Fed. Cir. 1990).........12

Daewoo Elecs. Co. v. United States, 6 F.3d 1511 (Fed. Cir. 1993) ...............................9

Intellectual Ventures I LLC v. Motorola Mobility LLC, 870 F.3d 1320 (Fed. Cir. 2017)...........11

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927 (Fed. Cir. 1984)................................3

NSK, Ltd. v. United States, 390 F.3d. 1352 (Fed. Cir 2004)...........................................6

OSI Pharmaceuticals, LLC v. Apotex Inc., 939 F.3d 1375 (Fed. Cir. 2019) ...........................7, 10

Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States,
268 F.3d 1376, (Fed. Cir. 2001)......................................................................................6

Asociacion Columbiana Exportadores de Flores v. United States, 40 F. Supp. 2d 466
(Ct. Int'l Trade 1999)......................................................................................................11

Coalition of American Flange Producers v. United States, 517 F.Supp.3d
(Ct. Int'l Trade 2021)......................................................................................................15

Dorbest v. United States, 30 C.I.T. 1671, 462 F. Supp. 2d 1262 (2006)........................................3

Goldlink Indus. Co. v. United States, 30 C.I.T. 616, 431 F. Supp. 2d. 1323 (2006).......................3

Husteel Co., Ltd. v. United States, 491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007)...............4, 5, 6, 8

INA Walzlager Schaeffler KG v. United States, 957 F. Supp 251 (Ct. Int'l Trade 1997) ...........14

Koyo Seiko Co., Ltd. v. United States, 955 F. Supp. 1532 (Ct. Int'l Trade 1997).......................12

Manchester Tank & Equip. Co. v. United States, 483 F. Supp. 3d 1309
(Ct. Int'l Trade 2020)................................................................................................ 2-3

Maverick Tube Corp. v. United States, No. 14-00229, 2016 WL 703575
(Ct. Int'l Trade, Feb. 22, 2016).................................................................................11

Timken Co. v. United States, 968 F. Supp. 2d, 1286 (Ct. Int'l Trade 2014)................................17

Win-Tex Products, Inc. v. United States, 829 F. Supp. 1349 (Ct. Int'l Trade 1993) ...................12

**Statutes**

19 U.S.C. § 1677a(a)...................................................................................................14

19 U.S.C. § 1677b(a) ..................................................................................................14

19 U.S.C. § 1677b(a)(1)(B)(ii)(I) .................................................................................5

**Regulations**

19 C.F.R. § 351.404(c)(2)(ii).....................................................................................5, 13

**Administrative Determinations**

Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty
Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg.
85,581 (Dep't Commerce Dec. 29, 2020)......................................................................1

Welded Line Pipe From the Republic of Korea, 80 Fed. Reg. 61366 (Oct. 13, 2015).................14

**PLAINTIFFS' REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## I.   INTRODUCTION

Plaintiffs, Z.A. Sea Foods Private Limited ("ZASF"), B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited, reply to the September 2, 2021, responses of Defendant, the United States, and Defendant-Intervenor, Ad Hoc Shrimp Trade Action Committee, both of which respond to the single claim raised by Plaintiffs in their Rule 56.2 Brief contesting the U.S. Department of Commerce's final results of administrative review of the antidumping duty order on certain frozen warmwater shrimp from India.  See Def.'s Resp. Pls.' Mot. J. Upon Agency R., Sept. 2, 2021, ECF No. 31 ("Def. Resp. Br."), Def. Int.'s Resp. Pls.' Mot. J. On Agency R., Sept. 2, 2021, ECF No. 30 ("Def-Int. Resp. Br."); see also Pls.' Rule 56.2 Mot. J. Upon Agency R., June 18, 2021, ECF No. 26, Mem. Supp. Mot. J. Upon Agency R. Confidential Version, June 18, 2021, ECF No. 26 ("Plaintiffs' 56.2 Brief"); Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,581 (Dep't Commerce Dec. 29, 2020) ("Final Results"), PR 199 and Issues and Decision Memorandum (Dep't Commerce Dec. 21, 2020) ("IDM"), PR 194.

The Court must remand to Commerce because record evidence does not support Commerce's determination that ZASF's sales to Vietnam were not representative of sales in the ordinary course of trade.  In their response briefs, Defendant and Defendant-Intervenor repeat Commerce's incorrect and unsupported conclusory remarks, and ignore substantial portions of

1

the administrative record that undermine Commerce's determination. Defendant and Defendant-Intervenor also fail to acknowledge judicial and administrative practice with respect to the selection of comparison sales to establish normal values, and also fail to explain how and why ZASF's selling prices to Vietnam were distorted. The Court therefore must remand the <u>Final Results</u> with instructions to Commerce to find that ZASF's sales to Vietnam during the POR were representative or to otherwise explain based on record evidence why ZASF's sales to Vietnam during the POR were not representative.

## II.   ARGUMENT

It is well-settled that for agency action to be based on substantial evidence, the agency must explain why evidence that fairly detracts from the reasonableness of its determination is not outweighed by evidence that supports Commerce's determination. <u>See</u>, <u>e.g.</u>, <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951). Defendant and Defendant-Intervenor address none of the record evidence highlighted by Plaintiffs that detracts from Commerce's conclusion that ZASF's sales to Vietnam were not representative. Specifically, neither Defendant nor Defendant-Intervenor confronts or challenges the key aspect of Plaintiffs' Brief wherein Plaintiffs explained that Commerce's finding of unrepresentativeness lacked a basis in substantial evidence. Instead, Defendant suggests that the law and regulations do not require Commerce to make such an evaluation, Def. Br. at 16, and Defendant Intervenor claims that Plaintiffs are simply asking the Court to replace Commerce's judgment with their own. <u>See</u> Def-Int. Resp. Br. at 10. Both positions are incorrect. Moreover, neither Defendant nor Defendant-Intervenor address Plaintiffs' comparisons of the similarities of ZASF's total sales to Vietnam and the similarities of such sales to the United States, all of which constituted significant factual information that seriously undermined Commerce's conclusions. <u>See</u> <u>Manchester Tank &</u>

Equip. Co. v. United States, 483 F. Supp. 3d 1309, 1317 (Ct. Int'l Trade 2020).  In order for the Court to affirm Commerce's determination, the agency must have provided "a reasoned explanation ... that is supported by the administrative record."  Dorbest v. United States, 30 C.I.T. 1671, 1677-78, 462 F. Supp. 2d 1262, 1269-70 (2006) (citing Goldlink Indus. Co. v. United States, 30 C.I.T. 616, 629, 431 F. Supp. 2d. 1323, 1334 (2006)).  That the statute and regulations do not provide a specific definition of "representative" did not relieve Commerce of the requirement to provide support for its decision.  Commerce failed to do so in this case.

While the possibility of drawing two inconsistent conclusions from the evidence does not preclude an agency's finding from being supported by substantial evidence, Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting Consolo v. Federal Maritime Commission, 383 U.S. 607, 619-20, 86 S. Ct. 1018, 16 L.Ed.2d 131 (1966), the administrative record in this case cannot support a conclusion ZASF's sales to Vietnam were part of a transshipment scheme, much less establish that ZASF's selling prices to Vietnam during the POI were not representative.  Defendant's and Defendant-Intervenor's response briefs address irrelevant issues, ignore critical arguments raised by Plaintiffs in their 56.2 Brief, and fail to defend Commerce's unsupported and unreasonable decision to disregard ZASF's Vietnam sales.

### A.  Commerce Failed to Establish that ZASF's Sales to Vietnam Were Unrepresentative.

Defendant and Defendant-Intervenor both spend almost the entirety of their response briefs addressing Commerce's decisions with respect to a transshipment scheme by a Vietnamese exporter, the Minh Phu Group ("Minh Phu").  We will address that issue presently.  But first, we address Defendant's and Defendant-Intervenor's failure to address the core issue of the appeal: Commerce's failure to support with substantial evidence its decision that ZASF's sales to its Vietnamese customers were "unrepresentative."

3

In <u>Husteel Co., Ltd. v. United States</u>, the Court considered whether Commerce had appropriately excluded from the calculation of normal value a Korean producer's sales of oil country tubular goods ("OCTG") to Korean trading companies that subsequently exported the merchandise to China.  491 F. Supp. 2d 1283, 1294 ("<u>Husteel</u>").  The Korean producer had represented to Commerce that it was not involved in negotiating the price at which the trading companies made their downstream sales of OCTG to the Chinese buyers, and that Commerce should rely on its selling prices to the trading companies because (1) the sales were of sufficient quantity; (2) the sales were not subject to a "particular market situation;" and (3) the prices for the sales were "representative" (i.e., the OCTG was sold in arm's-length, market-economy transactions to unrelated Korean trading companies).  491 F. Supp. 2d 1287.  Commerce disagreed that the selling prices to the trading companies were "representative."  Instead, Commerce noted that China was a nonmarket economy and that the downstream sales made by the trading companies to the Chinese buyers "may very well not be at prices that reflect the true value of the merchandise."  <u>Id.</u>  The Court in <u>Husteel</u> agreed that it was appropriate for Commerce to ensure that the selling prices were determined on the basis of market principles, 491 F. Supp. 2d 1290, but concluded that Commerce did not justify its finding that the prices of the sales to the Korean trading companies were not representative.  491 F. Supp. 2d 1291. Instead, the Court concluded that Commerce's decision "was merely an assumption on the part of Commerce, as the agency made no findings that the actual prices paid to Plaintiffs did not reflect the fair value of the OCTG."  491 F. Supp. 2d 1294.  The same situation that existed in <u>Husteel</u> exists in the present case, and Defendant's and Defendant-Intervenor's arguments fail to establish that Commerce made a finding that the prices paid to ZASF by its Vietnam customers "did not reflect the fair value" of the frozen shrimp merchandise.

Here, commercial documentation between ZASF and its Vietnam customers establishes that ZASF's sales to Vietnam were based on market principles.  See, e.g., ZASF Section A Response (September 16, 2020), Exhibit A-7(b), PR 118-119, CR 28-29; ZASF Supplemental Sections ABCD Response (Jan. 2, 2021), Exhibits S1-4(b), PR 148-159, CR 45-60; ZASF Second Supplemental Response (Jan. 29, 2019), Exhibits S2-2(a) to S2-3(c), PR 160-163, CR 65-69.  In contrast, no record evidence supports Commerce's claim that ZASF's actual selling prices to its Vietnam customers were not based on market principles.  There is no evidence on the record that Commerce relied on any empirical evidence or engaged in any examination or comparison to determine that ZASF's sales were not representative, and Defendant even argues that such an analysis was not necessary.  According to Defendant, once Commerce presumed that some of the merchandise that ZASF sold to Vietnam was part of a transshipment scheme, "Commerce was not required to consider other evidence of the representativeness of {ZASF's} third-country prices."  Def. Br. at 17 (emphasis added).[1]

Such abrogation of responsibility cannot be sustained.  In Husteel, once Commerce found that the Korean trading companies were re-selling OCTG to China, Commerce concluded that it was unnecessary to consider the representativeness of the sales to the trading companies.  491 F. Supp. 2d 1287.  But the Court rejected Commerce's approach because Commerce failed to examine the representativeness of the Korean producer's actual relevant pricing.  Id.  Here, Commerce admittedly did not bother to consider the representativeness of ZASF's actual selling

---

[1]   Elsewhere, Defendant brazenly asserts that "{n}either the statute nor Commerce regulations instruct Commerce to evaluate the overall representativeness of third-country prices."  Def. Br. at 16.  But that is exactly what the statute and regulations require.  Specifically, 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) instructs Commerce to determine normal value using the price of third country sales if "such price is representative" and 19 C.F.R. § 351.404(c)(2)(ii) instructs Commerce to decline to calculate normal value using the price of third country sales only if "the price is not representative."  It therefore is axiomatic that Commerce cannot make these determinations without evaluating the overall representativeness of third-country prices.

prices to Vietnam, and the Court should make a similar determination.[2]  While Defendant acknowledged in its response that a "determination that third-country prices are not representative must be supported by substantial evidence," and that "the party seeking to show that sales to a third country are not representative bears the burden of making such a showing," Def. Br. at 11 (citations omitted), Commerce failed to provide such evidence or make such a showing, and Defendant argues that Commerce in fact was not required to do so.  Def. Br. at 17. The Court cannot permit Commerce to disregard its statutory and regulatory obligation in this manner.  Instead of merely assuming that ZASF's prices were unrepresentative based on the actions of one of ZASF's downstream customers, Commerce was required to make an actual determination that ZASF's selling prices were not representative.

A proper examination of the representativeness of ZASF's sales to Vietnam was particularly critical in this case because ZASF had no knowledge of a transshipment scheme of one of its Vietnam customers or any knowledge regarding what its Vietnam customers did with the merchandise they purchased from ZASF.  Def. Br. at 17; Def-Int Br. at 15-16, 19. Furthermore, it is uncontested by Defendant and Defendant-Intervenor that ZASF's sales of shrimp merchandise to Vietnam were substantial and viable, and that the prices of such sales were freely and fully negotiated at arm's length.  As such, ZASF's selling prices to Vietnam were presumptively representative under 19 C.F.R. § 351.404.[3]  Moreover, although it was

---

[2]   "An agency acts impermissibly when it treats similar situations in a manner that is 'internally inconsistent,' and fails to 'reasonably explain[] the inconsistency."  Husteel Co., Ltd. v. United States, 491 F. Supp. 2d 1283, 1293 (Ct. Int'l Trade 2007), citing NSK, Ltd. v. United States, 390 F.3d 1352, 1357 (Fed. Cir 2004).

[3]   In Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001), the Court of Appeals for the Federal Circuit held that Commerce correctly concluded that a sale between a market-economy supplier and a nonmarket-economy purchaser resulted in 'an actual price determined by market economy forces" that was "both reliable and accurate.'  Id. at 1380 (quotation and citation omitted).

*Commerce's* burden to demonstrate that such sales were not representative, ZASF nonetheless took the proactive step of demonstrating that they were.  For example, ZASF reported that 100% of the shrimp products that ZASF sold to both the United States and Vietnam were uncooked, headless, shell-on, non-deveined, tail-on products sold in block form, and that 96% of the shrimp products sold to the United States and 93% of the shrimp products sold to Vietnam were the same species of white vannamei shrimp.  ZASF Section A Response (Sept. 16, 2019), A-12 to A-18, PR 114-121, CR 28-31.  ZASF also reported that for all sales to Vietnam and also in the United States, Vietnam had only a "single channel of distribution," that the sales processes within this channel were identical for both markets, that all sales to Vietnam and the United States were made by the same sales staff, that most sales to both markets were made on a "manufactured-to-order" basis, that all sales were made to unrelated customers, and that ZASF's selling activities were the same for sales to both Vietnam and the United States.  Id.  ZASF thus established that its sales to Vietnam not only were internally comparable, but also were comparable to the company's sales to the United States.  Commerce, in contrast, provided no such analysis.  The substantial evidence standard involves an examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision.  OSI Pharmaceuticals, LLC v. Apotex Inc., 939 F.3d 1375, 1381 (Fed. Cir. 2019) (citations omitted).  Commerce failed to address such information in this case.

An exploration of ZASF's selling prices to Vietnam also was especially important because it is Commerce's position that *one* of ZASF's customers (i.e., Minh Phu) was engaged in a transshipment scheme and that the existence of this scheme resulted in ZASF selling shrimp merchandise to Minh Phu at "distorted" nonmarket prices.  Def. Br. at 16.  But Commerce never demonstrated that such selling prices were distorted.  For example, Commerce never made a

comparison of ZASF's selling prices to Minh Phu to the prices at which shrimp in general is sold

to Vietnam.  Nor did Commerce compare ZASF's Vietnam sales to the prices at which ZASF

sold shrimp to third countries.  In fact, when ZASF requested after the preliminary results to be

permitted to provide third-country sales data, Commerce refused ZASF's request.  See "Letter

from Commerce Denying ZASF's Request to Provide Factual Information" (March 24, 2020),

PR 175.  Furthermore, Commerce never even used readily available information on the record to

compare ZASF's selling prices to customer Minh Phu to ZASF's selling prices to all of its other

Vietnamese customers.  Commerce simply concluded that Customs and Border Protection

("CBP") had found that Minh Phu had commingled some Indian- and Vietnam-origin shrimp in

its sales to the United States, and that Commerce therefore need not examine whether ZASF's

selling prices to Vietnam were representative.  Def. Br. at 17.  Such rationale does not constitute

reasoned decision-making, and certainly does not constitute substantial evidence.  Commerce

may not shirk its responsibility of determining representativeness based on an assumption –

without any specific finding – that the prices paid to ZASF by its Vietnam customers for frozen

shrimp did not reflect the fair value of the merchandise.  For this reason alone, as in Husteel, the

Court must remand this case to Commerce to reconsider its decision that all of ZASF's selling

prices to Vietnam during the POI were not representative.

**B.  Commerce's Determination That ZASF's Merchandise Was Part of Minh Phu's Transshipment Scheme Is Unsupported by Record Evidence and Not a Valid Reason to Disregard ZASF's Vietnam Sales**

The crux of Defendant's and Defendant-Intervenor's response is that (1) record evidence

shows that ZASF sold to Minh Phu during the period of review; that (2) Minh Phu commingled

and transshipped Indian-origin shrimp to the United States during that period; and thus (3) it was

reasonable for Commerce to presume that ZASF's Indian-origin merchandise was among the

merchandise that Minh Phu shipped to the United States.  Def. Br. at 13; Def-Int. Br. at 14-16.

But Commerce's conclusion was a logical fallacy.

While Commerce is permitted to make reasonable inferences from the record evidence,

Daewoo Elecs. Co. v. United States, 6 F.3d 1511, 1520 (Fed. Cir. 1993), Commerce may not

make decisions based on unreasonable speculation.  And Commerce's speculation in this case

was not reasonable.  While ZASF sold to Minh Phu during the POR, and Minh Phu subsequently

was found by CBP to be involved in a transshipment scheme, it was not reasonable for

Commerce to make the multiple leaps (1) that the shrimp merchandise sold to Minh Phu by

ZASF was not consumed in Vietnam; (2) that the shrimp merchandise sold to Minh Phu by

ZASF was re-shipped to the United States without being reprocessed into non-subject

merchandise; (3) that the subject shrimp that Minh Phu shipped to the United States actually was

procured from ZASF; and (4) that the prices that ZASF sold to all of its Vietnam customers

(including Minh Phu) therefore were distorted and unrepresentative.

In its EAPA investigation Customs and Border Protection made the following findings:

> From October 1, 2018, through August 31, 2019, [       ] data shows that Indian
> **companies** exported about $[       ] worth of frozen shrimp to Minh Phu in
> Vietnam in [     ] shipments.  Additionally, Minh Phu has a known history of using
> [       ] in its raw material processing.  Minh Phu listed [   ] Indian **companies** as
> suppliers of its raw material inputs (i.e., [       ]) during its participation in
> Commerce's 2014-2015 administrative review.   Comparing the [   ] Indian
> company **names** listed by Minh Phu to recent [              ] demonstrates that
> Minh Phu imported from [   ] of the same Indian **suppliers** during the POI.

EAPA Determination at 4-5 (P.R. 187) (emphasis added).[4]  This information presents three

critical facts, the latter two of which were glossed over by Commerce in its final results and

completely ignored by Defendant and Defendant-Intervenor in their response briefs.  First, ZASF

---

[4]    The administrative record contains only a public version of the EAPA Determination.

is not listed in this paragraph or anywhere in CBP's decision as supplying merchandise to Minh

Phu that was later exported to the United States. This fact is important because – contrary to

Commerce's conjecture – CBP made no finding that the merchandise sold to Minh Phu by ZASF

was part of Minh Phu's transshipment scheme. Second, CBP found that Minh Phu purchased

frozen shrimp merchandise from *multiple* Indian suppliers. This fact is important because ZASF

was not Minh Phu's sole Indian supplier of shrimp and, apparently, not even one of only a

couple suppliers. Because Minh Phu purchased frozen shrimp merchandise from several Indian

suppliers, it was not reasonable for Commerce to presume that because (A) ZASF sold shrimp to

Minh Phu and (B) Minh Phu sold Indian-origin shrimp to the United States that (C) ZASF's

Vietnam sales were "eventually consumed in the United States." Def. Br. at 8. This is not a case

where conflicting inferences may be drawn from the record. It simply was unreasonable for

Commerce to have inferred from the evidence that ZASF's Vietnam sales were "part of Minh

Phu's transshipment scheme" when no record evidence indicates or even suggests that they were.

Third, CBP found that Minh Phu had purchased shrimp merchandise from numerous Indian

suppliers both when Minh Phu was subject to the Vietnam antidumping duty order and later

when Minh Phu no longer was subject to the Vietnam antidumping duty order. Defendant's

assumption that ZASF's selling prices to Vietnam were distortive because they were part of a

transshipment scheme to avoid dumping duties does not make sense if Indian suppliers had been

selling to Minh Phu since long before Minh Phu was excluded from the Vietnam antidumping

duty order. See Def. Br. at 19-20.

There are limits to Commerce's discretion in evaluating record evidence -- namely,

Commerce may not base its conclusions on speculation. OSI Pharm., LLC v. Apotex Inc., 939

F.3d 1375, 1382-83 (Fed. Cir. 2019) (citing Intellectual Ventures I LLC v. Motorola Mobility

LLC, 870 F.3d 1320, 1331 (Fed. Cir. 2017); see also Maverick Tube Corp. v. United States, No.

14-00229, 2016 WL 703575, at *3 (Ct. Int'l Trade, Feb. 22, 2016); Asociacion Columbiana

Exportadores de Flores v. United States, 40 F. Supp. 2d 466, 472 (Ct. Int'l Trade 1999)

(speculation does not satisfy the substantial evidence on the record standard).  In this case, there

is no record evidence for Defendant's and Defendant Intervenor's unequivocal claims that:

- ZASF's sales to Vietnam "were not consumed in Vietnam and thus were not third-country sales."  Def. Br. at 8; Def-Int. Br. at 16-17.

- "Z.A. Sea Food's Vietnam sales were eventually consumed in the United States."  Def. Br. at 9.

- "Record evidence demonstrates that Z.A. Sea Food's sales of Indian shrimp to Vietnam were transshipped to the United States by Minh Phu Group, i.e., entering as if they were sales of shrimp from Vietnam."  Def. Br. at 12.

- "Minh Phu Group transshipped Z.A. Sea Food's Indian-origin shrimp through Vietnam."  Def. Br. at 12.

- ZASF's prices "are not prices for consumption in Vietnam."  Def. Br. at 15; Def-Int. Br. at 16.

- ZASF's selling prices to Vietnam "are prices that are ultimately for consumption in the United States."  Def. Br. at 15.

- "Some of {ZASF's} sales ultimately entered the United States."  Def-Int. Br. at 16.

- "Z.A. Seafood's lack of knowledge, or basically what the customer does with the product or pattern of trade, does not mitigate the fact that those sales were ultimately transshipped to the United States."  Def. Br. at 17.

- "The sales in question were part of a transshipment scheme."  Def. Br. at 19.

- "The {ZASF} sales that were part of this evasion scheme were first sold to Vietnam shrimp customers and then sold to customers in the United States."  Def-Int. Br. at 16.

- "The prices to Vietnam are in fact prices for sales that eventually become U.S. sales."  Def. Br. at 20.

More importantly, Commerce made no findings to support their assertions.

These statements are also not reasonable inferences from the evidence before Commerce.

They are speculation and factual assertions that have no support whatsoever in the administrative

record.[5]  In this case, nothing on the administrative record establishes that the shrimp sold to

Vietnam by ZASF was *not* resold in Vietnam.  Nor is there any record evidence that the shrimp

sold to Vietnam by ZASF was *not* processed into merchandise outside the scope of the

antidumping duty order.  Nor is there any record evidence that any of the scope merchandise that

the Minh Phu Group might have commingled and entered into the United States was purchased

from ZASF.  Because no evidence demonstrates that ZASF's merchandise was re-exported

(either as in-scope or non-scope merchandise), it was not reasonable for Commerce to conclude

that it was; and substantial evidence therefore does not support Commerce determination that

ZASF's sales to Vietnam were unsuitable for establishing ZASF's normal values.[6]

---

[5]   At one point in its response brief, Defendant Intervenor takes a more measured tone,
suggesting that "because the shrimp sold by ZA Sea Foods to processors in Vietnam *may
have been exported* to the U.S. market, Commerce determined that the company's third-
country sales could not be used to achieve a fair comparison with export price."  Def-Int. Br.
at 8 (emphasis added).  But while this assertion might be more tempered than Defendant's
more decided declarations, it is no less speculative, and also suffers from not accurately
reflecting Commerce's pointed pronouncements.

[6]   The Court's review of a final determination in an administrative review generally is restricted
to a review of the administrative record.  See 19 U.S.C. § 1516a(b)(2)(A).  The
administrative record "is limited to the information that was presented to or obtained by the
agency making the determination during the particular review proceeding for which section
1516 authorizes judicial review."  Koyo Seiko Co., Ltd. v. United States, 955 F. Supp. 1532,
1544, n. 9 (Ct. Int'l Trade 1997) (quotation omitted).  However, "{w}hether the action is
before the Court for decision on a record made before the agency or on the record made at a
trial *de novo,* indisputable facts ... may be judicially noticed by the court."  Win-Tex
Products, Inc. v. United States, 829 F. Supp. 1349, 1352 (Ct. Int'l Trade 1993); see Borlem
S.A. Empreedimentos Industriais v. United States, 913 F.2d 933 (Fed. Cir. 1990) (rejecting
concept that review on the administrative record precludes any role for judicial notice).  In
this case, as identified in Plaintiffs' 56.2 Brief, at 22 n.4, the Court should take judicial notice
that CBP's Office of Trade, Regulations and Rulings ("ORR") issued a *de novo*
administrative determination on February 11, 2021, in which it reversed the EAPA
Determination, holding that there was insufficient evidence that Indian-origin shrimp was
contained in the Minh Phu's entries.  Rule 201 of the Federal Rules of Evidence provides that

Court No. 21-00031, Plaintiffs' Reply Brief

### C. Commerce May Not Disregard Reported Sales Based on the Unknown Downstream Actions of a Customer

Even if the merchandise that ZASF sold to Vietnam ended up being reprocessed and resold to the United States by Minh Phu without being transformed into nonsubject merchandise – and no evidence on the record supports this conclusion – Commerce unreasonably concluded that all of ZASF's sales to Vietnam were not representative based on the unknown and unforeseeable actions taken by this one Vietnam customer.  Judicial authority and Commerce practice do not support such a conclusion.

In Allegheny Ludlum Corp. United States, the Court confirmed that, in implementing the provisions of 19 U.S.C. § 1677b(a) – the provision at issue in this case – Commerce looks to whether the producer knew or should have known, at the time of a sale, whether or not the merchandise will be exported.  See 215 F. Supp. 2d 1322, 1330-31 (Ct. Int'l Trade 2000).  As reiterated by the Allegheny court, "the appropriate burden of proof for determining whether to exclude sales" from the calculation of normal value is whether the producer knew or should have known that the merchandise was not for consumption in the comparison market based upon the

---

a court may, at any stage of the proceeding, take judicial notice of any fact "not subject to reasonable dispute because it: (1) it is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" either on its own without a request or if a party requests it and the court is supplied with the necessary information.  Fed. R. Evid. 201(b)-(d).

In this case, the Court should take judicial notice that CBP did not find that Indian-origin shrimp was contained in Minh Phu's entries because the information is indisputable because it is "generally known" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  As demonstrated above, there is substantial disagreement among the parties regarding the factual information contained in CBP's EAPA Determination and whether the EAPA Determination established that any ZASF merchandise sold to Minh Phu was reshipped to the United States.  Moreover, because Defendant has argued that "Commerce found that, pursuant to 19 C.F.R. § 351.404(c)(2)(ii), third-country prices cannot be used as a basis for normal value at all **due to the EAPA decision**," Def. Br. at 21 (emphasis added), the Court's recognition that CBP reversed its earlier EAPA Determination thus likely would lead to more meaningful review.

facts and circumstances surrounding the sales.  Id. at 1332, citing INA Walzlager Schaeffler KG v. United States, 957 F. Supp 251, 264 (Ct. Int'l Trade 1997).  In Welded Line Pipe From the Republic of Korea, Commerce found that the actions taken by customers that included transforming subject merchandise into non-subject merchandise prior to export, reselling the pipe to other customers before export, or simply exporting the merchandise "as is" did not result in the exclusion of those sales from comparison purposes if the producer that sold to those customers had no knowledge that the merchandise it sold might be exported to foreign destinations with or without any further processing.  80 Fed. Reg. 61366 (Dep't Commerce Oct. 13, 2015), Issues and Decision Memorandum, at Comment 6.  In response to this authority, Defendant claims that the knowledge test is inapplicable "because Commerce did not treat Z.A. Sea Food's Vietnam sales as U.S. sales pursuant to 19 U.S.C. § 1677a(a)."  Def. Br. at 18. Defendant Intervenor similarly tries to distinguish these cases, claiming that "the issue facing Commerce was not whether certain sales were appropriately reported as home market sales but whether ZA Sea Foods' sales to Vietnam were an appropriate basis to determine normal value." Def-Int. Br. at 17.  Defendant and Defendant-Intervenor both highlight a distinction without a difference.  In all these cases, the critical issue is the same: which sales should Commerce include in its calculation of normal value under 19 U.S.C. § 1677b(a).  Here, it is uncontroverted that Commerce specifically excluded ZASF's Vietnam sales from the calculation of normal value based on Commerce's consideration that ZASF's sales to Vietnam were "part of a downstream transshipment scheme," Def. Br. at 2, 14, that the prices to Vietnam are not "for sales in the third-country market because they are ultimately U.S. sales," Def. Br. at 9, and that using ZASF's sales to Vietnam "would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market."  Def. Br. at 7; Def-Int. Br. at 18.  Defendant and Defendant-Intervenor's

efforts to distinguish the current case from judicial and administrative practice regarding when

Commerce is permitted to exclude comparison market sales from the calculation of normal value

thus falls flat.  Moreover, Commerce has never allowed respondents to claim that certain

(perhaps, high-priced) comparison market sales should be excluded from normal value

consideration as unrepresentative because it was determined *long after the sales were made* that

the merchandise sold might have been re-exported.  Commerce's practice is to include all home

market or third country sales in the pool of potential comparison sales unless it can be

established conclusively to the satisfaction of Commerce that the seller knew, or had reason to

know, at the time of sale that the merchandise would *not* be consumed in the home market or

third country.  See Coalition of American Flange Producers v. United States, 517 F. Supp. 3d

1378 (Ct. Int'l Trade 2021) (information in sales agreement, product packaging requirements,

and product logo requirements indicated that domestic sale was intended for export market).

In this case, there is nothing in ZASF's sales documentation with its Vietnam customers

or anything else on the administrative record that establishes that ZASF knew or should have

known that any of the merchandise it sold to Vietnam customers was for re-export rather than for

the Vietnam home market or for further processing into non-subject merchandise.  Defendant

and Defendant-Intervenor have presented no evidence establishing that ZASF was aware of any

downstream use of its shrimp merchandise in Vietnam other than for domestic consumption, and

in fact repeatedly and consistently have conceded just the opposite.  See Def. Br. at 6 ("{T}here

is no evidence on the record showing that Z.A. Sea Foods knew of the evasion scheme or knew

that these sales may ultimately be destined for the United States"); Def-Int. Br. at 15-16

("{T}here is no documentation on the record showing that ZA Sea Foods had knowledge that its

Vietnamese sales may ultimately be re-exported to the United States").  As such, it was

unreasonable and unlawful for Commerce to conclude that all of ZASF's sales to Vietnam were not representative based on the unknown and unforeseeable downstream actions taken by one of ZASF's Vietnam customers.

### D.  Defendant and Defendant-Intervenor Fail to Explain How a Purported Transshipment Scheme Resulted in Distorted Upstream Selling Prices

Last, even if some merchandise sold to Vietnam by ZASF actually was subsequently re-shipped to the United States by Minh Phu – and, again, there is no record evidence to support this conclusion – Commerce unreasonably presumed that the individual transactions between Minh Phu and re-export purchasers in the United States tainted ZASF's upstream export pricing to Vietnam such that the sales were unrepresentative.  IDM at 19.  But Defendant and Defendant-Intervenor present no justification for Commerce's conclusion that ZASF's actual reported selling prices to its Vietnam customers were unreliable.  Moreover, there is no explanation how ZASF's upstream selling prices to Vietnam might have been distorted.  Defendant surmises that "the sales procured by Minh Phu Group were likely transshipped at financial advantage, which would enable Minh Phu Group to purchase Indian shrimp at *lower prices* than its competitors." Def. Br. at 19, citing IDM, at 19 (emphasis added).  But this attempted explanation is replete with errors.  First, Commerce never provided this explanation of "lower prices," and Defendant's arguments thus constitute post-hoc rationalization that the Court must disregard.  See Burlington Truck Lines v. United States, 371 U.S. 156, 168-69, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962) (reiterating that "courts  may not accept … counsel's post hoc rationalizations for agency action").  Second, what is the source and significance of Defendant's claim that Minh Phu "transshipped at financial advantage"?  Defendant does not explain what bearing this has on ZASF's selling prices to Vietnam or on their representativeness.  Third, what is the support for, and relevance of, Minh Phu purchasing Indian shrimp at prices *lower than its competitors*?

Court No. 21-00031, Plaintiffs' Reply Brief

While Commerce generally has some discretion to decide its own method of analysis, see

Timken Co. v. United States, 968 F. Supp. 2d, 1286 n.7 (Ct. Int'l Trade 2014), this discretion is

limited by the requirement that it be exercised reasonably and supported by substantial evidence

in the record. Here, Defendant provides no basis in the record or in logic for its assertions.

Defendant then repeats Commerce's conjecture that "there had to be some price advantage to

{ZASF's} Vietnamese sales to make this scheme worthwhile, profitable, and price competitive

with direct sales to the United States made by Z.A. Sea Foods." Def. Br. at 19-20, citing IDM at

19. But "worthwhile" and "profitable" in comparison to ZASF's direct U.S. sales suggests that

ZASF's Vietnam sales were high-priced, not low-priced – otherwise, why would ZASF not sell

directly to the United States? For its part, Defendant-Intervenor does not hazard a guess as to

whether ZASF's prices to Vietnam were too low or too high, and simply re-asserts that

Commerce "reasonably determined" that the sales that ZASF made to Vietnam "were not

representative of sales to the third-country market" without any actual support that ZASF's

export pricing to Vietnam was distorted. Def-Int. Br. at 19. In this respect, it is no surprise that

Defendant and Defendant-Intervenor "support" Commerce's speculation with supposition of

their own because – as discussed above – Commerce never conducted a representativeness

determination of ZASF's pricing to Vietnam in the first place.

Setting aside Commerce's conjecture and inconsistency regarding how ZASF's Vietnam

prices might have been distorted, Commerce never actually considered the possibility that ZASF

sold to its Vietnam customers at representative market prices. See IDM at 19; Def. Br. 19-20.

Given this possibility, it does not make sense for Commerce to start with an unsupported

presumption that one of ZASF's Vietnam buyers purchased frozen shrimp merchandise at non-

market prices and that all of ZASF's upstream Vietnam selling prices therefore were not

representative.  As discussed above, the Court may not allow Commerce to disregard ZASF's selling prices to Vietnam as "unrepresentative" without Commerce presenting any actual evidence to support that conclusion.

## III.    CONCLUSION

Commerce failed to meet its burden make an actual determination based on substantial evidence that ZASF's selling prices to Vietnam during the POI were not representative.  Without a factual or logical link between ZASF's knowledge that it sold shrimp merchandise to numerous Vietnam customers and that *one* of those customers might have resold *some* Indian shrimp to the United States, Commerce also cannot justify treating ZASF's sales to Vietnam as sales to the United States.  Because Commerce did not provide a reasoned explanation supported by a stated connection between the facts found and the choices made, the Court should find that Commerce's decision to disregard all of ZASF's sales to Vietnam as unrepresentative was not supported by substantial evidence on the record.  For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for judgment on the agency record and remand this case to Commerce with instructions to revise the <u>Final Results</u> in a manner consistent with the arguments set forth above and in Plaintiffs' 56.2 Brief.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

*Counsel to Plaintiffs*

</div>

Dated:  October 5, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED,<br>B-ONE BUSINESS HOUSE PVT. LTD.,<br>HARI MARINE PRIVATE LIMITED,<br>MAGNUM EXPORT,<br>MEGAA MODA PVT. LTD.,<br>MILSHA AGRO EXPORTS PRIVATE LTD.,<br>SEA FOODS PRIVATE LIMITED,<br>SHIMPO EXPORTS PRIVATE LIMITED,<br>FIVE STAR MARINE EXPORTS PVT. LTD.,<br>HN INDIGOS PRIVATE LIMITED,<br>RSA MARINES, AND ZEAL AQUA LTD., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs,<br>v.<br>UNITED STATES,<br>Defendant,<br>and<br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br>Defendant-Intervenor. | )  Court No. 21-00031<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Reply Brief, dated October 5, 2021, complies with the maximum 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures.  The reply brief contains 6,001 words according to the word-count function of the word-processing software used to prepare the brief, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

Dated:  October 5, 2021                    *Counsel to Plaintiffs*