Slip Op. 22-36

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LTD., | |
| Plaintiffs, | Before: Gary S. Katzmann, Judge<br>Court No. 21-00031 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | |
| Defendant-Intervenor. | |

[The court grants Plaintiffs' motion for judgment upon the agency record and remands for further action.]

Dated:  <u>April 19, 2022</u>

<u>Robert G. Gosselink</u>, Trade Pacific PLLC, of Washington, D.C., argued for Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited. With him on the joint briefs was <u>Jonathan M. Freed</u>.

<u>Kara M. Westercamp</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States.  With her on the briefs were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director,

and <u>Patricia M. McCarthy</u>, Assistant Director.  Of Counsel <u>Spencer Neff</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance.

<u>Zachary J. Walker</u>, Picard, Kentz & Rowe, LLP, of Washington, D.C., argued for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.  With him on the briefs was <u>Nathaniel Maandig Rickard</u>.

      Katzmann, Judge:  The question presented by this case is whether the U.S. Department of Commerce ("Commerce") was permitted to employ constructed value as the basis for normal value in its administrative review of the antidumping duty ("AD") order covering certain frozen warmwater shrimp from India that had been imported into the United States at less than fair value in derogation of fair competition with domestic producers.[1]  Plaintiffs, all foreign producers and exporters in India of the subject merchandise, argue that Commerce's use of constructed value was in error because the facts do not support Commerce's rejection of Vietnam as a third country market through which normal value might have been ascertained.[2]  Defendant, the United States ("the Government"), and domestic producers, Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), contend that Commerce correctly found that the Vietnamese sales data provided by Plaintiffs was not representative (as required by 19 U.S.C. § 1677b(a)(1)(B)(ii)(I)) and therefore unsuitable for purposes of calculating normal value.  The court concludes that Commerce's use of constructed value was unsupported by substantial evidence.  Accordingly, the

---

[1] The AD order on frozen warmwater shrimp from India was issued in February 2005 and includes within its scope "warmwater shrimp and prawns, whether frozen, wild-caught (ocean harvested) or farm-raised (produced by aquaculture), head-on or head-off, shell-on or peeled, tail-on or tail-off, deveined or not deveined, cooked or raw, or otherwise processed in frozen form."  <u>Notice of Am. Final Determ. of Sales at Less Than Fair Value and AD Order: Certain Frozen Warmwater Shrimp from India</u>, 70 Fed. Reg. 5,147, 5,148 (Dep't Commerce Feb. 1, 2005).

[2] Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Private Limited, Hari Marine Private Limited, Magnum Export, Megaa Moda Private Limited, Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines and Zeal Aqua Limited will be referred to as "Plaintiffs" or "ZASF" throughout for ease of reference.

court remands the administrative review determination to Commerce for further proceedings

consistent with this opinion.

## BACKGROUND

### I.    *Legal & Regulatory Framework*

The Tariff Act of 1930 authorizes Commerce to investigate alleged dumping and, if

dumping is found, levy duties on the implicated goods. Sioux Honey Ass'n v. Hartford Fire Ins.,

672 F.3d 1041, 1046 (Fed. Cir. 2012). Dumping occurs when a foreign company sells a product

in the United States for less than its fair value. 19 U.S.C. § 1673. When investigating whether

goods are being dumped, Commerce must therefore first determine whether a good is being sold

at less than its fair value. Id.; 19 U.S.C. § 1677b(a). To do so, Commerce compares the export

price or constructed export price (export price adjusted for various additional expenses pursuant

to 19 U.S.C. § 1677a(c)–(d)) of the merchandise with its normal value. 19 U.S.C. § 1677b(a).

Ultimately, if dumping is found, the duty imposed will be equal to the difference between these

two prices (also known as the "dumping margin"). Id.

The statute provides three methods for the calculation of normal value. By default,

Commerce calculates normal value by averaging the price at which the exported good (or a like

good) is sold for consumption in its home market. 19 U.S.C. § 1677b(a)(1)(B)(i). If the good (or

a like good) is not offered for sale in its home market, or if the home market sales are equal to less

than five percent of the aggregate U.S. sales, Commerce may instead average the good's prices in

a third country. 19 U.S.C. § 1677b(a)(1)(C). Specifically, a third country sales price may be

considered for purposes of normal value calculation when:

> (i)   the foreign like product is not sold (or offered for sale) for
>       consumption in the exporting country […],
>
> (ii)  the administering authority determines that the aggregate quantity
>       (or, if quantity is not appropriate, value) of the foreign like product

> sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or
>
> (iii)  the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

Id.  The third country price must further be (1) representative; (2) reflective of third country sales in excess of five percent of the aggregate U.S. sales; and (3) not unavailable for proper comparison due to a particular market situation in the third country.  19 U.S.C. § 1677b(a)(1)(B)(ii).  Finally, if the home market cannot be used to calculate normal value, and notwithstanding the availability of third country sales data, Commerce may determine the product's normal value by calculating its constructed value.  19 U.S.C. § 1677b(a)(4).  Constructed value is calculated by summing the costs of production and processing of the product, and the costs incurred by the exporter under investigation (or other representative exporters under investigation) in the course of the export and sale of the product.  19 U.S.C. § 1677b(e).

Commerce's regulations further specify the process for calculation of normal value.  In relevant part, they provide:

> (b) **Determination of viable market** -
>
> (1) **In general**. [Commerce] will consider the exporting country or a third country as constituting a viable market if [Commerce] is satisfied that sales of the foreign like product in that country are of sufficient quantity to form the basis of normal value.
>
> (2) **Sufficient quantity**. "Sufficient quantity" normally means that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by an exporter or producer in a country is 5 percent or more of the aggregate quantity (or value) of its sales of the subject merchandise in the United States.
>
> (c) **Calculation of price-based normal value in viable market** -
>
> (1)   **In general**. Subject to paragraph (c)(2) of this section:

(i)    If the exporting country constitutes a viable market, [Commerce] will calculate normal value on the basis of price in the exporting country (see [19 U.S.C. § 1677b(a)(1)(B)(i)] (price used for determining normal value)); or

(ii)    If the exporting country does not constitute a viable market, but a third country does constitute a viable market, [Commerce] may calculate normal value on the basis of price to a third country (see [19 U.S.C. § 1677b(a)(1)(B)(ii)] (use of third country prices in determining normal value)).

(2)    **Exception**. [Commerce] may decline to calculate normal value in a particular market under paragraph (c)(1) of this section if it is established to the satisfaction of the Secretary that:

(i)    In the case of the exporting country or a third country, a particular market situation exists that does not permit a proper comparison with the export price or constructed export price (see [19 U.S.C. § 1677b (a)(1)(B)(ii)(III) or (a)(1)(C)(iii)]); or

(ii)    In the case of a third country, the price is not representative (see [19 U.S.C. § 1677b(a)(1)(B)(ii)(I)]).

19 C.F.R. § 351.404(c). Finally, 19 C.F.R. § 351.404(f) provides that Commerce "normally will calculate normal value based on sales to a third country rather than on constructed value if adequate information is available and verifiable."

Representativeness, as required by 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) and 19 C.F.R. § 351.404(c)(2)(ii), is not defined by statute or regulation. Alloy Piping Prod., Inc. v. United States, 26 CIT 330, 334; 201 F. Supp. 2d 1267, 1272 (2002), aff'd sub nom. Alloy Piping Prod., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284 (Fed. Cir. 2003). Nevertheless, it is well-established that "where the aggregate quantity of third country sales are at a sufficient level, those sales are presumptively representative unless demonstrated otherwise." Husteel Co. v. United States, 45 CIT __, __, 520 F. Supp. 3d 1296, 1304 (2021) (citing 19 C.F.R. § 351.404(b)–(c)). A party seeking to establish that sales are not representative bears the burden of making such a showing. Antidumping Duties, Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,357 (Dep't

Commerce May 19, 1997) ("Preamble").  Any determination that the proposed third country sales

are not representative must be supported by substantial evidence on the record.  Husteel, 520 F.

Supp. 3d at 1305 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S.

29, 48–49 (1983)).

## II.      Factual & Procedural Background

The administrative review at issue in these proceedings was initiated on May 2, 2019 for

the period of review beginning February 1, 2018 and ending January 31, 2019.  Initiation of

Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 18,777, 18,778

(Dep't Commerce May 2, 2019) (P.R. 16) ("Initiation").  ZASF was selected as a mandatory

respondent.[3]   IDM at 1.  In its response to Commerce's Section A questionnaire, ZASF

acknowledged that its home market sales constitute less than five percent of the volume of its U.S.

sales, and therefore cannot provide a viable basis for normal value.  Letter from ZASF to Sec'y

Commerce re: ZASF's Section A Questionnaire Resp. in the AD Order on Certain Frozen

Warmwater Shrimp from India at A-3–A-4, Sept. 16, 2019 (P.R. 114–121, C.R. 28–31).  ZASF

---

[3] In AD investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f–1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to-
>
> > (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
> >
> > (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

further identified Vietnam as its largest third country market, and noted the similarity between its

U.S- and Vietnam-bound merchandise.  Id. at A-4.

Following the submission of ZASF's Section A questionnaire response, then-petitioner and

now-Defendant-Intervenor AHSTAC, submitted additional publicly-available information to

Commerce in an attempt to "rebut, clarify, or correct factual information" provided by ZASF.

Letter from AHSTAC to Wilbur L. Ross, Jr. re: Certain Frozen Warmwater Shrimp from India:

Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification

at 2–3 (Sept. 26, 2019) (P.R. 94) ("AHSTAC Comments").  In its submission, AHSTAC noted

that (1) "the overwhelming majority" (101 out of 152) of ZASF's shipments to Vietnam were to

Vietnamese shrimp exporters who were at various points subject to an AD order on certain frozen

warmwater shrimp from Vietnam, and (2) "[r]oughly 60 percent of ZASF's shipments to Vietnam

(91 of 152) were to three companies that, in part, comprise the Minh Phu Group: (1) Minh Phat

Seafood Co., Ltd.; (2) Minh Phu Hao Giang Seafood Corp.; and (3) Minh Phu Seafood Corp." Id.

at 3–4 (citations omitted).  AHSTAC went on to explain that the Minh Phu Group was previously

subject to the AD order on certain frozen warmwater shrimp from Vietnam,[4] and in the course of

its participation in that investigation, reported to Commerce that it "imported shrimp from other

countries and used this shrimp as a raw material input in its exports to the United States." Id. at 5.

In light of these facts, AHSTAC concluded it was "likely that not only are ZASF's shrimp

shipments to Vietnam consumed in other markets, but that ZASF's merchandise sold through

Vietnam was resold or shipped to the United States," and argued that Commerce was thus owed a

---

[4] The AD order on certain frozen warmwater shrimp from Vietnam was revoked with respect to
the Minh Phu Group prior to the period of review in the instant case.  Certain Frozen Warmwater
Shrimp from the Socialist Republic of Vietnam: Notice of Implementation of Determination
Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping
Duty Order, 81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016).

"more fulsome and comprehensive explanation" of why ZASF's submitted invoice, bill of lading, and shipping documents were sufficient to prove the ultimate market for its shrimp, and why ZASF claimed to be unaware of any resale or re-shipment of its shrimp from Vietnam to the United States. Id. at 7.

On March 6, 2020, Commerce issued the preliminary results of its administrative review. Certain Frozen Warmwater Shrimp From India: Prelim. Results of AD Admin. Rev.; 2018–2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020) (P.R. 169) ("Preliminary Results"). In the accompanying memorandum, Commerce agreed with ZASF that its home market sales did not provide a viable basis for the calculation of normal value. Mem. from J. Maeder to J. Kessler re: Decision Mem. for the Prelim. Results of the 2018–2019 Admin. Rev. of the AD Order on Certain Frozen Warmwater Shrimp from India at 9 (Dep't Commerce Feb. 27, 2020) (P.R. 166) ("PDM"). Commerce went on to preliminarily find that, while Vietnam "satisf[ied] the regulatory criteria for third country market selection under 19 C.F.R. 351.404(e)(1) and (2)," ZASF's "sales to Vietnam [were] not appropriate for consideration as comparison sales to establish [normal value] in this review." Id. In support of its finding, Commerce relied upon "the trade patterns evidenced by [ZASF's] customers in Vietnam" -- namely, the fact that ZASF's "customers are also known processors and exporters of shrimp to the United States." Id. (citing AHSTAC Comments). Accordingly, Commerce preliminarily employed constructed value to calculate the normal value of the subject merchandise. Id. at 11. The constructed value of the merchandise was based on the financial statements of Indian producers and exporters involved in the immediately preceding (i.e., 2016–2017) administrative review. Id. at 11–12.

On October 13, 2020, U.S. Customs and Border Protection ("CBP") issued an Enforce and Protect Act ("EAPA") determination finding that merchandise subject to the AD order on frozen

warmwater shrimp from India was being illegally transshipped into the U.S. through Vietnam. Notice of Determ. as to Evasion (Customs and Border Protection Oct. 13, 2020) (P.R. 187 Att. 1) ("EAPA Determination"). In its determination, CBP noted that the Minh Phu Group "purchased Indian-origin shrimp for processing and supplemented orders to the United States with Indian-origin shrimp." Id. at 4. It explained that, because Indian-origin shrimp are subject to AD duties while Vietnamese-origin shrimp are not, the Minh Phu Group thus "has sufficient reason to disguise the true country of origin of its shrimp or to comingle Indian-origin shrimp with Vietnamese-origin shrimp and claim only Vietnam as the country of origin." Id. Although CBP acknowledged that the Minh Phu Group claims to maintain a "tracing system [which] ensures that imported shrimp never loses its identity as such," it also noted the Minh Phu Group's "inability to trace specific imports of Indian-origin shrimp through the production facility to specific sales," as well as its inadvertent one-time export of "commingled Indian-origin and Vietnamese-origin shrimp into the customs territory of the United States." Id. at 6–7. Ultimately, because specific orders of imported shrimp could not be traced to specific orders of exported shrimp, CBP concluded that the Minh Phu Group had failed to cooperate to the best of its abilities with the EAPA investigation, and applied adverse inferences to reach a finding of evasion. Id. at 9–10. On October 27, 2020, the public version of CBP's EAPA determination was placed on the record in Commerce's administrative review. Mem. from B. Bauer to File re: U.S. Customs and Border Protection Dec. (Dep't Commerce Oct. 27, 2020) (P.R. 187).

Commerce issued its final results of AD administrative review on December 29, 2020. Certain Frozen Warmwater Shrimp From India: Final Results of AD Admin. Rev. and Final Determ. of No Shipments; 2018–2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020) (P.R. 199) ("Final Results"); see also Mem. from J. Maeder to J. Kessler re: Issues and Decision

Mem. for the Final Results of the 2018–2019 AD Admin. Rev. of Certain Frozen Warmwater Shrimp from India (Dept' Commerce Dec. 21, 2020) (P.R. 194) ("IDM"). In the <u>Final Results,</u> Commerce continued to use constructed value to calculate the normal value of the subject merchandise. IDM at 15–21. Commerce reiterated that there was "sufficient cause to use [constructed value]" for the reasons given in the PDM, but noted that there was "now additional information available on the record supporting the unsuitability of using sales to Vietnam to establish a comparison price for U.S. sales." <u>Id.</u> at 15. The additional information in question was the CPB EAPA determination. <u>Id.</u> at 16. Commerce acknowledged that ZASF might well have had no knowledge of the Minh Phu Group's transshipment, but found that would nevertheless be "unreasonable to use [ZASF's] Vietnamese sales, which include sales to the Minh Phu Group, as the comparison market." <u>Id.</u> at 19. In particular, Commerce noted that such a comparison would ultimately "compare U.S. sales to U.S. sales" and that any "worthwhile, profitable, and price competitive" transshipment scheme would necessitate a price advantage for the Vietnamese sales over the U.S. sales. <u>Id.</u> Finally, Commerce clarified that even if Vietnam were a viable third country market for the subject merchandise, neither 19 U.S.C. § 1677b(a)(1)(B)(ii)(I) nor 19 C.F.R. § 351.404 specify a preference for relying upon third country sales over constructed value where the sales are otherwise not representative. <u>Id.</u> at 19–20.

Plaintiffs ZASF initiated these proceedings on January 29, 2021 to challenge Commerce's <u>Final Results.</u> <u>Summons,</u> Jan. 28, 2021, ECF No. 1. On June 18, 2021, ZASF filed a Rule 56.2 motion for judgment upon the agency record, arguing that Commerce's decision to employ constructed value and not the Vietnamese third country market prices as the basis for the subject merchandise's normal value was unsupported by substantial evidence and not accordance with law. Mem. in Supp. of the Rule 56.2 Mot. of Pls.' for J. Upon the Agency R. at 7-8, June 18, 2021,

ECF No. 26 ("Pls.' Br."). The Government and AHSTAC filed their response briefs to ZASF's

motion on September 2, 2021. Def.'s Resp. to Pls.' Mot. for J. Upon the Agency R., Sept. 9, 2021,

ECF No. 31 ("Def.'s Br"); Def.-Inter. AHSTAC's Resp. to Pls.' Mot. for J. on the Agency R.,

Sept. 2, 2021, ECF. No. 30 ("Def.-Inter.'s Br."). Plaintiffs replied on October 5, 2021. Pls.' Reply

to Def. and Def.-Inter.'s Resps. to Pls.' Mot. For J. on Agency R., ECF No. 34 ("Pls.' Reply").

The court subsequently issued and the parties responded to questions for oral argument. Letter re:

Questions for Oral Arg., Jan. 6, 2022, ECF No. 49; Pls.' Resp. to Ct.'s Questions for Oral Arg.,

Jan. 19, 2022, ECF No. 50 ("Pls.' Suppl. Br."); Def.'s Resp. to Ct.'s Questions for Oral Arg., Jan.

19, 2022, ECF No. 52 ("Def.'s Suppl. Br."); Def.-Inter.'s Resp. to Ct.'s Questions for Oral Arg.,

Jan. 19 2022, ECF No. 51 ("Def.-Inter.'s Suppl. Br."). Oral argument was held on January 25,

2022. Oral Arg., ECF No. 54. Following oral argument, the parties submitted additional briefing

on the issues. Pls.' Suppl. Post-Arg. Submission, Feb. 1, 2022, ECF No. 57 ("Pls.' Post-Arg. Br.");

Def.'s Suppl. Post-Arg. Submission, Feb. 1, 2022, ECF No. 55 ("Def.'s Post-Arg. Br."); Def.-

Inter.'s Post-Arg. Submission, Feb. 1, 2022, ECF No. 56 ("Def.-Inter.'s Post-Arg. Br.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), 19 U.S.C.

§ 1516a(a)(2)(A)(i)(II) and 19 U.S.C. § 1516a(a)(2)(B)(i). The standard of review is provided by

19 U.S.C. § 1516a(b)(1)(B)(i), which states that "[t]he court shall hold unlawful any determination,

finding, or conclusion found ... to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law."[5] For an agency's determination to be supported by

---

[5] Substantial evidence is "more than a mere scintilla" and amounts to what a "reasonable mind might accept as adequate to support a conclusion." Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of the evidence must also "take into account whatever in the

substantial evidence, the agency must "articulate [a] rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962).

## DISCUSSION

ZASF now disputes Commerce's reliance on constructed value in its calculation of the normal value of frozen warmwater shrimp from India. Arguing that Commerce should instead have based normal value on the Vietnamese third country sale price, ZASF alleges (1) that Commerce's rejection of Vietnam was unsupported by substantial evidence; (2) that Commerce's failure to comply with the regulatory preference for third country sales data was contrary to law; and (3) that Commerce's failure to apply a "knowledge test" in its consideration of Vietnamese sales was contrary to Commerce practice. The Government and AHSTAC contend that Commerce's decision to reject Vietnam as a potential third country market was supported by substantial evidence, and that Commerce's reliance on constructed value was in accordance with law. The court concludes that Commerce's decision to reject the Vietnamese third country sales data was not adequately supported by record evidence, but that Commerce's interpretation of the regulatory preference order and rejection of the proposed knowledge test were each in accordance with law. Accordingly, Commerce's Final Results are remanded for further explanation.

### I.    Commerce's Rejection of the Vietnamese Third Country Sales Data and Reliance on Constructed Value was Unsupported by Substantial Evidence

ZASF first argues that Commerce erred by rejecting the Vietnamese third country market data because substantial evidence does not support a determination that ZASF's Vietnamese sales were unrepresentative. Pls.' Br. at 15–18, 22–26. Contending that Vietnam was a viable third country market under 19 C.F.R. § 351.404(b), ZASF argues that its "third-country sales to Vietnam

---

record fairly detracts from its weight." CS Wind Viet. Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)).

were presumptively representative" and Commerce failed to bear its burden of establishing "that ZASF's Vietnamese selling prices were not representative." Pls.' Br. at 15. ZASF specifically contests (1) Commerce's determination that ZASF's Vietnamese sales were part of an evasion scheme as set out in CBP's EAPA determination; and (2) Commerce's reliance on the trade patterns of ZASF's customers; and argues that neither provides sufficient basis to conclude that the Vietnamese sales were unrepresentative.[6] Id. at 15–18; 22–26.

### A.    The Evasion Scheme Evidence

In its IDM, Commerce primarily relied upon CBP'S EAPA determination of evasion to conclude that ZASF's Vietnamese sales were unrepresentative. Commerce specifically stated that "[g]iven that CBP found sales made by the Minh Phu Group during the [period of review] were ultimately sold in the United States, it would be unreasonable to use [ZASF's] Vietnamese sales, which include sales to the Minh Phu Group, as the comparison market. Some of these sales ultimately entered the United States and are an unsuitable comparison for [ZASF's] own sales to the United States. Such a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market." IDM at 19. In support of this conclusion, Commerce further noted that "[t]he prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp is exported for further processing." Id. Accordingly, Commerce found that ZASF's Vietnamese sales to the Minh Phu Group were unrepresentative, and that the Vietnamese third country market data could not serve as the basis for calculation of normal value.

---

[6] ZASF also argues that "Commerce failed to consider contradictory evidence that ZASF's sales to Vietnam were representative." Pls.' Br. at 24. As the court has concluded that Commerce inadequately supported its determination as to the Vietnamese sales, it need not address this further argument regarding Commerce's analysis.

ZASF now challenges Commerce's rejection of the Vietnamese data, arguing that "CBP's EAPA [d]etermination did not find that the Minh Phu Group channeled ZASF merchandise to the United States . . . [a]nd no other information collected by Commerce established that any ZASF merchandise sold to Vietnam ended up in the United States." Pls.' Br. at 19. ZASF also notes that "Commerce's claim that the Indian-origin shrimp that the Minh Phu Group shipped to the United States was 'exported without further processing' is contradicted throughout the EAPA [d]etermination" id. at 23 (quoting IDM at 19), and that no record evidence supports Commerce's conclusion that "'the prices to Vietnam are in fact prices for sales that eventually become U.S. sales' and 'do not represent prices of sales made for consumption in Vietnam'" id. at 24 (quoting IDM at 19).

The court concludes that, with respect to the EAPA determination, Commerce failed to support its conclusion that ZASF's Vietnamese sales were unrepresentative with substantial evidence. First, as ZASF notes, ZASF itself is not mentioned in the EAPA determination. Indeed, the text of the determination indicates that multiple Indian suppliers export shrimp to the Minh Phu Group. EAPA Determination at 4–5; Pls.' Reply at 10. It is therefore not apparent from what evidence Commerce reached its conclusion that "some of [ZASF's] sales ultimately entered the United States." IDM at 19. Second, it is not clear on what basis Commerce determined that "sales made by the Minh Phu Group during the [period of review] were ultimately sold in the United States." Id. While the EAPA determination did find that the Minh Phu Group participated in an evasion scheme, that finding corresponded to the period of investigation October 8, 2018 through October 13, 2020, and identified only one undated instance of the commingling of Vietnamese- and Indian-origin shrimp. EAPA Determination at 4–7. In contrast, Commerce's review of the AD order on frozen warmwater shrimp from India spanned the period from February 1, 2018

through January 31, 2019.  Initiation, 84 Fed. Reg. at 18,778.  Commerce identifies no support for

its conclusion that, despite only a three-month overlap with the EAPA investigation, transshipment

must have occurred during the administrative review period.  Finally, Commerce fails to

acknowledge or address the fact that the EAPA determination was ultimately predicated on an

adverse inference resulting from the Minh Phu Group's failure to cooperate to the best of its ability

with CBP's request for information.  EAPA Determination at 9.  Indeed, CBP acknowledged that

it relied on the absence of evidence (1) that transshipment did not occur, and (2) of "how many

imports to the United States contained comingled Indian-origin and Vietnamese-origin shrimp."

Id. (emphasis added).  Commerce thus fails to articulate a reasoned connection between the

underlying facts and its conclusion that ZASF's shrimp exports were comingled and re-exported

to the U.S. by the Minh Phu Group during the period of review.  See, e.g., Burlington Truck Lines,

371 U.S. at 168.

      Nor does the EAPA determination clearly support Commerce's determination that the

Minh Phu Group performed "no such further processing" on Indian-origin shrimp exported to the

U.S.  IDM at 19.  The Government contends in its brief that "such . . . processing" refers only to

processing which "would take Minh Phu Group's shrimp exports outside of the scope of the

antidumping order on shrimp," and concludes that "Commerce reasonably determined that

[ZASF's] sales to Vietnam were subsumed in Minh Phu Group's transshipment scheme."  Def.'s

Br. at 13–14.  While CBP did identify one exported shipment of comingled Indian- and

Vietnamese-origin shrimp which was not further processed, and thus illegally evaded Commerce's

AD order on warmwater shrimp from India, it is not clear how Commerce concluded from this

finding that the Minh Phu Group performed "no" further processing on its Indian-origin shrimp.

EAPA Determination at 7; see generally IDM at 17–19.  Indeed, the EAPA determination

explicitly states that "[e]vidence on the record shows that [the Minh Phu Group] has a history of importing Indian-origin shrimp into Vietnam for processing," EAPA Determination at 4 (citation omitted).  Given Commerce's failure to address this apparently conflicting information, and to adequately explain how the cited record evidence supports its conclusion with respect to the processing of ZASF's shrimp exports, the court cannot determine that Commerce's findings are supported by substantial evidence.  See CS Wind Viet. Co., 832 F.3d at 1373 (requiring Commerce's determinations to be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and to "take into account whatever in the record fairly detracts from its weight" (first quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951), and then quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997))).

## B.    *The Trade Pattern Evidence*

Although Commerce did not elaborate on the trade pattern data challenged by ZASF in the IDM accompanying its Final Results, it reiterated that because of its "concerns regarding the nature of the Vietnamese sales," it found "sufficient cause" to disregard those third country sales and employ constructed value in the Preliminary Results.  IDM at 15.  The concerns in question were those raised by AHSTAC in its comments on ZASF's Section A questionnaire response "about the nature and the ultimate destination of sales ZA Sea Foods made to Vietnam, given that ZA Sea Foods' customers are also known processors and exporters of shrimp to the United States."  PDM at 9 (citing AHSTAC Comments).  Deeming ZASF's customers' U.S. dealings "such other factors as [it] considers appropriate" for the assessment of a third country market, 19 C.F.R. § 351.404(e)(3), Commerce concluded that ZASF's Vietnamese sales were "not appropriate for consideration as comparison sales to establish [normal value]."  PDM at 9.

ZASF now disputes Commerce's determination that the trade patterns of ZASF's customers constituted substantial evidence that ZASF's sales could not be used to calculate normal value. In pertinent part, ZASF alleges that "[e]ven if the trade patterns were relevant . . . Commerce's conclusions were not supported by substantial evidence" because "[n]othing on the administrative record establishes that the shrimp sold to Vietnam by ZASF" were not resold in Vietnam or processed into merchandise outside the scope of the AD order on frozen warmwater shrimp from India.[7] Pls.' Br. at 17.

The court concludes that, with respect to the trade pattern information deemed "sufficient" in the IDM, Commerce again failed to support its rejection of ZASF's proffered third country sales data with substantial evidence. As ZASF correctly notes, Commerce identified no record evidence (beyond the EAPA determination, which is insufficient for the reasons set out above) establishing "that the shrimp sold to Vietnam by ZASF was not resold in Vietnam . . . [or] processed into merchandise outside the scope of the antidumping duty order." Pls.' Br. at 17. The sum total of Commerce's explanation for rejecting the Vietnamese market prices on the basis of ZASF's customers' trade patterns is that "[ZASF] stated that its customers in Vietnam were processors or traders, and [AHSTAC] raised concerns about the nature and the ultimate destination of sales [ZASF] made to Vietnam, given that ZA Sea Foods' customers are also known processors and exporters of shrimp to the United States." PDM at 9. Without any evidence as to the reasonableness of AHSTAC's concerns, or indeed of the transshipment of subject merchandise sold to Vietnamese purchasers by ZASF during the period of review, the court concludes that

---

[7] ZASF also argues that "[b]ecause ZASF did not know the ultimate disposition of the shrimp products at the time of sale, it was unreasonable and irrelevant for Commerce to base any decision on the representativeness of ZASF's sales on the alleged trade patterns of ZASF's customers." Pls.' Br. at 17. This contention is addressed in detail in Section III below.

Commerce's determination of "sufficient cause" to reject the Vietnamese sales data was unsupported by substantial evidence.  IDM at 15.

As neither the EAPA determination nor the trade patterns of ZASF's customers provide adequate basis for Commerce's conclusion that the ZASF's Vietnamese sales were not representative, Commerce has failed to articulate a rational basis for its determination, and thus to support its representativeness determination with substantial evidence.  See Husteel, 520 F. Supp. 3d at 1304; Burlington Truck Lines, 371 U.S. at 168.   Accordingly, Commerce's representativeness determination cannot be sustained.

## II.    *Commerce's Interpretation of 19 C.F.R. § 351.404's Regulatory Preference Was in Accordance With Law*

In the interest of judicial economy, the court now proceeds to address ZASF's arguments regarding Commerce's methodology, beginning with Commerce's interpretation of 19 C.F.R. § 351.404.  ZASF contends that Commerce erred by finding "that its regulations not only do not state a preference for establishing normal value if home market sales are not available, but in fact support the use of CV over third country sales" when in reality, "19 C.F.R.§ 404(f) clearly establishes a preference for third country sales as the basis for normal value."  Pls.' Br. at 27.  Commerce's departure from this regulatory order of preference, ZASF concludes, was contrary to law.

The Government responds by arguing that "Commerce's determination to use constructed value is not, as [ZASF] claims, tantamount to a finding that the regulations state no preference for the use of third country prices over constructed value, which would contravene 19 C.F.R. § 351.404(f)."  Def.'s Br. at 21.  Instead, "Commerce explained that the statute and regulations permit the calculation of normal value based on constructed value as an alternative to third-country prices," which was necessary in the present case because ZASF's proposed third-country prices

could not "be used as a basis for normal value <u>at all</u> due to the EAPA decision." <u>Id.</u> (emphasis added).

Setting aside for the moment the issues already identified with respect to Commerce's determination of evasion, the Government is correct that Commerce's reliance on constructed value did not violate any regulatory preference.  As Commerce explained, it did not make any determination as to the viability of Vietnam as a third country market under 19 C.F.R. § 351.404(b).  IDM at 18–19.  Even if it had, such a finding would not obligate Commerce to rely on third country sales to calculate normal value where the third country prices were otherwise unrepresentative.  IDM at 19.  If substantial evidence had supported Commerce's conclusion that the Vietnamese sales were not representative, 19 C.F.R. § 351.404(c)(2)(ii) clearly permits Commerce to "decline to calculate normal value in a particular market if . . . in the case of a third country, the price is not representative."  This exception does not conflict with 19 C.F.R. § 351.404(f)'s provision that Commerce "normally will calculate normal value based on sales to a third country rather than on constructed value if adequate information is available and verifiable" because, where the third country sales are demonstrably unrepresentative, they cannot constitute adequate information for the calculation of normal value.  Accordingly, the court concludes that Commerce's interpretation of its regulations was in accordance with law.

### III.    *Commerce's Decision Not to Apply a Knowledge Test Was in Accordance With Law*

Finally, the court addresses ZASF's argument that Commerce's failure to apply a knowledge test in its treatment of ZASF's Vietnamese sales "contradicts long-standing practice." Pls.' Br. at 18.  ZASF contends that "under longstanding and well-established Commerce practice: (1) the seller's knowledge at the time of sale determines whether sales are U.S. sales transactions; and (2) merchandise that is destined for a third country without any evidence establishing an actual

U.S. destination cannot be considered U.S. sales under the U.S. antidumping laws." Id. at 19. As ZASF was not aware of any downstream transactions wherein its merchandise was exported to the U.S., ZASF argues that its third country sales should not be considered sales to the U.S. (and thus unrepresentative) for purposes of normal value calculation. Pls.' Br. at 20–21. In support of its contention, ZASF cites Commerce's determinations in Certain Circular Welded Non-Alloy Steel Pipe from Mexico, 76 Fed. Reg. 36,086 (Dep't Commerce June 21, 2011) ("Mexican Standard Pipe") and Welded Line Pipe From the Republic of Korea, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015) ("Korean Line Pipe") that because respondents had no knowledge of specific downstream sales to the U.S. the sales in question were properly considered home market sales, as well as the court's application of a knowledge test in Allegheny Ludlum Corp. v. United States, 24 CIT 1424, 215 F. Supp. 2d 1322 (2000). Pls.' Br. at 20; Pls.' Reply at 14–15. By failing to apply a knowledge test in the present case, ZASF contends, Commerce unlawfully disregarded sales which its past practice would not have been rejected based on the actions of ZASF's downstream purchasers. Pls.' Reply at 14.

Both the Government and AHSTAC argue that ZASF's proposed knowledge test applies only where Commerce is "determining whether to treat certain sales as U.S. sales" for purposes of calculating a dumping margin. Def.'s Br. at 18–19; see also Def.-Inter.'s Br. at 19. Where, as here, the relevant issue is the representativeness of third country sales, ZASF's "lack of knowledge regarding the transshipment scheme, or basically what the customer does with the product or pattern of trade, does not mitigate the fact that those sales were ultimately transshipped to the United States and by statute are inappropriate for use as a basis for normal value." Def.'s Br. at 17; see also Def.-Inter.'s Br. at 19. Accordingly, both the Government and AHSTAC argue that Commerce properly declined to apply a knowledge test in its analysis of the effect of downstream

U.S. exports on the representativeness of ZASF's third country sales. Def.'s Br. at 19–20; Def.-Inter.'s Br. at 19–20.

The Government and AHSTAC are correct. As the court explained in <u>Allegheny Ludlum</u>, Commerce employs a knowledge test under 19 U.S.C. § 1677b to determine whether a producer "knew or should have known that the merchandise was . . . for home consumption" such that the sales should be included in the home market database, and under 19 U.S.C. § 1677a to determine whether a producer "knew or should have known, at the time of a sale, whether or not the subject merchandise will be exported" such that the sale price should be considered the U.S. purchase price. 24 CIT at 1433 (quoting <u>INA Walzlager Schaeffler KG v. United States</u>, 21 CIT 110, 123–24, 957 F. Supp. 251, 264 (1997), aff'd 108 F.3d 301 (Fed.Cir.1997)). Put simply, the knowledge test described by ZASF is used to (1) exclude from Commerce's calculation of foreign market value and (2) include in Commerce's calculation of U.S. export price any sales a producer knew or should have known were for exportation to the U.S. See <u>id.</u>; <u>INA Walzlager Schaeffler</u>, 21 CIT at 123, 957 F. Supp. at 263 (discussing application of the knowledge test to determine whether sales may be included in the home market database); <u>LG Semicon Co., Ltd. v. United States</u>, 23 CIT 1074, 1999 WL 1458844 at *3 (1999) (discussing application of the knowledge test to determine inclusion of a product's sale price in the U.S. purchase price).

Neither knowledge test is applicable here. While Commerce did reject ZASF's proffered third country sales data because it determined that the Minh Phu Group's sales were ultimately U.S. sales, it did not treat ZASF's Vietnamese sales as U.S. sales for purposes of export price calculation under 19 U.S.C. § 1677a. See PDM at 8 (describing Commerce's export price calculations). Nor, clearly, did Commerce exclude any specific sales from its calculation of foreign market value, as it ultimately relied upon constructed value alone. Rather, Commerce

concluded that because the Minh Phu Group exported subject merchandise purchased from ZASF into the U.S., that merchandise was neither "sold (or offered for sale) for consumption in a [third country]" nor representative of such third country sales.  19 U.S.C. § 1677b(a)(1)(B)(ii); see also IDM at 19 (finding that ZASF's Vietnamese sales "are an unsuitable comparison for ZA Sea Foods' own sales to the United States" because "[s]uch a comparison would compare U.S. sales to U.S. sales rather than U.S. sales to a third-country market.")  ZASF provides no evidence that Commerce has previously applied a knowledge test in similar circumstances: in fact, both Mexican Standard Pipe and Korean Line Pipe address the inclusion of sales in a home market database, not a determination of unrepresentative sales.  See 76 Fed. Reg. at 36,088; 80 Fed. Reg. at 61,367.  As Commerce did not depart from any longstanding practice by declining to apply a knowledge test in the present case, the court concludes that its decision not to apply such a test was in accordance with law.

## CONCLUSION

For the foregoing reasons, while Commerce acted in accordance with law in interpreting 19 C.F.R. § 351.404 and declining to apply a knowledge test to its assessment of potential third country markets, it nevertheless failed to support its rejection of ZASF's Vietnamese sales data and use of constructed value with substantial evidence.  Neither Commerce's initial assessment of the record evidence nor its subsequent analysis of CBP's EAPA determination of evasion by ZASF's primary Vietnamese purchaser provide a rational basis for its conclusion that ZASF's Vietnamese sales were unrepresentative and thus unsuitable as a third country benchmark.  Accordingly, the court grants ZASF's motion for judgment on the agency record, and remands Commerce's calculation of normal value for further proceedings consistent with this opinion.  Commerce shall file with this court and provide to the parties its remand results within 90 days of

the date of this order; thereafter, the parties shall have 30 days to submit briefs addressing the revised remand determination with the court, and the parties shall have 30 days thereafter to file reply briefs with the court.

   **SO ORDERED.**

               /s/  *Gary S. Katzmann*
                    Judge

Dated:  April 19, 2022
    New York, New York