A-533-840
Remand: Slip Op. 22-36
POR: 02/01/2018 – 01/31/2019
**Public Document**
E&C/OII: AM

***Z.A. Sea Foods Private Limited et al v. United States***
**Consol. Court No. 21-00031, Slip Op. 22-36 (CIT April 19, 2022)**
**Certain Frozen Warmwater Shrimp from India**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) issued in *Z.A. Sea Foods Private Limited et al v. United States*, Slip Op. 22-36, Consol. Court No. 21-00031 (CIT 2022) (*Remand Order*). This action arises out of the final results in the 2018-2019 administrative review of the antidumping duty order on certain frozen warmwater shrimp (shrimp) from India.[1] The Court remanded Commerce's decision to reject Z.A. Sea Foods Private Limited's (ZA Sea Foods') third country sales and rely on constructed value (CV) for the calculation of normal value (NV). Considering the *Remand Order*, for this final redetermination, Commerce finds insufficient evidence that ZA Sea Foods' third country Vietnamese sales were unrepresentative and unsuitable for use in the calculation of NV. Consequently, we recalculated the estimated weighted-average dumping margin for ZA Sea Foods by relying on ZA Sea Foods' third country Vietnamese sales during the period of review (POR). The revised weighted-average dumping margin for ZA Sea Foods is 1.73 percent.

---

[1] *See Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 85 FR 85580 (December 29, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

Moreover, because Commerce's recalculated the weighted-average dumping margin for ZA Sea Foods, the review-specific margin applied to B-One Business House Pvt. Ltd.; Hari Marine Private Limited; Magnum Export; Megaa Moda Pvt. Ltd.; Milsha Agro Exports Pvt. Ltd.; Sea Foods Private Limited; Shimpo Exports Private Limited; Five Star Marine Exports Private Limited; HN Indigos Private Limited; RSA Marines; and Zeal Aqua Limited is now 1.73 percent.

## II. BACKGROUND

Commerce published the *Final Results* on December 29, 2020.[2] As discussed in the *Final Results*, because there was record evidence that ZA Sea Foods' primary Vietnamese customer was part of an evasion scheme to transship Indian shrimp through Vietnam to the United States, Commerce found that ZA Sea Foods' sales to Vietnam were not representative as required by section 773(a)(1)(B)(ii)(I) of the Tariff Act of 1930, as amended, (the Act) and, thus, were unsuitable to establish a comparison price for U.S. sales. Consequently, Commerce declined to use ZA Sea Foods' third country sales to Vietnam, pursuant to 19 CFR 351.404(c)(2)(ii), and relied on CV as the basis for NV for ZA Sea Foods.

In its April 19, 2022, opinion, the Court remanded the *Final Results* to Commerce, holding that Commerce failed to support with substantial evidence its rejection of ZA Sea Foods' Vietnamese sales and the use of CV to establish NV. Specifically, the Court concluded that the record evidence was insufficient to conclude that ZA Sea Foods' Vietnamese sales were unrepresentative and unsuitable to be used to calculate NV.[3]

---

[2] *See Final Results*.

[3] *See Remand Order* at 17-19.

## III. ANALYSIS

In accordance with the Court's instructions, we determined an estimated weighted-average dumping margin for ZA Sea Foods using its reported Vietnamese third country market sales data.[4] We calculated this margin as discussed below.

### A. Comparisons to Fair Value

Pursuant to section 773(a) of the Act and 19 CFR 351.414(c)(1) and (d), to determine whether ZA Sea Foods' sales of shrimp from India to the United States during the POR were made at less than NV, Commerce compared the export price (EP) to the NV, as described in the "Export Price" and "Normal Value" sections below.

#### 1. Results of the Differential Pricing Analysis[5]

Based on the results of the differential pricing analysis, we find that 62.88 percent of ZA Sea Foods' U.S. sales, by value, pass the Cohen's *d* test[6] and confirm the existence of a pattern of prices that differ significantly among purchasers, regions, or time periods. Further, we determine that the average-to-average method cannot account for such differences because the weighted-average dumping margin crosses the *de minimis* threshold when calculated using the average-to-average method and when calculated using an alternative comparison method based on applying the average-to-transaction method to those U.S. sales which passed the Cohen's *d* test and the average-to-average method to those sales which did not pass the Cohen's *d* test. Thus, for these draft results of redetermination, Commerce is applying the average-to-transaction

---

[4] We note, however, that we may consider in the future whether it is appropriate to rely on sales to a non-market economy country for third country comparison market sales in determining NV in market economy cases.

[5] For a description of how we determined the comparison method, *see Certain Frozen Warmwater Shrimp from India: Preliminary Results of Antidumping Duty Administrative Review; 2018-2019*, 85 FR 13131 (March 6, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) at 5-8.

[6] *See* Memorandum, "Margin Calculations for Z.A. Sea Foods Private Limited Pursuant to Draft Results of Redetermination," dated concurrently with these draft results of redetermination (Draft Remand Sales Calculation Memorandum), at 3.

method to those U.S. sales that passed the Cohen's *d* test and the average-to-average method to those sales which did not pass the Cohen's *d* test to calculate the weighted-average dumping margin for ZA Sea Foods.

**B. Product Comparisons**

In accordance with section 771(16) of the Act, we considered all products produced by ZA Sea Foods that fit the description of the scope of the order and sold in the comparison market during the POR to be foreign like products for purposes of determining NV for the merchandise sold in the United States. We compared U.S. sales to sales made in the third country comparison market, where appropriate. Where there were no sales of identical merchandise in the third country comparison market made in the ordinary course of trade to compare to U.S. sales, according to section 771(16)(B) of the Act, we compared U.S. sales of non-broken shrimp to sales of the most similar non-broken foreign like product made in the ordinary course of trade.

In making product comparisons, we matched foreign like products based on the physical characteristics to the product sold in the United States in the following order of importance: (1) cooked form; (2) head status; (3) count size; (4) organic certification; (5) shell status; (6) vein status; (7) tail status; (8) other shrimp preparation; (9) frozen form; (10) flavoring; (11) container weight; (12) presentation; (13) species; and (14) preservatives. Where there were no sales of identical or similar non-broken merchandise, we made product comparisons using CV, as discussed in the "Calculation of Normal Value Based on Constructed Value" section below.[7]

**C. Date of Sale**

Section 351.401(i) of Commerce's regulations states that, in identifying the date of sale of the merchandise under consideration or foreign like product, Commerce normally will use the

[7] *See* section 773(a)(4) of the Act.

date of invoice, as recorded in the exporter or producer's records kept in the ordinary course of business. Additionally, Commerce may use a date other than the date of invoice if it is satisfied that a different date better reflects the date on which the exporter or producer establishes the material terms of sale.[8] Commerce has a long-standing practice of finding that, where shipment date precedes invoice date, shipment date better reflects the date on which the material terms of sale are established.[9]

ZA Sea Foods reported the date of sale as the earlier of shipment or commercial invoice date for both its comparison market and U.S. sales.[10] Accordingly, because ZA Sea Foods' reporting is consistent with Commerce's practice, we relied on ZA Sea Foods' reported date of sale for all comparison market and U.S. sales.

**D. Normal Value**

**1. Home Market Viability[11]**

As explained in the *Preliminary Results*, we determined that, pursuant to 19 CFR 351.404(b), the aggregate volume of ZA Sea Foods' home market sales of the foreign like product was insufficient to permit a proper comparison with U.S. sales of the subject merchandise, pursuant to 773(a)(1)(C)(ii).[12]

---

[8] *See* 19 CFR 351.401(i); *see also Allied Tube & Conduit Corp. v. United States*, 132 F. Supp. 2d 1087, 1090 (CIT 2001) (quoting 19 CFR 351.401(i)).

[9] *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp from Thailand*, 69 FR 76918 (December 23, 2004), and accompanying IDM at Comment 10; and *Notice of Final Determination of Sales at Less Than Fair Value: Structural Steel Beams from Germany*, 67 FR 35497 (May 20, 2002), and accompanying IDM at Comment 2.

[10] *See* ZA Sea Foods' Letter, "ZASF Section B, C & D Questionnaire Response of Anti-Dumping Order on Certain Frozen Warmwater Shrimp from India (A-533-840)," dated October 4, 2019 (ZA Sea Foods' BCQR), at sections B (page B-25) and C (pages C-23 to C-24).

[11] For the discussion of our home market viability analysis, *see Preliminary Results* PDM at 9.

[12] *Id*.

For purposes of these final results of redetermination, we used Vietnam as the comparison market because ZA Sea Foods' sales of foreign like product in Vietnam were similar to the subject merchandise, Vietnam is a viable comparison market based on sales quantity, and ZA Sea Foods provided its Vietnamese sales data in response to section B of our questionnaire.[13] In the *Final Results*, we found that ZA Sea Foods' Vietnamese sales were unrepresentative based on a finding by U.S. Customs and Border Protection that ZA Sea Foods' largest Vietnamese customer was involved in a transshipment scheme; however, pursuant to the *Remand Order*, we are unable to rely on this information for our final results of redetermination. Therefore, as ZA Sea Foods' Vietnamese sales data is on the record of this review and we do not have any additional information to find these sales unrepresentative, we used sales to Vietnam as the basis for comparison market sales for ZA Sea Foods, in accordance with section 773(a)(1)(C) of the Act and 19 CFR 351.404.

**2. Level of Trade[14]**

In its questionnaire response, ZA Sea Foods provided information regarding the marketing stages involved in making its reported third country and U.S. sales, including a description of the selling activities performed for the single channel of distribution.[15] Selling activities can generally be grouped into five categories for our analysis: provision of sales

---

[13] *See* ZA Sea Foods' BCQR at section B; *see also* ZA Sea Foods' Letter, "ZASF Supplemental Questionnaire Response of Comparison Market for selection of Third Country in the Anti-Dumping Order on Certain Frozen Warmwater Shrimp from India (A-533-840)," dated October 2, 2019.

[14] For the discussion of our level of trade analysis, *see Preliminary Results* PDM at 9-10.

[15] *See* ZA Sea Foods' Letter, "ZASF's Section A Questionnaire Response in the Anti-Dumping Order on Certain Frozen Warmwater Shrimp from India (A-533-840)," dated September 16, 2019 (ZA Sea Foods' AQR), at A-12 to A-18 and Exhibit A-5.

support;[16] provision of training services;[17] provision of technical support;[18] provision of logistical services;[19] and performance of sales related administrative activities.[20]

In the third country market, ZA Sea Foods reported that it made sales through one channel of distribution, sales to unaffiliated trading companies.[21] ZA Sea Foods reported that it performed the following selling activities at the same level of intensity for all of its reported third country sales: commissions; freight and delivery; order input/processing; and packing.[22] Accordingly, based on the selling function categories noted above, we find that ZA Sea Foods provided sales support, logistical services, and sales-related administrative activities for all of its third country sales. Because we find that there were no differences in selling activities performed by ZA Sea Foods to sell to its third country market customers, we determine that there is one level of trade (LOT) in the third country market for ZA Sea Foods.

With respect to the U.S. market, ZA Sea Foods reported that it made sales through one channel of distribution, sales to unaffiliated trading companies.[23] ZA Sea Foods reported that it performed the following selling activities at the same level of intensity for all of its U.S. sales: commissions; freight and delivery; order input/processing; and packing.[24]

---

[16] *Id.* at Exhibit A-5. The provision of sales support can include sales forecasting, strategic/economic planning, advertising, sales promotion, sales/marketing support, market research, and other related activities. *See Acetone from Belgium: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 84 FR 49999 (September 24, 2019), and accompanying PDM at 17.
[17] *Id*. The Provision of Training Services can include personnel training/exchange, distributer/dealer training, and other related activities.
[18] *Id.* The Provision of Technical Support can include engineering services, technical assistance, and other related activities.
[19] *Id.* The Provision of Logistical Services can include inventory maintenance, post-sale warehousing, repacking, freight and delivery, and other related activities.
[20] *Id.* The Performance of Sales Related Administrative Activities can include order input/processing, rebate programs, warranty service, and other related activities.
[21] *See* ZA Sea Foods' AQR at A-13; and ZA Sea Foods' BCQR at B-23 to B-24.
[22] *See* ZA Sea Foods' AQR at Exhibit A-5.
[23] *Id.* at A-13; and ZA Sea Foods' BCQR at C-22.
[24] *See* ZA Sea Foods' AQR at Exhibit A-5.

Accordingly, based on the selling function categories noted above, we find that ZA Sea Foods provided sales support, logistical services, and sales-related administrative activities for all of its U.S. sales. Because we find that there were no differences in the selling activities performed by ZA Sea Foods to sell to its U.S. customers, we determine that all U.S. sales are at the same LOT.

Finally, we compared the U.S. LOT to the third country market LOT, and found that the selling functions ZA Sea Foods performed for its U.S. and third country market customers are identical. Therefore, we determine that ZA Sea Foods' sales to the United States and Vietnam during the POR were made at the same LOT and, as a result, no LOT adjustment is warranted.

**3. Cost of Production Analysis**

In accordance with section 773(b)(2)(A)(ii) of the Act, Commerce required that ZA Sea Foods provide CV and cost of production (COP) information to determine if there were reasonable grounds to believe or suspect that sales of the foreign like product had been made at prices that represented less than the COP of the product. We examined ZA Sea Foods' cost data and determined that our quarterly cost methodology was not warranted. Therefore, we applied our standard methodology of using annual costs based on the reported data.

a. Calculation of COP

In accordance with section 773(b)(3) of the Act, we calculated ZA Sea Foods' COP based on the sum of the cost of materials and fabrication for the foreign like product, plus amounts for general and administrative expenses and interest expenses. We relied on the COP data submitted by ZA Sea Foods.

b. Test of Comparison Market Sales Prices

On a product-specific basis, pursuant to section 773(a)(1)(B)(ii) of the Act, we compared the weighted-average COP to the third country sales prices of the foreign like product, to determine whether the sales prices were below the COP. For purposes of this comparison, we used COP exclusive of selling and packing expenses. The prices were exclusive of any applicable movement charges, discounts, direct and indirect selling expenses, and packing expenses.

c. Results of the COP Test

In determining whether to disregard comparison market sales made at prices below the COP, we examined, in accordance with sections 773(b)(1)(A) and (B) of the Act, whether: (1) within an extended period of time, such sales were made in substantial quantities; and (2) such sales were made at prices which permitted the recovery of all costs within a reasonable period of time in the normal course of trade. In accordance with sections 773(b)(2)(B) and (C) of the Act, where less than 20 percent of the respondent's comparison market sales of a given product are at prices less than the COP, we do not disregard any below-cost sales of that product because we determine that in such instances the below-cost sales were not made within an extended period of time and in "substantial quantities." Where 20 percent or more of a respondent's sales of a given product are at prices less than the COP, we disregard the below-cost sales when: (1) they were made within an extended period of time in "substantial quantities," in accordance with sections 773(b)(2)(B) and (C) of the Act; and, (2) based on our comparison of prices to the weighted-average COPs for the POR, they were at prices which would not permit the recovery of all costs within a reasonable period of time, in accordance with section 773(b)(2)(D) of the Act. Because

we are applying our standard annual-average cost test, we also applied our standard cost recovery test with no adjustments.

We found that, for certain products, more than 20 percent of ZA Sea Foods' comparison market sales during the POR were at prices less than the COP and, in addition, such sales did not provide for the recovery of costs within a reasonable period of time. Therefore, we excluded these sales and used the remaining sales as the basis for determining NV, in accordance with section 773(b)(1) of the Act.

For those U.S. sales of subject merchandise for which there were no comparable third country sales in the ordinary course of trade, we compared EP to CV in accordance with section 773(a)(4) of the Act. *See* the "Calculation of Normal Value Based on Constructed Value" section below.

**4. Calculation of Normal Value Based on Comparison Market Prices**

We calculated NV for ZA Sea Foods based on packed prices to unaffiliated customers in Vietnam. We made deductions, where appropriate, from the starting price for foreign inland freight expenses, foreign brokerage and handling expenses, marine insurance expenses, and international freight expenses, where appropriate, under section 773(a)(6)(B)(ii) of the Act.

We deducted third country packing costs and added U.S. packing costs, in accordance with section 773(a)(6)(A) and (B) of the Act. For comparisons to EP sales, we made adjustments under section 773(a)(6)(C)(iii) of the Act and 19 CFR 351.410 for differences in circumstances of sale. Specifically, we deducted direct selling expenses incurred for third country market sales, *i.e.*, bank charges, credit expenses, and commissions, and added U.S. direct selling expenses, *i.e.*, bank charges, credit expenses, commissions, and other direct selling expenses.

We also made adjustments, in accordance with 19 CFR 351.410(e), for indirect selling expenses incurred in the third country market or the United States where commissions were granted on sales in one market but not in the other, also known as the "commission offset." Specifically, where commissions were incurred in only one market, we limited the amount of such allowance to the amount of either the indirect selling expenses incurred in the one market or the commissions allowed in the other market, whichever is less.

When comparing U.S. sales with comparison market sales of similar merchandise, but not identical, merchandise, we also made adjustments for differences in costs attributable to differences in the physical characteristics of the merchandise, in accordance with section 773(a)(6)(C)(ii) of the Act and 19 CFR 351.411. We based this adjustment on the difference in the variable cost of manufacturing for the foreign like product and subject merchandise.[25]

**5. Calculation of Normal Value Based on Constructed Value**

Section 773(a)(4) of the Act provides that where NV cannot be based on comparison market sales, NV may be based on CV. Accordingly, for those shrimp products for which we could not determine the NV based on comparison market sales because, as noted in the "Results of the COP Test" section above, all sales of the comparable products failed the COP test, we based NV on CV.

Sections 773(e)(1) and (2)(A) of the Act provide that CV shall be based on the sum of the cost of materials and fabrication for the imported merchandise, plus amounts for selling, general, and administrative (SG&A) expenses, interest expenses, profit, and U.S. packing costs. For ZA Sea Foods, we calculated the cost of materials and fabrication based on the methodology described in the "Cost of Production Analysis" section above. We based SG&A and profit for

---

[25] *See* 19 CFR 351.411(b).

ZA Sea Foods on the actual amounts incurred and realized by it in connection with the production and sale of the foreign like product in the ordinary course of trade for consumption in the comparison market, in accordance with section 773(e)(2)(A) of the Act.

Finally, we made adjustments to CV for differences in circumstances of sale, in accordance with section 773(a)(6)(C)(iii) and (a)(8) of the Act and 19 CFR 351.410. For comparisons to ZA Sea Foods' EP sales, we made circumstance-of-sale adjustments by deducting the CV direct selling expenses and imputed credit expenses from, and adding U.S. direct selling expenses (*i.e.*, bank charges, commissions, and other direct selling expenses) and imputed credit expenses to, CV. Where commissions were granted on ZA Sea Foods' U.S. sales, we made a commission offset for ZA Sea Foods' comparison market indirect selling expenses, in accordance with 19 CFR 351.410(e).

### E. Currency Conversion

We made currency conversions into U.S. dollars in accordance with section 773A of the Act and 19 CFR 351.415(a), based on the exchange rates in effect on the dates of the U.S. sales, as certified by the Federal Reserve Bank.

## IV. INTERESTED PARTY COMMENTS

On June 23, 2022, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[26] On June 30, 2022, we received comments from the Ad Hoc Shrimp Trade Action Committee (AHSTAC) and ZA Sea Foods and the other

---

[26] *See* Draft Results of Redetermination Pursuant To Court Remand Certain Frozen Warmwater Shrimp from India, *Z.A. Sea Foods Private Limited et al v. United States*, Slip Op. 22-36, Consol. Court No. 21-00031 (CIT April 19, 2022)," issued on June 23, 2022 (Draft Remand Results).

Indian shrimp producer plaintiffs (collectively, Indian Respondents).[27] We address the parties' comments below.

*AHSTAC Comments*

- Commerce should continue to determine the NV of ZASF's sales using CV.
- Section 773 of the Act requires that, to determine NV on the basis of third country sales, such sales must be "for consumption" in that third country market.[28]
- Information on the record of the administrative review demonstrates that ZASF's sales to Vietnam were to companies that were exporters of frozen warmwater shrimp products.[29] Further, there is no evidence on the record to demonstrate that these Vietnamese shrimp companies consumed the merchandise they purchased rather that exporting the shrimp to other markets for consumption there.[30]
- ZASF acknowledged that its sales were to Vietnamese exporters but maintained that it did not have specific knowledge of the disposition of the goods sold during the POR.[31] Thus, according to ZASF, in the absence of definitive proof that merchandise was not consumed in a third-country market, Commerce must presume that consumption occurred.

---

[27] *See* AHSTAC's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated June 30, 2022 (AHSTAC Comments); and Indian Respondents' Letter, "Comments on Draft Results of Redetermination," dated June 30, 2022 (Indian Respondent Comments).
[28] *See* AHSTAC Comments at 5-6.
[29] *Id*. at 7 (citing AHSTAC's Letter, "Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification," dated September 26, 2019 (AHSTAC's Comments on ZA Sea Foods Section A Response)).
[30] *Id*. at 11.
[31] *Id*. at 7-8 (citing ZA Sea Foods Letter, "Case Brief," dated April 11, 2020, at 13-14).

- The Draft Remand Results fail to address whether the Act requires Commerce to presume that sales to a third-country market are for consumption. Nonetheless, any presumption is rebuttable, and AHSTAC submitted substantial evidence rebutting that presumption.[32]
- While the Court's remand placed the burden on Commerce to demonstrate through substantial evidence that ZA Sea Foods' sales to Vietnam were not "representative" in order to invoke the exception set forth in section 773(a)(1)(B)(ii)(I) of the Act and 19 CFR 351.404(c)(2)(ii), this exception is only implicated if an exporter can first demonstrate that it has a sufficient quantity of sales "for consumption" in the third-country market.
- In this case, the lack of any evidence that ZA Sea Foods' sales to Vietnam were "for consumption" led ZA Sea Foods to argue that its lack of knowledge of the ultimate disposition of shrimp sold to its Vietnamese shrimp customers justifies a conclusion that such sales are "for consumption." However, the CIT observed that the knowledge test is not applicable here.[33]
- For the final remand redetermination, if Commerce believes that it must presume ZA Sea Foods' sales to Vietnam are for consumption, it should further explain why that presumption has not been rebutted by the specific facts on the administrative record.
- Given that there is no information on the record indicating that ZASF's sales to the United States were made to customers that are exporters of shrimp, Commerce must explain why the comparison market and U.S. market sales may be considered an apples-to-apples comparison consistent with the structure of the statute.[34]

---

[32] *Id*. at 9 (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); and *KYD, Inc. v. United States*, 607 F.3d 760, 767 (Fed. Cir. 2010)).
[33] *Id*. at 10 (citing *Remand Order* at 21).
[34] *Id*. at 12.

- Commerce's note in the Draft Remand Redetermination that it may consider in the future whether it is appropriate to rely on sales to a non-market economy country for third country comparison market sales in determining NV in market economy cases underscores that Commerce must consider, in this proceeding, whether it is appropriate to rely on sales of frozen warmwater shrimp to frozen warmwater shrimp exporters in a third country market to determine NV.[35]

*Indian Respondent Comments*

- In the Draft Remand Results, Commerce was correct to recalculate the weighted-average dumping margin for ZA Sea Foods using its reported Vietnamese third country market sales data. Further, Commerce correctly recalculated the review-specific rate applied to B-One Business House Pvt. Ltd.; Hari Marine Private Limited; Magnum Export; Megaa Moda Pvt. Ltd.; Milsha Agro Exports Pvt. Ltd.; Sea Foods Private Limited; Shimpo Exports Private Limited; Five Star Marine Exports Private Limited; HN Indigos Private Limited; RSA Marines; and Zeal Aqua Limited.[36]

**Commerce's Position:**

As noted above, consistent with the *Remand Order*, we find insufficient evidence that ZA Sea Foods' third country Vietnamese sales were unrepresentative and unsuitable for use in the calculation of NV. While AHSTAC does not dispute the Court's finding that Commerce's decision was not supported by substantial evidence, AHSTAC maintains that the calculation of NV on the basis of third country sales requires that such sales be for consumption in that third country market. AHSTAC asserts that Commerce must address whether the Act requires Commerce to presume that sales to a third-country market are for consumption. According to

[35] *Id.* at 13.
[36] *See* Indian Respondent Comments at 1-2.

AHSTAC, record information in this case demonstrates that ZA Sea Foods sold shrimp to Vietnamese companies that were exporters of frozen warmwater shrimp products, and, as such, the fact that ZA Sea Foods' customers were exporters constitutes substantial evidence that rebuts the presumption that ZA Sea Foods' sales to Vietnam are for consumption.

Section 773(a)(1)(B)(ii)(I) of the Act states that when NV is based on third country sales, NV shall be based on the price at which the foreign like product is sold for consumption if such price is representative. The preamble to Commerce's regulations provides that a determination of whether or not third country prices are representative is not one that Commerce will regularly consider.[37] Further, third country sales are presumptively representative where aggregate sales quantities are at a sufficient level, and the party seeking to show that third-country sales are not representative bears the burden of making such a showing.[38] Finally, the Court has held that any determination by Commerce that third-country prices are not representative must be supported by substantial evidence.[39]

We agree that the evidence on the record shows that ZA Sea Foods sold shrimp to certain Vietnamese customers that were exporters or resellers.[40] However, there is no evidence on the record to support AHSTAC's assertion that, simply because these companies were exporters, ZA Sea Foods' sales were not for consumption in Vietnam. Thus, we find that the record lacks sufficient evidence to support a finding that ZA Sea Foods' third country sales were not for consumption in Vietnam. Absent affirmative evidence that the shrimp was not consumed in

---

[37] *See Antidumping Duties, Countervailing Duties: Final Rule*, 62 FR 27296, 27357 (May 19, 1997).

[38] *Id*; *see also Husteel Co. v. United States*, 463 F. Supp. 3d 1334, 1341 (CIT 2020) (*Husteel*); and *Alloy Piping Prods. v. United States*, 201 F. Supp. 2d 1267, 1276-77 (CIT 2002).

[39] *See Husteel*, 463 F. Supp. 3d at 1341 (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49 (1983)).

[40] *See* AHSTAC's Comments on ZA Sea Foods Section A Response.

Vietnam, or that the sales were otherwise not representative, we do not have substantial evidence to support a finding that these sales may not be used to calculate normal value.

Furthermore, while ZA Sea Foods' Vietnamese customers may have been exporters, we similarly find that there is no evidence on the record that ZA Sea Foods' POR sales to Vietnam were otherwise unrepresentative, other than the U.S. Customs and Border Protection Enforce and Protect Act determination and trade patterns of ZA Sea Foods' customers that were rejected by the Court in the *Remand Order* as a basis for Commerce's finding in its *Final Results*.[41] We note that, while AHSTAC claims that it has provided substantial evidence to show such sales were not for consumption in the third country, AHSTAC has not pointed to any additional record evidence that would allow Commerce to overcome the Court's ruling that the fact that ZA Sea Foods' customers were processor or traders (*i.e.*, resellers) is insufficient to demonstrate such sales were not consumed in Vietnam and thus are not representative.[42] Without affirmative record evidence that ZA Sea Foods' POR shrimp sales to Vietnam were not for consumption in Vietnam, were resold to the United States, were not sold in sufficient quantities, or some other affirmative evidence that these sales are not representative for the purposes of the calculation NV, we cannot support a finding that the sales were unrepresentative. While AHSTAC also asserts that we cannot compare NV based on sales to exporters to U.S. prices based on sales to non-exporters, they similarly fail to point to any evidence why such sales cannot be compared or any affirmative evidence that ZA Sea Foods' U.S. customers were not exporters as well.

Accordingly, consistent with the Court's remand order, we recalculated ZA Sea Foods' dumping margin by relying on ZA Sea Foods' POR third country Vietnamese sales for these final results of redetermination.

---

[41] *See Remand Order* at 18.
[42] *Id*. at 17-18.

## V. FINAL RESULTS OF REDETERMINATION

We recalculated ZA Sea Foods' estimated weighted-average dumping margin according to the analysis discussed in the Draft Remand Results. As a result, the estimated weighted-average dumping margin for ZA Sea Foods is 1.73 percent.[43] Moreover, as a result of Commerce's recalculation of the weighted-average dumping margin for ZA Sea Foods, the review-specific rate applicable to B-One Business House Pvt. Ltd.; Hari Marine Private Limited; Magnum Export; Megaa Moda Pvt. Ltd.; Milsha Agro Exports Pvt. Ltd.; Sea Foods Private Limited; Shimpo Exports Private Limited; Five Star Marine Exports Private Limited; HN Indigos Private Limited; RSA Marines; and Zeal Aqua Limited is 1.73 percent.[44] Because the weighted-average dumping margin for ZA Sea Foods and the review-specific rate are different from that in the *Final Results*, we intend to issue a *Timken* notice with the amended final results should the Court sustain these final results of redetermination.

7/18/2022

X

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
for Policy and Negotiations

---

[43] *See* Draft Remand Sales Calculation Memorandum.
[44] *See Preliminary Results*, 85 FR at 13132 (explaining the method for determining the rate applied to companies not selected for individual examination), unchanged in the *Final Results*.