## UNITED STATES COURT OF INTERNATIONAL TRADE

**Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, and ZEAL AQUA LTD.,**

        **Plaintiffs,**

    **v.**

**UNITED STATES,**

        **Defendant,**

    **And**

**AD HOC SHRIMP TRADE ACTION COMMITTEE**

        **Defendant-Intervenor.**

**Before: Gary S. Katzmann, Judge**

**Court No. 21-00031**

## DEFENDANT-INTERVENOR AD HOC SHRIMP TRADE ACTION COMMITTEE'S COMMENTS ON REMAND REDETERMINATION

Nathaniel Maandig Rickard
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street N.W.
Suite 800
Washington, D.C. 20006
(202) 331-4040

*On behalf of the Ad Hoc Shrimp Trade Action Committee*

August 17, 2022

## <u>TABLE OF CONTENTS</u>

**BACKGROUND** ...........................................................................................................................1

    **I.**    **COMMERCE'S ADMINISTRATIVE REVIEW** ...........................................1

    **II.**    **PROCEEDINGS BEFORE THIS COURT** ...................................................3

    **III.**    **COMMERCE'S REMAND REDETERMINATION** .................................5

**ARGUMENT** ...............................................................................................................................5

    **I.**    **STANDARD OF REVIEW** .............................................................................5

    **II.**    **COMMERCE'S REDETERMINATION SHOULD BE REMANDED** .................6

**CONCLUSION** .........................................................................................................................16

## TABLE OF AUTHORITIES

### Cases

Bell Supply Co. v. United States, 888 F.3d 1222 (Fed. Cir. 2018) ................................................11

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) .........................................................................6

Husteel Co. v. United States, 520 F. Supp. 3d 1296 (Ct. Int'l Trade 2021) ............................... 3-4

Kirovo-Chepetsky Khimichesky Kombinat, JSC v. United States, 58 F. Supp. 3d 1397
    (Ct. Int'l Trade 2015)........................................................................................................... 12-13

KYD, Inc. v. U.S., 607 F.3d 760 (Fed. Cir. 2010)..................................................................... 10-11

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927 (Fed. Cir. 1984)................................6

Nakornthai Strip Mill Public Co. v. United States, 587 F. Supp. 2d 1303
    (Ct. Int'l Trade 2008).................................................................................................................6

QVD Food Co. v. United States, 658 F.3d 1318 (Fed. Cir. 2011)................................................15

Rhone Poulenc, Inc. v. U.S., 899 F.2d 1185 (Fed. Cir. 1990).............................................. 10-11

Soc Trang Seafood Joint Stock Co. v. United States, 365 F. Supp. 3d 1287
    (Ct. Int'l Trade 2019)...............................................................................................................13

Soc Trang Seafood Joint Stock Co. v. United States, 321 F. Supp. 3d 1329
    (Ct. Int'l Trade 2018)...............................................................................................................13

Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255
    (Ct. Int'l Trade 2014)..................................................................................................................6

### Statutes

19 U.S.C. § 1516a....................................................................................................................5

19 U.S.C. § 1677b............................................................................................................... 3, 6-8

### Regulations

19 C.F.R. § 351.404 ................................................................................................................3

**Administrative Determinations**

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review, 2016-2017, 83 Fed. Reg. 46,704 (Dep't Commerce Sept. 14, 2018) ................................................................................14

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Results and Final Determination of No Shipments of Antidumping Duty Administrative Review; 2018-2019, 84 Fed. Reg. 64,457 (Dep't Commerce Nov. 22, 2019).............................................8

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 70 Fed. Reg. 5,152 (Dep't Commerce Feb. 1, 2005) .........................................................8

**DEFENDANT-INTERVENOR AD HOC SHRIMP TRADE ACTION COMMITTEE'S
COMMENTS ON REMAND REDETERMINATION**

On behalf of Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("Domestic

Producers" or "AHSTAC"), we respectfully submit these comments regarding the U.S. Department

of Commerce's ("Commerce") redetermination pursuant to Court remand.  See Final Results of

Redetermination Pursuant to Court Remand, July 18, 2022 ("Remand Results"), ECF No. 60-1.

Commerce's Remand Results were prepared pursuant to the Opinion and Order issued by this Court

remanding the final results of the fourteenth administrative review of the antidumping duty order of

frozen warmwater shrimp from India.  See Z.A. Sea Foods Pvt. Ltd. v. United States, 569 F. Supp.

3d 1338 (Ct. Int'l Trade 2022) ("ZA Sea Foods").  As explained below, because Commerce's

redetermination on remand bases normal value on the prices of third-country sales that were not made

for consumption in the third-country market, they are not supported by substantial evidence and are

not in accordance with law, and should be remanded with instructions that the agency take such

further actions as required by the Court.

## BACKGROUND

## I.    COMMERCE'S ADMINISTRATIVE REVIEW

This action concerns the fourteenth administrative review of the antidumping duty order on

certain warmwater shrimp from India.  See Certain Frozen Warmwater Shrimp From India: Final

Results of Antidumping Duty Administrative Review and Final Determination of No Shipments;

2018-2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020), ECF No. 19-2 ("Final Results").[1]

---

[1]    Commerce's determinations, findings, and conclusions were set out primarily in the "Issues
and Decision Memorandum" accompanying the Final Results.  See Issues and Decision
Memorandum for the Final Results of the 2018-2019 Antidumping Duty Administrative
Review of Certain Frozen Warmwater Shrimp from India (Dec. 21, 2020), P.R. 194, ("AR14
IDM"), ECF No. 19-1.

In the <u>Final Results</u>, Commerce used a constructed value methodology to calculate normal value for Z.A. Sea Foods Pvt. Ltd. ("ZASF") after determining that ZASF's third-country sales to the Socialist Republic of Vietnam ("Vietnam") – the respondent's preferred basis for calculating normal value – were not representative.  AR14 IDM at Comment 2, pp. 15-21.

In reaching this conclusion, Commerce highlighted record evidence showing that ZASF's sales to customers in Vietnam "may ultimately be-exported" and, therefore, not at prices representative of sales in that market.  <u>Id.</u> at 16.  Specifically, Commerce cited record evidence submitted by Domestic Producers regarding the ultimate destination of sales ZASF made to Vietnam.  <u>See</u> Letter from Picard Kentz & Rowe LLP to Commerce, "Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification" (Sept. 26, 2019) ("AHSTAC Section A Comments"), P.R. 94.[2]  Commerce's decision memorandum explained further how entities composing the Minh Phu Group, ZASF's primary customer in Vietnam, were themselves exporters of frozen warmwater shrimp and have been determined to have transshipped Indian-origin shrimp through Vietnam to the United States by U.S. Customs and Border Protection.  AR14 IDM at 16-20; <u>see also</u> Department Memorandum, "Placing U.S. Customs and Border Protection Decision on the Record and Setting Comment Deadline" (Oct. 27, 2020), P.R. 187.  Put simply, Commerce's determination in the <u>Final Results</u> reflected the agency's fulsome consideration of record evidence

---

[2]     The administrative record in this case is composed of the documents contained in the administrative record of the underlying proceeding and the additional documents pertaining to the proceedings on remand.  All citations in these comments to documents contained in the administrative record of the underlying proceeding are to public documents or public versions of business proprietary documents.  Citations to these documents include the "P.R." document number from the public record index filed with the Court.  <u>See</u> Public Index to the Administrative Record, Mar. 9, 2021, ECF No. 19-5.  Likewise, all citations in these comments to documents pertaining to the proceedings on remand are to public documents.  Citations to these documents include the "R.P.R." document number from the remand public record index filed with the Court.  <u>See</u> Remand Public Index to the Administrative Record, July 25, 2022, ECF No. 62-2.

and the reasonable conclusion based on the administrative record that ZASF's sales to Vietnam were an inappropriate basis for calculating normal value.

## II.     PROCEEDINGS BEFORE THIS COURT

ZASF, along with a number of other Indian producers and exporters of subject merchandise, appealed the Final Results to this Court arguing primarily that Commerce's decision to employ constructed value, rather than the price of sales to the Vietnamese third country market, as the basis for the subject merchandise's normal value was unsupported by substantial evidence and not in accordance with law.  See ZA Sea Foods, 569 F. Supp. 3d at 1341.

This Court's opinion addressed three aspects of the Final Results challenged by ZASF.  The Court sustained Commerce's interpretation of 19 C.F.R. § 351.404, which permits the agency to decline to calculate normal value using third country sales where it is established to the satisfaction of the Secretary that the price in that market is not representative.  Id. at 1351-52.  The Court also sustained Commerce's decision not to apply a "knowledge test," explaining that "Commerce did not depart from any longstanding practice by declining to apply a knowledge test in the present case." Id. at 1353.  However, the Court remanded Commerce's calculation of normal value, holding that Commerce "failed to support its rejection of ZASF's Vietnamese sales data . . . with substantial evidence."  Id.

In remanding Commerce's use of a constructed value, the Court focused on the statutory and regulatory framework for the calculation of normal value.  Id. at 1341-43.  The Court noted that section 773(a)(1)(B) of the Tariff Act, 19 U.S.C. § 1677b(a)(1)(B), requires that third country prices be "representative" in order for such prices to be considered for purposes of calculating normal value. Id. at 1342-43.  The Court, quoting Husteel Co. v. United States, 520 F. Supp. 3d 1296, 1304 (Ct. Int'l Trade 2021), then observed that so long as the aggregate quantity of third country sales "are at a sufficient level, those sales are presumptively representative unless demonstrated otherwise."  Id.,

569 F. Supp. 3d at 1343.  The Court explained further that "{a}ny determination that the proposed third country sales are not representative must be supported by substantial evidence on the record." Id. (citing Husteel Co., 520 F. Supp. 3d at 1305).

The Court then evaluated the evidence cited by the Department in support of its conclusion and found it insufficient to support a determination that the price of ZASF's sales to Vietnam were not representative.  Id. at 1347-51.  In particular, the CIT held that the "evasion scheme evidence" relied on by Commerce was insufficiently tied to ZASF's sales to establish that the price of the respondent's sales was not representative.  Id. at 1348-50.  Further, in discussing the "trade pattern evidence," the Court held that the fact that ZASF's Vietnamese customers were processors or traders failed to "provide {an} adequate basis for Commerce's conclusion that the ZASF's Vietnamese sales were not representative . . . ."  Id. at 1351 (citations omitted).  In reviewing whether the Final Results were supported by substantial evidence, the Court held that the record evidence relied on by Commerce failed to "provide a rational basis for {the agency's} conclusion that ZASF's Vietnamese sales were unrepresentative and thus unsuitable" to use in calculating normal value.  Id. at 1353.

Finding that "Commerce's representativeness determination cannot be sustained," the Court expressed its agreement with ZASF that the agency had "identified no record evidence" that would "establish 'that the shrimp sold to Vietnam by ZASF was not resold in Vietnam . . . {or} processed into merchandise outside the scope of the antidumping duty order.'"  Id. at 1350-1351 (emphasis in original) (quoting Mem. in Supp. of the Rule 56.2 Mot. of Pls. for J. Upon the Agency R. at 17, June 18, 2021, ECF No. 27).  Reviewing the record, the Court held that there was no evidence "as to the reasonableness of AHSTAC's concerns" that ZASF's Vietnamese customers were each, on their own, exporters of shrimp, nor was there any evidence "of the transshipment of subject merchandise sold to Vietnamese purchasers by ZASF during the period of review . . . ."  Id.

III.    **COMMERCE'S REMAND REDETERMINATION**

On remand, Commerce summarized the Court's Opinion and Order as holding that the agency "failed to support with substantial evidence its rejection of ZA Sea Foods' Vietnamese sales and the use of {constructed value} to establish {normal value}." Remand Results at 2.  Commerce interpreted the remand order as holding that "record evidence was insufficient to conclude that ZA Sea Foods' Vietnamese sales were unrepresentative and unsuitable to be used to calculate {normal value}." Id. (citing ZA Sea Foods).  Based on this interpretation, Commerce calculated a dumping margin for ZASF using the respondent's reported third country sales to Vietnam to determine normal value.  Id. at 3.

In the Remand Results, Commerce rejected Domestic Producers' argument that, in addition to evaluating whether the prices of ZASF's sales to Vietnam were representative, the agency must evaluate whether substantial evidence on the administrative record supports a finding that the respondent's sales to Vietnam were for consumption in that market.  Id. at 15-17; see also Letter from Picard Kentz & Rowe LLP to Commerce, "Comments on Draft Results of Redetermination Pursuant to Court Remand" (June 30, 2022), R.P.R. 4.  In response to Domestic Producers' argument, Commerce found that the record did not contain "affirmative evidence" that could "overcome the Court's ruling that the fact that ZA Sea Foods' customers were processor or traders (*i.e.*, resellers) is insufficient to demonstrate that such sales were not consumed in Vietnam and thus are not representative." Remand Results at 17.

## ARGUMENT

I.  **STANDARD OF REVIEW**

Commerce's determinations in administrative reviews, including determinations made pursuant to a court ordered remand, shall be held unlawful if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted); see also Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984).

"The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008)).

## II.     COMMERCE'S REDETERMINATION SHOULD BE REMANDED

The Remand Results hold that Commerce was incapable, on this administrative record, of finding that ZASF's sales to Vietnam were not for consumption in that third country.  Citing the Court's language in the ZA Sea Foods opinion, Commerce explains that the factual evidence on the administrative record demonstrating that ZASF's sales to Vietnam were not made for consumption had already been considered and rejected.  See Remand Results at 17 ("AHSTAC has not pointed to any additional record evidence that would allow Commerce to overcome the Court's ruling that the fact that ZA Sea Foods' customers were processor or traders (i.e., resellers) is insufficient to demonstrate such sales were not consumed in Vietnam and thus are not representative.").

The Court's holding in ZA Sea Foods does not appear limited to rejecting Commerce's analysis of whether ZASF's sales to Vietnam were "representative," but also to preclude the agency from reviewing the administrative record to determine whether ZASF's sales were made for consumption in that third country market.  But these two prerequisites for utilizing the prices of third country market sales as the basis for normal value exist separately in the statute.  While the statutory framework for determining normal value on the basis of third country sales requires that the price for such sales be "representative," see 19 U.S.C. § 1677b(a)(1)(B)(ii)(I), before that issue is even

6

reached, any such third-country sales are required to be "for consumption" in *that* third country

market.  See § 1677b(a)(1)(B)(ii).[3]  Specifically, section 773 of the Tariff Act states:

(1) Determination of normal value.—

    (A) In general.—The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.

    (B) Price.—The price referred to in subparagraph (A) is—

        (i) the price at which the foreign like product is first sold . . . for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price, or

        (ii) in a case to which subparagraph (C) applies, the price at which the foreign like product is so sold . . . for consumption in a country other than the exporting country or the United States, if—

            (I) such price is representative,

            (II) the aggregate quantity . . . of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity . . . of the subject merchandise sold in the United States or for export to the United States, and

            (III) the administering authority does not determine that the particular market situation prevents a proper comparison with the export price or constructed export price.

    (C) Third country sales.—This subparagraph applies when—

        (i) the foreign like product is not sold . . . for consumption in the exporting country as described in subparagraph (B)(i),

        (ii) the administering authority determines that the aggregate quantity . . . of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or

---

[3]    Section 773 of the Tariff Act also sets out other considerations that must be met before Commerce can determine normal value based on the price of third country sales.  See 19 U.S.C. § 1677b(a)(1)(B)(ii)(II)-(III).  However, those additional requirements are not at issue in this case.  See id. §§ 1677b(A)(1)(B)(ii)(II) (requiring that the aggregate quantity exceed five percent of the quantity or value of the sales of subject merchandise sold in the United States), § 1677b(A)(1)(B)(ii)(III) (requiring that a particular market situation not prevent a proper comparison with the export price or constructed export price).

(iii) the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

For purposes of clause (ii), the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States.

19 U.S.C. § 1677b(a).

This appeal concerns the fourteenth administrative review of the antidumping duty order on certain frozen warmwater shrimp from India.  In addition to this antidumping duty order, Commerce also administers an antidumping duty order on certain frozen warmwater shrimp from Vietnam.  See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 70 Fed. Reg. 5,152 (Dep't Commerce Feb. 1, 2005).  At the time Commerce issued the Final Results in this proceeding, the agency had, more than a year earlier, completed the fourteenth administrative review of the antidumping duty order on certain frozen warmwater shrimp from Vietnam.  See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Final Results and Final Determination of No Shipments of Antidumping Duty Administrative Review; 2018-2019, 84 Fed. Reg. 64,457 (Dep't Commerce Nov. 22, 2019).  As such, the agency has substantial knowledge, developed through an investigation and administrative reviews, of the production practices of the Vietnamese shrimp exporting industry, i.e., ZASF's customer base in Vietnam.

As Domestic Producers demonstrated on the record of this proceeding, Commerce had previously found – in the agency's administrative reviews of the antidumping duty order on Vietnamese shrimp – that Vietnamese shrimp exporters were importing frozen shrimp from other countries and using these imports to produce frozen warmwater shrimp (scope merchandise) for export.  AHSTAC Section A Comments at 5-6, P.R. 94.  Specifically, AHSTAC placed information on the record of this proceeding from the tenth administrative review of the antidumping duty order

on Vietnamese shrimp explaining how this import practice by Vietnamese shrimp exporters

necessitated the creation of a separate surrogate value for frozen shrimp imports, summarizing this

evidence as follows:

> When the Minh Phu Group was subject to the antidumping duty order on certain
> frozen warmwater shrimp from the Socialist Republic of Vietnam, the company
> reported to the Department that it imported shrimp from other countries and used this
> shrimp as a raw material input in its exports to the United States. Specifically, as
> shown at **Exhibit 6**, in the tenth administrative review of that antidumping duty order,
> the Minh Phu Group informed the Department that it had purchased frozen shrimp
> from market economy ("ME") countries as raw material inputs for its shrimp exports
> to the United States. The use of imports of frozen shrimp from ME countries
> necessitated Commerce to develop a surrogate value for the cost of this material input
> as part of its dumping analysis:
>
>> Because MPG reported consumption of frozen {headless shell-on ("HLSO")}
>> shrimp purchases from market economy sources with no usable purchase
>> prices, we applied a Bangladeshi SV from UN Comtrade to the reported
>> quantity of purchased frozen shrimp. The surrogate value we applied to the
>> frozen shrimp is discussed in detail in the Prelim Surrogate Value Memo.

Id. (footnotes omitted, bold in original) (quoting U.S. Department of Commerce Internal

Memorandum from I. Gorelik to The File, "Administrative Review of Certain Frozen Warmwater

Shrimp from the Socialist Republic of Vietnam: Analysis for the Preliminary Results for Minh Phu

Group" (Mar. 3, 2016) at 3 (Public Version)).  Accordingly, Commerce, the factfinder in the

underlying proceeding, has long been familiar with the Vietnamese shrimp industry and, in particular,

the industry's practice of importing shrimp to fill export orders.  Proof of the agency's expertise

regarding the Vietnamese shrimp industry's production practices is reflected in the evidence on the

administrative record of this proceeding.

In this context, the suggestion that a factfinder might reasonably conclude from this

administrative record that ZASF's shrimp was "resold in Vietnam" for consumption by the

respondent's Vietnamese shrimp processing and exporting customers is implausible.  There is no

support for the supposition that ZASF's Vietnamese shrimp exporter customers may have purchased

imported shrimp for resale in the Vietnamese market from anything on the administrative record.

Indeed, ZASF's counsel failed to ever develop or present any reasonable argument for the existence

of an internal market for this shrimp and, instead, before the agency raised the mere *possibility* that

the shrimp purchased from the respondent *might* be further processed by its customers into non-scope

merchandise in a sufficient manner to constitute consumption in Vietnam before being exported:

> Commerce bases its determinations on the specific facts presented in the review before
> it, and for this period of review (i.e., February 1, 2018, through January 31, 2019),
> there is no record evidence that the shrimp sold to Vietnam by Z.A. Sea Foods was *not*
> processed into merchandise outside the scope of the antidumping duty order.
> Regardless of the trade patterns of Z.A. Sea Foods' Vietnam customers, if those
> customers processed the shrimp sold to them by Z.A. Sea Foods into breaded shrimp,
> battered shrimp, prepared meals, canned shrimp, or other forms of non-subject shrimp
> merchandise, then the shrimp would have been "consumed" in Vietnam under long-
> standing Commerce practice (regardless of whether the customers sold the
> downstream products within Vietnam or exported such merchandise abroad).  In this
> review, the administrative record does not establish that Z.A. Sea Food's customers
> did not process the purchased frozen shrimp material into merchandise not under
> consideration.  Because Commerce may not presume that such "consumption" in
> Vietnam did not occur, the patterns of trade of Z.A. Sea Foods's customers are not
> relevant to selecting a comparison market and calculating Z.A. Sea Foods's normal
> values.

Letter from Trade Pacific PLLC to the U.S. Department of Commerce, "Case Brief," Case No. A-

533-840 (Apr. 10, 2020) at 13-14 (footnote omitted) (emphasis in original), P.R. 180.  Despite its

assertion of the legal standard, ZASF did not explain why Commerce "may not presume" that the

company's sales to Vietnam were not consumed in the third country, nor did it provide any basis for

the contention that Commerce must presume that such sales were for consumption.  What is,

nevertheless, clear from ZASF's argument is that Commerce must make *some* presumption regarding

whether the sale is for consumption in the third country market.  And if a presumption is made, that

presumption is rebuttable.  See Rhone Poulenc, Inc. v. U.S., 899 F.2d 1185, 1191 (Fed. Cir. 1990)

(noting that the Department appropriately presumed that a dumping margin calculated in a prior

proceeding was the most probative of current margins but noting that the 'presumption is

rebuttable . . ."); <u>KYD, Inc. v. U.S.</u>, 607 F.3d 760, 767 (Fed. Cir. 2010).  AHSTAC submitted

evidence rebutting any potential presumption that ZASF's sales to Vietnam were for consumption in

the Vietnamese market.  In contrast, ZASF points to no evidence on the record indicating that it

would be reasonable to conclude that its sales of shrimp to customers who are, themselves, exporters

of the same product were meant for further processing prior to export such that ZASF's shrimp would

lose its Indian-origin identity.[4]

    Accordingly, the record developed before Commerce fully supports a conclusion that ZASF's

sales were not for consumption in Vietnam.  ZASF's claimed ignorance as to the disposition of the

frozen warmwater shrimp sold to its customers in Vietnam does not provide a reasonable basis for

Commerce to conclude that ZASF's sales were for consumption in that country.  <u>See, e.g.</u>, Pls.' Reply

to Def.'s and Def.-Int.'s Resps. To Pls.' Mot. for J. on the Agency R. at 6 (Oct. 5, 2021) ("ZASF had

no knowledge . . . what its Vietnamese customers did with the merchandise they purchased from

ZASF."), ECF No. 34.  Indeed, instead of citing record evidence that the shrimp sold to Vietnamese

customers was consumed in Vietnam, ZASF claims a lack of knowledge as to the shrimp's ultimate

destination and states that the shrimp may have been consumed in Vietnam through certain

processing.  <u>See</u> <u>id.</u>  However, as previously explained by Domestic Producers, this claim fails to

engage with the decades of rulings establishing that most processing of frozen warmwater shrimp

does not constitute a substantial transformation (i.e., consumption in the third market country).  <u>See</u>

Def.-Int. Ad Hoc Shrimp Trade Action Committee's Post Oral Argument Submission at 2-3 (Feb. 1,

2022), ECF No. 56.

---

[4]    Indian-origin shrimp would lose their Indian-origin identity if, as a result of manufacturing or processing, the Indian-origin shrimp were to "lose{} its identity and {be} transformed into a new product having a new name, character and use."  <u>Bell Supply Co. v. United States</u>, 888 F.3d 1222, 1228-29 (Fed. Cir. 2018) (citation omitted).

Moreover, although ZASF has analogized to the "knowledge test" employed by Commerce in circumstances where the agency is attempting to determine how to classify sales to a particular market or whether to exclude specific sales from its calculation of normal value, the Court has explained that the "knowledge test" is not applicable here:

> While Commerce did reject ZASF's proffered third country sales data because it determined that Minh Phu Group's sales were ultimately U.S. sales, it did not treat ZASF's Vietnamese sales as U.S. sales for purposes of export price calculation under 19 U.S.C. § 1677a. . . .  Nor, clearly, did Commerce exclude any specific sales from its calculation of foreign market value, as it ultimately relied upon constructed value alone.

ZA Sea Foods, 569 F. Supp. 3d at 1353.  Similarly, an evaluation of whether ZASF has demonstrated that its sales to Vietnamese shrimp processors and exporters were for consumption in that market would not result in such sales being added to the U.S. sales in the dumping analysis – with dumping duty liability attached to these sales – nor would such an evaluation lead to the exclusion of specific sales from the calculation of normal value.  Instead, a finding that record evidence does not reasonably support the conclusion that ZASF's sales to Vietnam were for consumption simply results in Commerce relying upon constructed value to establish normal value.  Accordingly, the "knowledge test" is not relevant to Commerce's evaluation as to whether sales were, in fact, made for consumption in a third country market and, in result, an appropriate basis for the calculation of normal value.

Domestic Producers are aware of no basis under law for requiring Commerce to accept the supposition of a respondent that its sales were for consumption in a third-country market when the specific and particular facts on the administrative record indicate that such sales were not likely to have been for consumption.  In these circumstances, Commerce is authorized to weigh the evidence before it and draw reasonable conclusions.  It is the agency, not the Court, that has been charged with the responsibility of being the fact-finder in this administrative proceeding.  See Kirovo-Chepetsky

Khimichesky Kombinat, JSC v. United States, 58 F. Supp. 3d 1397, 1408 (Ct. Int'l Trade 2015) ("{T}he Court does not replace Commerce as the factfinder but instead reviews Commerce's factfinding decisions to ensure they are reasonable and supported by substantial evidence.").  In this administrative review, Domestic Producers placed evidence on the record sufficient to rebut any presumption that the respondent's reported sales to customers in Vietnam were for consumption in that country.  Specifically, information supplied by AHSTAC demonstrated that ZASF's sales to Vietnam were to customers that were, in turn, exporters of frozen warmwater shrimp products.  See AHSTAC Section A Comments.  Indeed, the majority of shipments made by ZASF to customers in Vietnam were to companies that comprise the Minh Phu Group – a known Vietnamese exporter of frozen warmwater shrimp.  Id. at 3-6.  Five additional ZASF customers, whom were identified in public material, placed on the record by Domestic Producers, as having received shipments during the POR, are also known to the Department to be exporters of frozen warmwater shrimp.  Id. at 6-7. These circumstances had not been previously presented in any prior administrative review of the antidumping duty order.

However, as Domestic Producers also demonstrated on the record, Commerce had found that these Vietnamese customers used imported shrimp in the production and sale of scope merchandise such that a unique surrogate value had to be used in administrative reviews of the antidumping duty order on Vietnamese shrimp for this input.  Id. at 5-6.  In fact, counsel for both AHSTAC and ZASF participated in litigation before this Court regarding the appropriate basis for the surrogate value to be used on frozen imported shrimp in the tenth administrative review of the antidumping duty order on frozen warmwater shrimp from Vietnam.  See Soc Trang Seafood Joint Stock Co. v. United States, 321 F. Supp. 3d 1329, 1350-1351 (Ct. Int'l Trade 2018); and Soc Trang Seafood Joint Stock Co. v. United States, 365 F. Supp. 3d 1287, 1291-1293 (Ct. Int'l Trade 2019).  Moreover, in the twelfth

administrative review of the antidumping duty order on Vietnamese shrimp, Commerce again found

that a Vietnamese exporter was utilizing imported frozen shrimp as an input in the production of

scope merchandise.  In the decision memorandum accompanying the Final Results of that

administrative review, Commerce explained:

> On this record the evidence shows that Fimex acquired *vannamei* shrimp from three
> different sources: 1) self-farmed *vannamei*, 2) purchased raw shrimp—domestic, and
> 3) purchased frozen shrimp—imported. . .  it is also appropriate to exclude from this
> discussion and analysis the quantity of purchased frozen shrimp from the total shrimp
> consumption quantity because we relied on a different {surrogate value} to value
> purchased, frozen shrimp, which covered both species.

Issues and Decision Memorandum (cmt. 1, p. 10) accompanying <u>Certain Frozen Warmwater Shrimp</u>

<u>from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review,</u>

<u>2016-2017</u>, 83 Fed. Reg. 46,704 (Dep't Commerce Sept. 14, 2018).[5]

Once Domestic Producers presented affirmative evidence that ZASF's sales to customers in

Vietnam were unlikely to have been for consumption in that country, it was not sufficient for ZASF

to simply posit that its sales *might* have been consumed in Vietnam.  Instead, the burden of

persuasion shifted to the respondent to demonstrate that it was reasonable to conclude that ZASF's

sales were for consumption in the Vietnamese market and, as such, an appropriate basis for the

determination of normal value.  There is, however, no such evidence on the record of this

administrative review.  While this Court has criticized Commerce for failing to identify any record

evidence establishing a negative – that ZASF's shrimp were not consumed in Vietnam – there is, at

the same time, no evidence identified by ZASF on the record establishing the flip-side of the same

coin – that ZASF's shrimp were consumed in Vietnam.  ZASF could have proffered evidence

---

[5]     Publicly-available shipment data placed on the record by AHSTAC showed that ZASF had
        made at least one shipment of frozen warmwater shrimp to Fimex VN.  <u>See</u> AHSTAC Section
        A Comments at 6 and Exhibit 2.

showing how the shrimp was consumed in Vietnam by, for example, identifying evidence of an internal market in Vietnam for shrimp imported from India or showing that its Vietnamese customers produced and exported significant quantities of product that were further processed beyond the scope of the antidumping duty orders.  ZASF made no attempt to do so.  See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (explaining that "the burden of creating an adequate record lies with" the interested parties) (citation omitted).

This administrative record presented a unique fact pattern – an Indian shrimp exporter selling frozen warmwater shrimp to Vietnamese shrimp exporters – to Commerce.  The agency was aware that the industry comprising ZASF's customer base in Vietnam has been purchasing imported frozen warmwater shrimp and using this shrimp as inputs in the production, sale, and exports of scope merchandise (frozen warmwater shrimp).  Basing normal value on the prices of ZASF's sales to Vietnam, therefore, makes it likely that normal value is premised on sales that were consumed outside of Vietnam, whether in the United States or in other shrimp importing markets such as Japan.  See AHSTAC Section A Comments a 5 (noting that the Minh Phu Group advertises its exporting and delivery network facilitating the company's exports to the United States and Japan).  ZASF placed no evidence on the record demonstrating that its sales of shrimp to Vietnam were likely consumed through processing into a product form outside of the scope of the antidumping duty order.  In these circumstances, Commerce, as the factfinder, is authorized to reasonably conclude that the prices for such sales do not provide an appropriate basis for determining normal value.  In the absence of an analysis as to whether the administrative record supports a finding that ZASF's sales to Vietnam were made for consumption in that country, Commerce's Remand Results cannot be sustained.

Accordingly, because nothing on the record supports the conclusion that ZASF's sales to Vietnam were made for consumption, the Remand Results are not supported by substantial evidence

and are not in accordance with law, and should be remanded with instructions that the agency take such further actions as required by the Court's decision in this matter.

## **<u>CONCLUSION</u>**

For the reasons explained above, AHSTAC respectfully submits that Commerce's <u>Remand Results</u> be remanded to the agency for further proceedings.

Respectfully submitted,

/s/ Nathaniel Maandig Rickard

Nathaniel Maandig Rickard
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1750 K Street, N.W.
Suite 800
Washington, D.C. 20006

*Counsel to the Ad Hoc Shrimp Trade Action Committee*

August 17, 2022

**CERTIFICATE OF COMPLIANCE**
**Z.A. SEA FOODS PVT. LTD. v. UNITED STATES**
**COURT NO. 21-00031**

I, <u>Nathaniel Maandig Rickard</u>, hereby certify that the foregoing submission (Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee's Comments on Remand Redetermination) contains **5,245** words inclusive of headings, footnotes, and quotations (but exclusive of table of authorities and counsel's signature block).  In accordance with the U.S. Court of International Trade's Standard Chamber Procedures, remand submissions cumulatively may not exceed 10,000 words.  Accordingly, any reply brief filed by Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee in response to comments on the remand redetermination will be limited to **4,755** words (i.e., 10,000 less the 5,245 words of this submission).  This word count was calculated using Microsoft Word's word count feature.

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard

**PICARD KENTZ & ROWE LLP**
1750 K Street, N.W.
Suite 800
Washington, D.C. 20006

*Counsel to the Ad Hoc Shrimp Trade*
*Action Committee*

August 17, 2022