Slip Op. 22-136

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **Z.A. SEA FOODS PRIVATE LIMITED, B-ONE BUSINESS HOUSE PVT. LTD., HARI MARINE PRIVATE LIMITED, MAGNUM EXPORT, MEGAA MODA PVT. LTD., MILSHA AGRO EXPORTS PRIVATE LTD., SEA FOODS PRIVATE LIMITED, SHIMPO EXPORTS PRIVATE LIMITED, FIVE STAR MARINE EXPORTS PVT. LTD., HN INDIGOS PRIVATE LIMITED, RSA MARINES, AND ZEAL AQUA LTD.,** | |
| **Plaintiffs,** | **Before: Gary S. Katzmann, Judge**<br>**Court No. 21-00031** |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| **Defendant-Intervenor.** | |

**OPINION AND ORDER**

[The court sustains Commerce's Remand Redetermination.]

Dated: December 6, 2022

Robert G. Gosselink and Jonathan M. Freed, Trade Pacific PLLC, of Washington, D.C., for Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Pvt. Ltd., Hari Marine Private Limited, Magnum Export, Megaa Moda Pvt. Ltd., Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines, and Zeal Aqua Limited.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief

were Brian M. Boynton, Principal Deputy Assistant Attorney General and Patricia M. McCarthy, Director. Of Counsel Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance.

Nathaniel Maandig Rickard and Zachary J. Walker, Picard, Kentz & Rowe, LLP, of Washington, D.C., for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

Katzmann, Judge: This case returns to the docket in the wake of the court's remand order in Z.A. Sea Foods Priv. Ltd. v. United States ("ZASF I"), 46 CIT __, 569 F. Supp. 3d 1338 (2022). Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("Domestic Shrimp" or "AHSTAC"), an ad hoc coalition of domestic producers, floats new arguments built upon the flotsam and jetsam of the original determination.

The question presented in ZASF I was whether the United States Department of Commerce ("Commerce") was permitted to reject third country sales based on the evidence presented before it and use "constructed value as the basis of normal value ("NV") calculation in its administrative review of the antidumping duty ("AD") order covering certain frozen warmwater shrimp that had been into the United States at less than fair value in derogation of fair competition with domestic producers." 569 F. Supp. 3d at 1341. Plaintiffs,[1] all foreign producers and exporters in India of the subject merchandise, argued that Commerce failed to support its determination with substantial evidence. Id. at 1353. The court remanded, finding that substantial evidence did not support Commerce's decision to reject the third country sales based on the evasion scheme evidence and the trade pattern evidence. Id. at 1348–51. On remand, Commerce found insufficient evidence that ZA Sea Foods' third country sales were unrepresentative and unsuitable for use in the

[1] Plaintiffs Z.A. Sea Foods Private Limited, B-One Business House Private Limited, Hari Marine Private Limited, Magnum Export, Megaa Moda Private Limited, Milsha Agro Exports Private Limited, Sea Foods Private Limited, Shimpo Exports Private Limited, Five Star Marine Exports Private Limited, HN Indigos Private Limited, RSA Marines and Zeal Aqua Limited will be referred to as "ZA Sea Foods" or "ZASF" throughout for ease of reference.

calculation, and thus recalculated normal value by relying on the previously rejected third country sales data. See Final Results of Remand Redetermination at 17, July 18, 2022, ECF No. 60-1 ("Remand Redetermination"). Commerce also found that there was no evidence on the record to support Domestic Shrimp's assertion that ZA Sea Foods' sales were not for consumption in Vietnam. Id.

Tempest-tossed but undeterred, Domestic Shrimp now asserts challenges to the Remand Redetermination based on (1) the separate requirement set forth in the statutory language "for consumption" in 19 U.S.C. § 1677b(a); (2) Commerce's purported obligation to make separate findings on the issue of consumption; and (3) the shifting of burdens when presumptions are rebutted. See generally Def.-Inter.'s Cmts. on Remand Redetermination, Aug. 18, 2022, ECF No. 63 ("Def.-Inter.'s Br."). Defendant United States ("the Government") and ZA Sea Foods request that the court sustain the Remand Redetermination. For the reasons set forth below, due to the lack of adequate argument, those challenges are deemed waived and the court sustains the Remand Redetermination.

## BACKGROUND

The court laid out in depth the legal and factual background of the proceedings in its previous opinion. The details pertinent to the Remand Redetermination are set forth below.

### *I. Legal and Regulatory Framework*

As noted in ZASF I, in investigating whether goods are being "dumped," that is, sold by a foreign company in the United States at less than fair value ("LTFV"), Commerce in its antidumping investigation first determines whether the goods is being sold at LTFV. 569 F. Supp. 3d at 1342; see also 19 U.S.C. § 1677b(a). Normal value provides the basis for this calculation, serving as a comparison point with the sales price in the United States (defined as export price or

constructed export price) to determine whether dumping has occurred. 19 U.S.C. § 1677b(a); see also 19 C.F.R. § 351.404(a) (2022). Section 1677b(a)(1) states that:

> (A) In general
>
> The normal value of the subject merchandise shall be the price described in subparagraph (B), at a time reasonably corresponding to the time of the sale used to determine the export price or constructed export price under section 1677a(a) or (b) of this title.
>
> (B) Price
>
> The price referred to in subparagraph (A) is--
>
> > (i) the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price, or
> >
> > (ii) in a case to which subparagraph (C) applies, the price at which the foreign like product is so sold (or offered for sale) for consumption in a country other than the exporting country or the United States, if--
> >
> > > (I) such price is representative,
> > >
> > > (II) the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by the exporter or producer in such other country is 5 percent or more of the aggregate quantity (or value) of the subject merchandise sold in the United States or for export to the United States, and
> > >
> > > (III) the administering authority does not determine that the particular market situation prevents a proper comparison with the export price or constructed export price.
>
> (C) Third country sales
>
> This subparagraph applies when--
>
> > (i) the foreign like product is not sold (or offered for sale) for consumption in the exporting country as described in subparagraph (B)(i),
> >
> > (ii) the administering authority determines that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold in the exporting country is insufficient to permit a proper comparison with the sales of the subject merchandise to the United States, or
> >
> > (iii) the particular market situation in the exporting country does not permit a proper comparison with the export price or constructed export price.

> For purposes of clause (ii), the aggregate quantity (or value) of the foreign like product sold in the exporting country shall normally be considered to be insufficient if such quantity (or value) is less than 5 percent of the aggregate quantity (or value) of sales of the subject merchandise to the United States.

19 U.S.C. § 1677b (emphasis added). Thus, the default method under the current statutory scheme, as first introduced by the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994), is to use home market sales value. 19 U.S.C. § 1677b(a)(1)(B)(i). However, the statute also provides two alternative bases of calculation. The first method, as described in section 1677b(a)(1)(B)(ii) and (1)(C), allows for the use of third country sales as a replacement figure for the exporter's home market sales. The second method allows for the use of constructed value as a proxy. See id. § 1677b(e). Although the URAA did not specify a preference order for the two alternative methods, see id. § 1677b(a)(4), it has been Commerce's practice, as specified in 19 C.F.R. § 351.404(f), to use sales to a third country rather than constructed value when possible. See Alloy Piping Prod., Inc. v. United States ("Alloy I"), 26 CIT 330, 338 n.4, 201 F. Supp. 2d 1267, 1274 n.4 (2002), aff'd sub nom. Alloy Piping Prod., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284 (Fed. Cir. 2003).

Commerce's regulations interpreting section 773 of the Tariff Act of 1930, as amended by the URAA and codified in 19 U.S.C. § 1677b, provide a standard procedure for normal value calculation.[2] It first engages in what is known as "market viability" analysis in Commerce practice,

---

[2] The relevant provisions in 19 C.F.R. § 351.404 are as follows:

> (b) Determination of viable market—
>
> > (1) In general. The Secretary will consider the exporting country or a third country as constituting a viable market if the Secretary is satisfied that sales of the foreign like product in that country are of sufficient quantity to form the basis of normal value.

see Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-

---

> (2) Sufficient quantity. "Sufficient quantity" normally means that the aggregate quantity (or, if quantity is not appropriate, value) of the foreign like product sold by an exporter or producer in a country is 5 percent or more of the aggregate quantity (or value) of its sales of the subject merchandise to the United States.
>
> (c) Calculation of price-based normal value in viable market—
>
> (1) In general. Subject to paragraph (c)(2) of this section:
>
> (i) If the exporting country constitutes a viable market, the Secretary will calculate normal value on the basis of price in the exporting country (see section 773(a)(1)(B)(i) of the Act (price used for determining normal value)); or
>
> (ii) If the exporting country does not constitute a viable market, but a third country does constitute a viable market, the Secretary may calculate normal value on the basis of price to a third country (see section 773(a)(1)(B)(ii) of the Act (use of third country prices in determining normal value)).
>
> (2) Exception. The Secretary may decline to calculate normal value in a particular market under paragraph (c)(1) of this section if it is established to the satisfaction of the Secretary that:
>
> (i) In the case of the exporting country or a third country, a particular market situation exists that does not permit a proper comparison with the export price or constructed export price (see section 773(a)(1)(B)(ii)(III) or section 773(a)(1)(C)(iii) of the Act); or
>
> (ii) In the case of a third country, the price is not representative (see section 773(a)(1)(B)(ii)(I) of the Act).
>
> (d) Allegations concerning market viability and the basis for determining a price-based normal value. In an antidumping investigation or review, allegations regarding market viability or the exceptions in paragraph (c)(2) of this section, must be filed, with all supporting factual information, in accordance with § 351.301(d)(1).

19 C.F.R. § 351.404 (2022) (emphasis added).

316, Vol. 1, 656, 821 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4161. Market viability inquiry focuses only on the sale volume, and if the sales in the market meet the threshold quantity or value ("sufficient quantity") of five percent or more of the aggregate quantity or value, then that market is deemed a viable market. 19 C.F.R. § 351.404(b); see also Alloy I, 26 CIT at 339, 201 F. Supp. 2d at 1276 ("[T]he regulation does limit the inquiry of market viability to one criterion: the sufficiency of sales in the third country."). Once a third country market is found to be viable, Commerce generally uses the viable market data as the basis for its normal value calculation. 19 C.F.R. § 351.404(c)(1)(ii), (f); see also Antidumping Duties, Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,357 (Dep't Commerce May 19, 1997) ("Preamble") ("[T]he Department provided that decisions concerning the calculation of a price-based normal value generally will be governed by the Secretary's determination as to whether the market in a particular country is 'viable.'" (emphasis added)). "Once Commerce is satisfied that the third country market is viable, the party alleging that the prices are not representative or otherwise should not be used . . . . bears the burden of establishing this fact." Itochu Bldg. Prod., Co. v. United States, 41 CIT __, __, 208 F. Supp. 3d 1377, 1386 (2017) (citing Alloy I, 26 CIT at 339, 201 F. Supp. 2d at 1276).

### ***II. Procedural History***

On March 6, 2020, Commerce issued the preliminary results of its administrative review. Certain Frozen Warmwater Shrimp From India: Prelim. Results of AD Admin. Rev.; 2018–2019, 85 Fed. Reg. 13,131 (Dep't Commerce Mar. 6, 2020), P.R. 169. Commerce preliminarily found that while Vietnam satisfied the regulatory criteria for third country market selection under 19 C.F.R. § 351.404(e)(1) and (2), ZA Sea Foods' sales to Vietnam were not appropriate for consideration due to the trade patterns of ZA Sea Foods' customers in Vietnam. Id. (citing Comments on Z.A. Sea Foods Private Limited's Section A Response and Request for Verification

at 2–3 (Sept. 26, 2019), P.R. 94). In the Final Results, Commerce continued to use constructed value, and cited the U.S. Customs and Border Protection's Enforce and Protect Act ("EAPA") determination of an evasion scheme as additional information supporting the use of constructed value. See Certain Frozen Warmwater Shrimp From India: Final Results of AD Administrative Review and Final Determination of No Shipments; 2018–2019, 85 Fed. Reg. 85,580 (Dep't Commerce Dec. 29, 2020), P.R. 199 ("Final Results"); see also Mem. from J. Maeder to J. Kessler re: Issues and Decision Mem. for the Final Results of the 2018–2019 AD Admin. Rev. of Certain Frozen Warmwater Shrimp from India at 16 (Dep't Commerce Dec. 21, 2020), P.R. 194 ("IDM"). Specifically, Commerce reasoned that:

> The prices to Vietnam are not truly prices for consumption in Vietnam as the shrimp is exported without further processing. Further, in some cases, the prices to Vietnam are in fact prices for sales that eventually become U.S. sales, meaning that they cannot be representative of prices for sales in the third-country market because they are ultimately U.S. sales. Thus, the sales to the [customer in Vietnam] do not represent prices of sales made for consumption in Vietnam nor do they represent a third country given that they are resold to other countries including the United States. Therefore, under the criteria of section 773(a)(1)(B)(ii)(I) of the Act and 19 CFR 351.404(c)(2)(ii), ZA Sea Foods' prices to Vietnam are not representative.

IDM at 19 (emphasis added).

ZA Sea Foods challenged the Final Results in this court, arguing that Commerce's decision to employ constructed value and not the Vietnamese third country market prices as the basis for the subject merchandise's normal value was unsupported by substantial evidence and not accordance with law. ZASF I, 569 F. Supp. 3d at 1346. As had been noted, in ZASF I, the court held that neither the EAPA evasion scheme evidence nor the use of trade patterns constitutes substantial evidence to support Commerce's decision to reject third country sales, and thus remanded to Commerce for redetermination consistent with its opinion. Id. at 1348–51. On June 23, 2022, Commerce issued a Draft Remand Redetermination in which it found that the record

evidence does not support a finding that ZA Sea Foods' subject merchandise were not consumed in Vietnam. Remand Redetermination at 12. Domestic Shrimp and ZA Sea Foods submitted timely comments, see id., and Domestic Shrimp raised, inter alia, the following arguments:

- Commerce should continue to determine the NV of ZASF's sales using CV.
- Section 773 of the Act requires that, to determine NV on the basis of third country sales, such sales must be "for consumption" in that third country market.
- Information on the record of the administrative review demonstrates that ZASF's sales to Vietnam were to companies that were exporters of frozen warmwater shrimp products. Further, there is no evidence on the record to demonstrate that these Vietnamese shrimp companies consumed the merchandise they purchased rather that exporting the shrimp to other markets for consumption there.
- ZASF acknowledged that its sales were to Vietnamese exporters but maintained that it did not have specific knowledge of the disposition of the goods sold during the POR. Thus, according to ZASF, in the absence of definitive proof that merchandise was not consumed in a third country market, Commerce must presume that consumption occurred.
- The Draft Remand Results fail to address whether the Act requires Commerce to presume that sales to a third country market are for consumption. Nonetheless, any presumption is rebuttable, and AHSTAC submitted substantial evidence rebutting that presumption.
- While the Court's remand placed the burden on Commerce to demonstrate through substantial evidence that ZA Sea Foods' sales to Vietnam were not "representative" in order to invoke the exception set forth in section 773(a)(1)(B)(ii)(I) of the Act and 19 CFR 351.404(c)(2)(ii), this exception is only implicated if an exporter can first demonstrate that it has a sufficient quantity of sales "for consumption" in the third country market.

Id. at 13 (citations omitted). See generally AHSTAC Comments on Draft Results of Redetermination Pursuant to Court Remand (June 30, 2022), R.P.R. 5.[3] On July 18, 2022, Commerce issued its Final Results of Redetermination containing the following finding:

> Section 773(a)(1)(B)(ii)(I) of the Act states that when NV is based on third country sales, NV shall be based on the price at which the foreign like product is sold for consumption if such price is representative. The preamble to Commerce's regulations provides that a determination of whether or not third country prices are representative is not one that Commerce will regularly consider. Further, third

[3] R.P.R. refers to the Remand Redetermination public record. See Joint Remand App., Sept. 30, 2022, ECF No. 67.

> country sales are presumptively representative where aggregate sales quantities are at a sufficient level, and the party seeking to show that third country sales are not representative bears the burden of making such a showing. Finally, the Court has held that any determination by Commerce that third country prices are not representative must be supported by substantial evidence.
>
> We agree that the evidence on the record shows that ZA Sea Foods sold shrimp to certain Vietnamese customers that were exporters or resellers. However, there is no evidence on the record to support AHSTAC's assertion that, simply because these companies were exporters, ZA Sea Foods' sales were not for consumption in Vietnam. Thus, we find that the record lacks sufficient evidence to support a finding that ZA Sea Foods' third country sales were not for consumption in Vietnam.

Remand Redetermination at 16. ZA Sea Foods and Domestic Shrimp submitted comments on the Remand Redetermination to this court on August 18, 2022. See Pls.' Cmts. on Final Results of Remand Redetermination, Aug. 18, 2022, ECF No. 64; see also Def.-Inter.'s Br. The Government submitted its Reply to the comments on September 16, 2022. See Def.'s Resp. to Cmts. Regarding the Remand Redetermination, Sept. 16, 2022, ECF No. 65. ZA Sea Foods filed its Reply to Domestic Shrimp's comments on the same day. See Pls.' Resp. to Cmts. on Remand Results of AHSTAC, Sept. 16, 2022, ECF No. 66.

## STANDARD OF REVIEW

The court sustains Commerce's determinations, findings, and conclusions on remand unless they are unsupported by substantial evidence, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B); SeAH Steel VINA Corp. v. United States, 950 F.3d 833, 840 (Fed. Cir. 2020). In conducting its review, the court's function is not to reweigh the evidence but rather to ascertain whether Commerce's determinations are supported by substantial evidence on the record. Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed. Cir. 1984). The possibility of drawing two inconsistent conclusions from the record evidence does not, in itself, prevent Commerce's determinations from being supported by substantial evidence. SeAH Steel VINA, 950 F.3d at 843 (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In addition,

the court reviews redeterminations after remand for compliance with the court's remand order. Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1402 (2018), aff'd, 779 F. App'x 744 (Fed. Cir. 2019).

**DISCUSSION**

Domestic Shrimp submits that the Remand Redetermination is contrary to law, and that it is unsupported by substantial evidence. Def.-Inter.'s Br. at 15–16. Domestic Shrimp does not explicitly dispute compliance with the court's remand order. See id.

As a preliminary matter, the court addresses the adequacy of Domestic Shrimp's arguments. In essence, Domestic Shrimp's arguments are anchored around two words contained in the statute, "for consumption." Id. at 1, 5–15. The central premise of Domestic Shrimp's argument is that in calculating normal value, Commerce should not default to a presumption that the merchandise was consumed in the third country market because the "statutory framework" requires Commerce to make specific findings on this statutory criterion. Id. at 6–10. Domestic Shrimp further argues that the court's remand order did not address this issue and thus did not preclude Commerce from addressing it. Id. at 6. According to Domestic Shrimp, the evidence before Commerce refutes any presumption Commerce may make contrary to Domestic Shrimp's position, and the burden of proof shifts to ZA Sea Foods because Domestic Shrimp has rebutted the presumption. Id. at 10–11.

Yet regarding the central issue, that is, the statutory language "for consumption" and the statutory framework on Commerce's ability to make presumptions and allocate the burden of proof, Domestic Shrimp has not provided adequate argument. See id. at 6–16. It does not discuss the relevant case law or Commerce practice interpreting the phrase "for consumption" in the specific context of third country determinations and Commerce's ability to make presumptions in

market viability analysis. Id. Nor does Domestic Shrimp offer any other authority, such as the textual meaning and legislative history relevant to its position. Id. In essence, Domestic Shrimp's argument and briefing consist of no more than repeated assertions that the statute should be interpreted and applied in a certain way, without identifying the relevant authorities supporting those bare assertions.[4]

It is "well established that arguments . . . not appropriately developed in a party's briefing may be deemed waived." United States v. Great Am. Ins. Co. of New York, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (citations omitted); see also SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[M]ere statements of disagreement with the district court's determination . . . do not amount to a developed argument."). Issues that are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Baley v. United States, 942 F.3d 1312, 1331 (Fed. Cir. 2019) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Where the issue involves statutory interpretation, if the party does not present adequate argumentation on the rules of statutory interpretation, "that misstep

---

[4] Although Domestic Shrimp cites Rhone Poulenc, Inc. v. United States, 899 F.2d 1185 (Fed. Cir. 1990) and KYD, Inc. v. United States, 607 F.3d 760 (Fed. Cir. 2010), these cases are not relevant to the question before the court. Def.-Inter.'s Br. at 10–11. So-called "Rhone Poulenc presumptions" are "common sense inferences" that can be drawn from the highest prior margin when Commerce relies on adverse facts available ("AFA") due to a respondent's failure to provide information. KYD, 605 F.3d at 767. Thus, the applicability of a Rhone Poulenc presumption is limited to situations involving AFA determinations due to the party failing to cooperate with the investigation. See id.; see also Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 38 CIT __, __, 991 F. Supp. 2d 1322, 1331 (2014). This is distinguishable from the current case that does not involve any such AFA determinations.

Moreover, Rhone Poulenc was a pre-URAA case that reflected the state of the law prior to the substantial modification of the statutory provisions in Chapter 19 of the United States Code. See Tianjin Mach. Imp. & Exp. Corp. v. United States, 35 CIT 1, 13–14, 752 F. Supp. 2d 1336, 1347–48 (2011) (citing Gerber Food (Yunnan) Co. v. United States, 31 CIT 921, 947, 491 F. Supp. 2d 1326, 1351 (2007)). Thus, Rhone Poulenc offers little guidance for the presumption at issue here, which involves interpretation of a term introduced in section 1677b by the URAA. See Pub. L. No. 103-465, § 224, 108 Stat. 4809, 4878–79; see also infra note 5.

warrants a finding of waiver." Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1347 (Fed. Cir. 2016); see also Zhejiang Sanhua Co. v. United States, 39 CIT __, __, 61 F. Supp. 3d 1350, 1358 (2015) (holding that a party before the CIT waived its arguments when relevant authorities and analytical framework had not been presented).

Even though Domestic Shrimp cites to the statute and repeatedly asserts a certain theory of the statutory framework, the citations and assertions alone do not constitute adequate argument. See Trading Techs. Int'l, Inc. v. IBG LLC, 921 F.3d 1378, 1385 (Fed. Cir. 2019) (holding that a conclusory assertion citing the Seventh Amendment, separation of powers under Article III, the Due Process Clause, and the Taking Clause, without analysis, is insufficient to preserve the issue); Baley, 942 F.3d at 1331 n.20 (Fed. Cir. 2019) ("[C]ursory mention of [congressionally-approved interstate Compact between California and Oregon] is insufficient to preserve any separate arguments pertaining to the Compact." (internal citation omitted)); Zhejiang Sanhua, 61 F. Supp. 3d at 1357–58 (holding that "naked citation" to statute and two CIT cases, while failing to address several other decisions interpreting statute, warrants waiver). Therefore, Domestic Shrimp's arguments flounder in light of its undeveloped analysis on the underlying question of statutory interpretation.[5]

---

[5] Today's decision does not resolve whether third market consumption is among "the category of issues that the Department need not, and should not, routinely consider" in market viability analysis. Preamble, 62 Fed. Reg. at 27,357. It is unclear whether third market consumption should be analyzed independently, as Domestic Shrimp now argues, or whether the consumption issue is a subcategory or precondition of the "representativeness" test as stated in the pre-remand Final Results, to which Domestic Shrimp originally agreed. See IDM at 19; Def.-Inter.'s Resp. to Pls.' Mot. for J. at 16, Sept. 2, 2021, ECF No. 30 (quoting IDM at 19). Also unresolved is the meaning of "for consumption," which is undefined in the statute, and whether Commerce's interpretation of the term merits deference under Chevron U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837 (1984).

## CONCLUSION

For the foregoing reason, the court sustains Commerce's Remand Redetermination. Judgment will enter accordingly.

**SO ORDERED.**

*/s/ Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: December 6, 2022
New York, New York